Fred Hickman (#124406)
fredhickman@gmail.com
17602 17th St Ste 102-206
Tustin CA 92780
714-315-1565; fax 714-838-0835

Attorney for: Defendant Steve Weera
Tonasut, as Trustee of the Tonasut
Family Trust dated June 14, 2004,
for and in place of the erroneously named
Defendant "Steve Weera Tonasut Trust"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CLINTON BROWN,<br><br>            PLAINTIFF,<br><br>VS.<br><br>EMIL ASSENTATO, TAX DEED ENTERPRISES LLC, STEVE WEERA TONASUT TRUST,<br><br>            DEFENDANTS. | Case No.:LACV23-02972-MEMF(KSx)<br><br>REQUEST FOR JUDICIAL NOTICE I.S.O. MOTION TO DISMISS COMPLAINT BY DEFENDANT TONASUT AS TRUSTEE<br><br>[FILED WITH NOTICE OF MOTION AND POINTS & AUTHORITIES]<br><br>DATE: JULY 6, 2023<br>TIME: 10:00 A.M.<br>CTRM: 8B |

Under F.R.E. 201 Defendant and movant requests that the Court take judicial notice of the following facts and documents submitted in support of the motion to dismiss the complaint filed herewith. The list is set forth, then the authorities in support.

No. 1. Agreement to Procure Lender, dated October 29, 2020, between Clinton Brown of The Atlas, a California limited liabity co. ("Atlas LLC") and "Rushmyfile.com" loan broker. Exh 1.

No. 2. Certificate of Business Purpose Loan and Loan and Real Property Security Declaration, from Clinton Brown for Atlas LLC, dated Nov. 10, 2020. Exh 2

No. 3. Loan Escrow Addendum, Source of Repayment, Exh. 3.

No. 4. Grant Deed dated Nov. 12, 2020, by Tax Deed Enterprises, LLC to Atlas LLC, dated Nov. 12, 2020, recorded 12/18/2020 doc#20201688734. Exh. 4.

No. 5. (composite exhibit) Secretary of State of California, LLC Registration--Articles of Organization filed 08/06/2020, and; Secretary of State Statement of Information, filed Jan. 26, 2022. Exh. 5.

No. 6. Promissory Note Secured by Deed of Trust, dated Oct. 29, 2020, makers The Atlas LLC and Clinton Brown to Steve Weera Tonasut, as Trustee, lender, Exh. 6.

No. 7. Deed of Trust dated Oct. 29, 2020, The Atlas LLC as trustor (borrower), Superior Loan Servicing as trustee, and Steve Weera Tonasut, as trustee, the beneficiary, recorded 12/18/2020, doc# 20201688735. Exh. 7.

No. 8.  Grant Deed, Atlas LLC as grantor to Steve Weera Tonasut, as trustee, grantee, recorded 02/01/2022, doc# 20220123442. Exh. 8.

No. 9.  (composite exhibit) Loan Extensions/Modification Agreements of 02/28/2022 and of 2/23/2023. Exh 9.

AUTHORITIES

Grounds for Request Nos. 4, 7 & 8 are contained in those exhibits, each being a true and correct copy from the Official Records of Los Angeles County, Recorder's Office, or print-outs from the public website of the California Secretary of State with respective filing dates. Authenticity is capable of accurate and ready

determination by resort to sources whose accuracy cannot be reasonably questioned. *Castillo-Villagra v. INS*, 972 F.2d 1017, 1026 (9th Cir. 1992); *Grant v. Aurora Loan Svcs., Inc.*, 736 F.Supp.2d 1257, 1265 (C.D. Cal. 2010) (recorded documents).

Grounds for Request No. 5, website printouts of Cal. Sec'y of State business records on The Atlas LLC. Information made publicly available by government entities, including data, is subject to judicial notice, including data made available on public website. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998099 (9th Cir. 2010); *Teixeira v Cty. Of Alameda*, 873 F.3d 670, 676 .6 (9th Cir. 2017).

Grounds for Request Nos. 1, 2, 3, 6, & 9 are contained in those exhibits, loan solicitation and loan documents, which are true and correct copies of documents either referred to in the Complaint or forming or relating directly to the basis of Plaintiff's claims, as loan origination documents signed by Plaintiff and whose authenticity is not believed to be in question. A court may consider evidence on which the complaint "necessarily relies" if (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (judicial notice taken of Release signed by Plaintiff); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (plaintiff may not deliberately omit references to documents upon which his claim is based to survive a 12(b)(6) motion; judicial notice taken of documents of Group Plan Application, as complaint mentioned "group plan" and "cost containment plan" of FHP); *Branch v. Tunnell*, 14 F.3d 499, 453-54 (9th Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clar*a, 307 F.3d 1119 (9th Cir. 2002)  (documents that are not attached to the complaint may be incorporated by reference if the plaintiff has referred to the document in the complaint or if the document forms the basis of the plaintiff's claims; took judicial notice of an

Affidavit and a Deposition mentioned in an amended complaint); *Richardson v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 107090, (Phillips, J., C. D. Cal., Aug. 11, 2016 (judicial notice of loan modification documents taken).

Date: May 22, 2023          Respectfully Submitted,

                            /s/ Fred Hickman

                            Fred Hickman
                            fredhickman@gmail.com
                            for: Defendant Steve Weera Tonasut, as Trustee of
                            the Tonasut Family Trust dated June 14, 2004

# BORROWER/BROKER AGREEMENT
## COMMERCIAL PROPERTY/BUSINESS PURPOSE LOAN TRANSACTIONS ONLY
### Private Investors/Lenders
### Agreement to Procure Lender

## SIGNED IN COUNTERPART

Date: **OCTOBER 29, 2020**                                     Loan No: **RMF4027704**

This Agreement entered into this day of OCTOBER 29, 2020, by and between **THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY AND CLINTON BROWN** (herein referred to as "Borrower"), and **RUSHMYFILE, INC.**, a California Corporation, BRE LICENSE **#01893519** and NMLS Endorsement **#396905,** and its officers, directors, employees and licensed agents (herein referred to as the MLB), is made with reference to the following facts and upon the terms and conditions set forth herein.

**PREAMBLE:**

I.    Borrower is the owner or the intended purchaser of the Security Property commonly known as **APN: 2064-005-011 AND APN: 2064-005-015,** located in **AGOURA HILLS, CA 91301,** County of **LOS ANGELES,** State of California, APN: **2064-005-011; 2064-005-015** ("Security Property");

II.   Borrower desires to obtain financing secured by the Security Property in an approximate amount of **$179,000.00;**

III.  MLB is a duly licensed Real Estate/Mortgage Broker that desires to find and introduce Borrower to Private Investors/Lenders that may be interested in making the Loan for which Borrower has applied; and,

IV.   MLB as a "Third Party" mortgage loan originator desires to arrange on behalf of Borrower a Loan to be secured by the Security Property.

NOW, THEREFORE, the parties agree as follows:

**1. AGREEMENT/DISCLOSURE OF MATERIAL LOAN TERMS**

Borrower shall pay to MLB the commission/fee specified in this Agreement in the event that MLB, on or before or close of escrow whichever occurs first (the date this Agreement terminates, unless extended in writing by the parties hereto) finds Private Investors/Lenders that agree to provide financing to Borrower to encumber the intended Security Property. The Loan for which the Borrower has applied is described in the attached Loan Application completed by the Borrower and is set forth in the attached Mortgage Loan Disclosure Statement, Department of Real Estate Form #885 ("MLDS"), each of which are incorporated herein by reference (the "Proposed Loan" or the "Loan").

**2. COMPENSATION**

The commission/fee to be paid by Borrower to MLB shall be a sum equal to **$3,580.00** of the gross Loan amount provided to Borrower by the Private Investors/Lenders upon financial terms and conditions substantially consistent with the Loan for which Borrower applied, or upon such other financing terms and conditions that are acceptable to Borrower plus fees reasonably earned and costs and expenses actually incurred for additional services rendered and/or goods and facilities actually provided. Said commission/fee shall be due and payable by Borrower to MLB upon Borrower's receipt of "Final Loan Approval" (as defined hereinafter) from the Private Investors/Lenders, which sum shall be immediately due and payable upon the written demand therefor by MLB. The commission/fee to be paid to MLB shall be in addition to fees that may be charged by other "Third Party" service providers, e.g., Title Insurance Company, Title Company and Escrow Holder, Appraiser, Credit Bureau, County Recorder, Security Property Inspectors, Legal Counsel, and the like; and for Document Preparation Fees due to MLB or to the delegee of MLB for such purposes, BA Loan Processing Center, Inc. ("BALPC").

Should MLB elect to accept from the Loan proceeds distributed through escrow payment of its commission/fee and any fees for loan processing and document preparation (rather than to receive payment upon "Final Loan Approval", as defined hereinafter), Borrower shall irrevocably instruct the title company or licensed public escrow holder (selected to conduct the Loan escrow) to pay MLB the commission and fees due directly from the Loan escrow proceeds. Borrower agrees that MLB shall be a party to the Loan escrow for the purpose of the irrevocable instruction to receive payment of compensation, as set forth herein and for no other purpose.

### 3. FINAL LOAN APPROVAL

"Final Loan Approval" is defined to be when written approval/commitment to make the Loan is received from the Private Investors/Lenders funding in accordance with Civil Code Section 1624(a)(7) requiring only customary closing costs, including fully executed Loan documents, disclosures, notices of rights, and the Settlement/Disbursement Statement, and recordings of required documents/instruments.

### 4. BORROWER'S OBLIGATION TO PROVIDE INFORMATION

Borrower agrees to provide to MLB all documents, instruments, records, and/or information or representations concerning the Security Property, as well as a Loan Application from the Borrower (including the Borrower's financial standing and credit worthiness) in a form acceptable to MLB which are reasonably necessary or required to carry out the purposes of this Agreement. Borrower shall cooperate with MLB in presenting to the Private Investors/Lenders to whom the Loan request has been submitted such documents, instruments, and/or other information or representations, including the Loan Application for which MLB shall have no liability for any alleged breach of confidentiality. Borrower understands the foregoing information gathered by or through the MLB is to be transmitted to the Private Investors/Lenders for the Loan Application to be processed to assist in underwriting the Proposed Loan.

### 5. PROPOSED LOAN, PURPOSE AND USE OF LOAN PROCEEDS, AND REPAYMENT SOURCE

The intended Security Property ☐ is 1 to 4 residential units, or ☒ is other than 1 to 4 residential units (e.g., residential income, commercial retail, industrial income, or land) *(check appropriate box)*:

The following represents the Borrower's statement of purpose and use of the Loan proceeds (also see the Loan document entitled, "Declaration of Loan Purpose and of Nature of the Security"):

*Purchase of Investment Property for development.*

***

*(Please briefly describe)*

### 6. BORROWER'S DUTY TO INDEMNIFY, HOLD HARMLESS, AND DEFEND

Borrower hereby agrees to indemnify, hold harmless, and defend MLB from any and all claims, actions or causes of actions, losses, and damages of whatever kind or nature (including reasonable attorneys' fees, expert's fees, and costs) resulting from or arising out of any documents, instruments, records, and/or information or representations made or provided by Borrower to or through MLB to the Private Investors/Lenders, to "Third Parties", or resulting from or arising out of the Loan transaction. At its sole discretion, MLB shall be entitled to select legal counsel to represent MLB in any action required in connection with the foregoing.

### 7. MLB'S OBLIGATION TO USE BEST EFFORTS AND ESTABLISHMENT OF AGENCY RELATIONSHIPS AND TERMINATION OF DUAL AGENCY

MLB shall use its best efforts as the *agent* of Borrower to obtain Private Investors/Lenders for which MLB is also acting as the *agent* and fiduciary to provide financing to Borrower as described herein. Therefore, MLB is acting as a *dual agent* as described under California Law and the Borrower agrees to such dual agency, including MLB participating on behalf of Borrower and the Private Investors/Lenders in the negotiations of the material terms of and conditions to achieve the Proposed Loan for which the Borrower has applied.

As the agent of the Private Investors/Lenders, MLB shall prepare and deliver required disclosures, notices of rights, notice of transfer of Loan servicing, and any other disclosures or notices that are to be completed and delivered to the Borrower in a commercial transaction. In addition, MLB shall undertake on behalf of the Private Investors/Lenders the due diligence required to underwrite the intended Security Property, to underwrite the Borrower's financial standing and credit worthiness, and to accomplish whatever other research as may be required to provide adequate information enabling the Private Investors/Lenders to make an informed and considered decision to extend credit by funding the Loan requested or as accepted by the Borrower.

CHECK WHICH ONE APPLIES:

☐ Mortgage loan servicing shall be undertaken by MLB on behalf of the Private Investors/Lenders for which MLB shall receive compensation.

☒ MLB may delegate all or part of the loan servicing functions to Third Party Servicer and compensation may be shared by MLB and Third Party Servicer to perform Loan servicing. If MLB intends to delegate Loan servicing to Third Party Servicer, check the box following the word "Yes"; and if MLB does not intend to delegate Loan servicing to Third Party Servicer, check the box following the word "No". ☒ Yes ☐ No

☐ Lender is to self-service the loan.

During the servicing of the Loan subsequent to the closing of the Loan escrow, the Borrower understands and acknowledges that he/she/it will not be represented by MLB. The agency relationship between MLB and the Borrower terminates as of the close of the Loan escrow, and thereafter MLB will no longer be acting as the *agent* and fiduciary of the Borrower. MLB and the delegee of MLB, if applicable, will be acting as the exclusive *agent* and *subagent* of the Private Investors/Lenders, including to hold (subsequent to the proper recording thereof, pursuant to applicable law) the original promissory note and deed of trust for Loan servicing. The Borrower may be required to obtain (at the Borrower's own cost and expense) the advice of professionals of the Borrower's own choosing (should the Borrower require any independent advice during Loan servicing).

## 8. DELEGATION OF PREPARATION AND DRAWING OF LOAN DOCUMENTS, RELATED DISCLOSURES, NOTICES OF RIGHTS, AND THE INSTRUCTIONS OF THE PRIVATE INVESTORS/LENDERS

The MLB has elected to delegate to BALPC as the agent of the MLB the drawing of the Loan documents and of the related disclosures, notices of rights, and instructions to escrow required of the Private Investors/Lenders and of the MLB. BALPC is a "Third Party" service provider lawfully entitled to perform such services. BALPC's fees are reasonably related to the value of the services to be rendered for drawing the Loan documents, the related disclosures, notices of rights, and escrow instructions. These fees are disclosed in the attached MLDS.

When performing loan servicing pursuant to the Loan Servicing Agreement executed by the Lender(s), *Loan Servicer is not the agent nor the subagent of the Borrower. Loan Servicer will be performing only as the agent of the Lender(s).*

## 9. WHEN THERE IS A COOPERATING BROKER/BIFURCATION OF AGENCY RELATIONSHIPS.

Should there be a separate Real Estate/Mortgage Broker exclusively representing the Borrower, this Cooperating Broker is **N/A**, herein referred to as the Cooperating Broker. MLB would thereupon be exclusively representing the Private Investors/Lenders. The duties and obligations of each and the disclosures of agency relationships and consents thereto as described in this Agreement are amended as follows:

- The Cooperating Broker exclusively representing the Borrower owes to the Borrower each of the duties and obligations as described herein and in accordance with applicable California and federal law and shall accomplish on behalf of the Borrower the following services:

  - Reasonable care, integrity, honesty and loyalty in dealings with the Principal(s);

  - Disclosure of material loan terms or any other material facts that may affect the decision of the Borrower to proceed with the Proposed Loan or a Loan acceptable to the Borrower encumbering the Security Property as a first deed of trust;

  - Confidentiality unless the information must be disclosed to the other Principal(s) to permit the Principal(s) receiving the disclosure(s) to make an informed and considered decision whether to borrow or to extend credit pursuant to the Proposed Loan or a Loan acceptable to the Borrower;

  - To represent the Borrower regarding the proposed extension of credit including (among others) completing a Loan application, establishing loan-to-value and debt-to-income ratios, complying with applicable federal and state law and presenting and explaining to the Borrower the substance of the required disclosures and notices of rights, and by analyzing the ability of the Borrower to repay the Proposed Loan or a Loan acceptable to the Borrower; and,

  - To present the Loan documents, including the disclosures and notices of rights to the Borrower and to advise the Borrower about the foregoing and whether the Borrower should seek the advice of

independent legal counsel prior to proceeding with the transaction.

*The foregoing duties and obligations include offering advice and recommendations to the Borrower (within the course and scope of the agency relationship established) and to provide the necessary information to assist the Borrower in making an informed and considered decision whether to proceed with the Proposed Loan or a Loan acceptable to the Borrower.*

• MLB exclusively representing the Private Investors/Lenders to originate the Proposed Loan owes the duties and obligations to the Private Investors/Lenders as described herein and in accordance with applicable California and federal law and shall accomplish on behalf of the Private Investors/Lenders the following services:

  • Reasonable care, integrity, honesty and loyalty in dealings with the Principal(s);

  • Disclosure of material loan terms or any other material facts and investment risks that may affect the decision of the Private Investors/Lenders to make the Loan and extend credit to the Borrower; the ultimate decision to fund the loan rests with the Lender;

  • Confidentiality unless the information must be disclosed to the other Principal(s) to permit the Principal(s) receiving the disclosure(s) to make informed and considered decisions whether to extend credit or to borrow;

  • To conduct reasonable due diligence on the Borrower and on the Security Property depending on the type of loan product offered, including obtaining a preliminary "title" and an appraisal report estimating the current market value of the Security Property; if requested by Lender, MLB will obtain credit reports, tax returns, and/or financial statements and verifications of employment, income, and funds on deposit with financial institutions regarding the Borrower; Asset-based loans will usually only require a title report and appraisal;

  • To underwrite the extension of credit to the Borrower by (among others) processing a Loan application, establishing loan-to-value and debt-to-income ratios, complying with applicable federal and state law including completing required disclosures and notices of rights, and by analyzing the ability of the Borrower to repay the Proposed Loan or a Loan acceptable to the Borrower depending on the type of product offered; and,

  • To present the Loan documents, including the disclosures and notices of rights to the Private Investors/Lenders and to advise the each of the Lenders about the foregoing and whether the Private Investors/Lenders should seek the advice of independent legal counsel prior to proceeding with the transaction.

*Each of the foregoing duties, including the disclosure of material facts and investment risks is to provide the Private Investors/Lenders with sufficient information so they each may make an informed and considered decision whether to proceed with the Proposed Loan or a Loan acceptable to the Borrower. The decision to fund the loan ultimately belongs to the Lender. The Lender must complete its own due diligence.*

Because of the foregoing bifurcation of agency relationships, MLB is exclusively representing the Private Investors/Lenders and is neither an agent nor a subagent and fiduciary of the Borrower. The Cooperating Broker is exclusively representing the Borrower and is neither an agent nor subagent and fiduciary of the Private Investors/Lenders. Any reference in this Agreement to *dual agency* is, therefore, no longer operative.

## 10. NO COMMITMENT OR OBLIGATION TO OFFER THE LOAN TO PRIVATE INVESTORS/LENDERS

THIS IS NOT A COMMITMENT OR OBLIGATION BY MLB TO DELIVER TO PRIVATE INVESTORS/LENDERS THE LOAN FOR WHICH THE BORROWER HAS APPLIED. MLB has informed the Private Investors/Lenders that Borrower may elect, in his/her/its sole discretion, not to proceed with the Loan for which the Borrower has applied. The Borrower's right to elect not to proceed shall terminate when the Loan has been funded and the Loan transaction has been consummated. See section entitled, "DEFINITION OF CONSUMMATION". Should the Borrower elect to cancel the Loan and the Private Investors/Lenders have previously deposited Loan funds with the designated escrow holder, the Loan funds shall be refunded to the Private Investors/Lenders in accordance with its/their written instructions presented to the escrow holder to which the Borrower may also be subject.

## 11. NO COMMITMENT TO MAKE OR ARRANGE THE LOAN TO OR FOR THE BORROWER

While this is an undertaking by the MLB to utilize best efforts to obtain the Loan for which the Borrower applied, THIS IS NOT A COMMITMENT BY MLB TO MAKE OR ARRANGE THE LOAN TO OR FOR THE BORROWER. MLB has no liability to the Borrower if MLB is unable to procure Private Investors/Lenders to make/fund the Loan. This Agreement is to establish the Agency relationship among the parties and to authorize MLB to use best efforts to undertake to locate Private Investors/Lenders to fund the Proposed Loan for which the Borrower has applied. The Borrower understands and agrees that no Loan commitment is being issued until Final Loan Approval occurs. See section entitled, "FINAL LOAN APPROVAL".

This Agreement provides for cancellation fees to be paid by the Borrower in the event Final Loan Approval/Loan Commitment is received from the Private Investors/Lenders prior to the Borrower's election to cancel. The cancellation fees to be paid by the Borrower (including payment of any costs and expenses incurred), and the payment of other "Third Party" cancellation fees are as set forth in the section entitled, "COMPENSATION". The payment of the foregoing by the Borrower is pursuant to an *Advance Fee Agreement approved for use or for which no objection has been made by the California Department of Real Estate, a copy of which will be provided to the Borrower, if applicable.*

## 12.  PRIVATE INVESTORS/LENDERS TO MAKE LOAN FUNDING AND LOAN SERVICING DECISIONS

MLB shall *not* make the decision to extend credit and to make/fund the Loan on behalf of the Private Investors/Lenders. Such decisions are to be made by the Private Investors/Lenders, including decisions made during servicing of the Loan (except for the decisions required to collect and process the debt service and to protect the security of the Loan, as set forth in the promissory note and deed of trust and as authorized in the Loan Servicing Agreement, if one).

### 13.  DEFINITION OF CONSUMMATION

The Loan for which the Borrower has applied is not consummated until the Loan has been fully funded, the Borrower has been so advised, and the Borrower has executed the documents, instruments, instructions, disclosures, notices of rights, including escrow instructions required of the Borrower to complete the transaction for the Loan requested or accepted by the Borrower.

### 14.  PREVAILING PARTY'S RIGHT TO FEES AND COSTS

In the event that any action is commenced between Borrower and MLB to enforce or interpret this Agreement, the party prevailing in such action shall be entitled to (in addition to any other relief) reasonable attorneys' fees, expert's fees, and costs, which may be determined in said action or in a separate action brought for that purpose.

### 15.  JUDICIAL REFERENCE AND WAIVER OF JURY TRIAL.

*If the Borrower elects Judicial Reference as the dispute resolution mechanism, the box following "Yes" should be checked. If the Borrower elects not to select Judicial Reference as the dispute resolution mechanism, then the box following "No" should be checked.* ☐ Yes ☒ No

If a dispute arises out of or relates to this Agreement, the dispute shall be decided by a Judicial Reference procedure pursuant to California Code of Civil Procedure Section 638. The Judicial Reference shall be commenced by a request or a motion filed with the clerk or presiding judge of the Superior Court of the County of **SAN MATEO**, with a copy served on the other party, pursuant to Code of Civil Procedure Section 638. Any such request or motion shall include a copy of this Agreement. Except to the extent modified herein, the reference shall be conducted in accordance with California law, including, but not limited to, the California Code of Civil Procedure and the California Evidence Code. Any Judicial Reference shall be commenced within the period specified by the applicable statute of limitations for the claim(s) made. All Judicial Reference proceedings hereunder shall (unless all parties thereto otherwise agree) be conducted in a mutually agreeable location in the County of **SAN MATEO**, State of California.

Subject to an award of fees and costs to the prevailing party in the Judicial Reference, each party shall pay one-half of the expenses of the Judicial Reference at the rate set by the Court pursuant to Code of Civil Procedure Sections 645.1 and 1023. The referee(s) or arbitrator(s) shall not have the right to convene a jury to be the Trier of fact of any controversy subject to the reference. THE BORROWER HEREBY WAIVES A JURY TRIAL IN CONNECTION WITH ANY DISPUTE ARISING OUT OF THIS AGREEMENT.

No reference arising out of or relating to this Agreement shall include, by consolidation, joinder in any other manner an additional person or entity not a party to this Agreement, except by written consent containing a specific reference to this Agreement executed by the parties to this Agreement (unless ordered by a court of competent jurisdiction). Consent to a

reference involving an additional person or entity shall not constitute consent to a reference of any claim, dispute, or other matter in question not described in the written consent of the persons or entities agreeing thereto.

The parties agree that the referee or arbitrator shall be empowered to award to the prevailing party costs of the Judicial Reference, including, without limitation, attorneys' fees, expert's fees, and other fees as may be assessed by the referee or arbitrator and the referee's or arbitrator's compensation.

BY INITIALING IN THE SPACE BELOW, YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THIS AGREEMENT DECIDED BY A JUDICIAL REFERENCE PROCEEDING, WITH A REFEREE OR ARBITRATOR AND NOT A JUDGE, AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR BEFORE A JURY.

IF YOU REFUSE TO SUBMIT TO A JUDICIAL REFERENCE PROCEEDING AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO PARTICIPATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS JUDICIAL REFERENCE PROVISION IS VOLUNTARY. I/WE HAVE READ AND UNDERSTAND THE FOREGOING PROVISION AND AGREE TO SUBMIT DISPUTES TO A JUDICIAL REFERENCE PROCEEDING BEFORE A REFEREE OR ARBITRATOR, RATHER THAN A COURT OR JURY PROCEEDING.

BORROWER'S INITIALS: _____     MLB'S INITIALS: _____

BORROWER'S INITIALS: _____

## 16. BINDING ARBITRATION

*If the Borrower elects Binding Arbitration as the dispute resolution mechanism, the box following "Yes" should be checked. If the Borrower elects not to select Binding Arbitration as the dispute resolution mechanism, then the box following "No" should be checked.* ☒ Yes ☐ No

**Mutual Agreement To Arbitrate Disputes:** The undersigned ("BORROWER") has, or intends to, obtain a mortgage loan, made or arranged by MLB/MLO secured by real property ("Loan"). BORROWER and MLB/MLO agree that any and all disputes involving the Loan including, but not limited to, claims arising from the making, arranging, origination, documentation, disclosures, valuation of the security, servicing, collection or any other aspect of the Loan transaction or the coverage or enforceability of this Agreement, shall be resolved exclusively by binding arbitration under the terms of this Agreement. This Agreement shall also be binding on the agents, spouses, executors, administrators, successors and assigns of the parties. "Dispute" shall include, but not limited, to: (1) Any claimed wrongdoing including, but not limited to, misrepresentation, negligence, breach of contract, breach of fiduciary duty, unconscionability, fraud in the inducement, rescission, breach of the covenant of good faith and fair dealing and unfair business practices; and (2) Any claimed violation of local, state or federal laws, including, but not limited to consumer credit, truth-in-lending, civil rights, equal opportunity, real estate settlement laws, real estate law and regulations, housing discrimination laws, fair lending acts, licensing, loan regulation and unfair business practices acts.

No party to this agreement shall be precluded from seeking remedies in small claims court for disputes or claims within the scope of its jurisdiction. Each party shall be entitled to all non-waivable rights and remedies provided by statute or by common law and to affirmative defenses to the same extent as if the dispute were tried in court. Binding Arbitration shall be conducted under the rules of American Arbitration Association ("AAA"). Arbitration shall be filed at the office of the AAA in SAN MATEO County. The arbitrator's award shall be reasoned decision in accordance with applicable law. The award shall be in writing and provide a concise statement of the essential findings and conclusions on which the award is based. The remedy awarded by the arbitrator shall not be different from that which could be awarded by a court. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute, or other matter(s) in question would be barred by the applicable statute of limitations, and the arbitrator shall reject any claim that is not based upon a timely filed demand. Discovery may be conducted pursuant to the provisions of Section 1283.05 of the California Code of Civil Procedure.

Arbitration fees and costs shall be paid as provided in California Code of Civil Procedure Section 1284.2.Each party shall bear his/her/its own attorneys fees, except to the extent provided by applicable law if the dispute were tried in court. The arbitrator(s) shall render a statement of the reasons for the award. Judgment on the award may be entered in any court of competent jurisdiction.

WAIVERS: THE PARTIES HEREBY FREELY WAIVE THE RIGHT TO TRIAL BY JUDGE OR JURY, THE RIGHT TO APPEAL, FULL PRETRIAL DISCOVERY, AND APPLICATION OF THE RULES OF EVIDENCE.

Loan No: RMF4027704

## CERTIFICATE OF BUSINESS PURPOSE OF LOAN

Borrower certifies to RUSHMYFILE, INC. ("Mortgage Loan Originator") as follows:

1. I have applied to Mortgage Loan Originator for a trust deed loan of $179,000.00 secured by the real property at **APN: 2064-005-011 AND APN: 2064-005-015, AGOURA HILLS, CA 91301** (the "Loan").

2. Mortgage Loan Originator has stressed to me the importance of knowing the primary purpose of the Loan. I know the duties and obligations of the Mortgage Loan Originator vary considerably depending upon whether the Loan is a "Consumer Loan" (i.e., the Loan proceeds are primarily for personal, family, or household purposes), or the Loan is a "Business Purpose Loan".

3. I have represented to Mortgage Loan Originator that all the proceeds of the Loan, exclusive of commissions, fees, costs, expenses incurred to obtain the Loan, are for the following purposes:

| Purpose | Approximate Amount |
|---|---|
| A. Real Estate Investment Property | $ 179,000 |
| B. | $ |
| C. | $ |
| D. | $ |

4. The primary purpose of the Loan is to finance the business enterprise known as _The Atlas, LLC_ _____, i.e., in the business of _California_

5. No part of the Loan proceeds are intended to be used for the non-business (i.e. consumer) purpose except:

| Purpose | Approximate Amount |
|---|---|
| A. N/A | $ 0 |
| B. | $ |

The Lender(s), MLB/MLO, assignees and successors of the Lender(s) or of the Mortgage Loan Originator (MLB/MLO), as applicable, may rely upon this certificate. I declare under penalty of perjury under the laws of the State of California that the foregoing Certificate is true and correct.

_____     11/16/2020
THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, BY CLINTON BROWN, MANAGING MEMBER – Borrower                               /Date

_____     11/16/2020
CLINTON BROWN – Co-Borrower                   /Date

---

**RUSHMYFILE, INC.**
380 BEACH RD., SUITE B, BURLINGAME, CA 94010
650-353-2017

BRE BROKER LIC. #01893519                          NMLS #396905

---

## LOAN PURPOSE AND REAL PROPERTY SECURITY DECLARATION

Loan Number: **RMF4027704**                    Proposed Loan Amount: **$179,000.00**

Address of Property(ies) that will secure your loan: **APN: 2064-005-011 AND APN: 2064-005-015, AGOURA HILLS, CA 91301** ("Property"). If other properties will be used as security for the loan, complete a separate [**Supplemental Real Property Loan Security Declaration for each property securing the loan.**]

Each of the undersigned (collectively "**Borrower**") has applied for the Loan to be secured by the property(ies) set forth on one or more separate but related and incorporated Real Property Loan Security Declarations. Each Borrower is the person who will sign a promissory note ("Note") and deed(s) of trust ("Deed(s) of Trust") which will encumber the property(ies). "**Lender**" as used herein includes the original lender who funds the Loan as well as others to whom Lender may transfer all or a part of the ownership of the Loan.

Borrower represents, warrants, and declares to Lender that:

1. The Borrower has applied to Lender for the Loan to be secured by a Deed(s) of Trust on the Property. Borrower understands the importance of truthfully and accurately disclosing to Lender the information requested in this declaration including, but not limited to, the purpose(s) for which Borrower intends to use the Loan proceeds. **Borrower further understands Lender, its brokers, agents, and employees will rely on Borrower's representations in this declaration and in any Supplemental Real Property Loan Security Declarations to determine, among other things: (1) whether to make the Loan; (2) the terms and conditions of the Loan; (3) what disclosures may be required; and (4) whether Lender possesses the necessary license(s) to make or arrange the Loan.**

2. Borrower is: ☐ an individual (natural person); ☐ a corporation, limited liability corporation, partnership, trust, estate, church, union, agency, association, cooperative, organization, government or governmental subdivision ("Entity"); or, ☒ both. For any Borrower that is an Entity (not an individual), please complete below the name of the Entity, and under capacity state the name and position pursuant to which the undersigned is authorized to act (for example, "Jane Smith" as president, secretary, managing member, general partner, trustee, etc.)

| EACH BORROWER'S NAME<br><br>(As you want it to appear on title and on the loan documents.) | NAMES &CAPACITY OF PERSONS SIGNING FOR AN ENTITY BORROWER (e.g. individual, general partner, managing member, president, secretary, etc.) |
|---|---|
| Borrower/Entity: THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY | CLINTON BROWN/MANAGING MEMBER |
| Borrower/Entity: CLINTON BROWN | INDIVIDUAL |
| | |

3. Borrower intends to use the Loan proceeds for the purposes and in the amounts set forth below. **INSTRUCTIONS: Borrower must complete the following in his or her own hand in his or her own words. Please print legibly in ink.** Itemize separately all payoffs of existing mortgages or liens. Attach additional pages if and as needed to provide a complete and accurate explanation. For each purpose or intended use of the Loan proceeds, please indicate the "USES" as personal="P", Business="B", or Agricultural="A".

"**Personal use or purpose**" loans are primarily for a "personal, family or household purpose or use." Such loans include, but are not limited to, loans to purchase, remodel, repair or improve a principal residence, a vacation home, or personal vehicle or boat, to purchase furniture, furnishings, appliances, or other consumer goods for personal use; to pay, refinance or consolidate personal or family debt or credit cards; or for educational expenses, vacations, and medical expenses. These are often called "consumer loans" and are for a "personal purpose or use."

"**Business use or purpose**" loans include, but are not limited to, loans to purchase, repair or improve real property for use in the Borrower's business; to acquire, improve or maintain certain non-owner occupied rental property; to purchase, improve or repair tools, equipment, machinery, fixtures or furnishings used in Borrower's business; for operating capital (e.g. employee salaries) or to purchase or pay for business inventory, supplies, rent, taxes, insurance, and other related expenses; or to pay off, refinance or consolidate business debts.

"**Agricultural purpose**" loans are for planting, propagating, nurturing, harvesting, catching, storing, exhibiting, marketing, transporting, processing or manufacturing food, beverages (including alcoholic beverages), flowers, trees, livestock, poultry, bees, wildlife, fish or shellfish by a natural personal engaged in farming, fishing or growing crops, flowers, trees, livestock, poultry, bees or wildlife.

| USE: Personal = "P" Business = "B" Agricultural = "A" | ITEMIZED PURPOSE (INTENDED USE) OF NET LOAN PROCEEDS (Further Explanation of "P," "B," and/or "A") | AMOUNT (Total should equal the approximate net loan proceeds) |
|---|---|---|
| B | Acquistion of Property | $179,000 |
| | | |
| | | |
| | TOTAL | |

If the proposed loan amount changes from the amount stated above, Borrower agrees to immediately, and before the close of escrow, notify Lender of any changes from those set forth above in the type and proportion of intended use of Loan proceeds.

4.  Are the Loan proceeds to be used primarily to acquire, improve, or maintain rental property? ☐ Yes ☒ No

   If your answer is "yes," will Borrower or a relative or family member of Borrower occupy any residential housing unit on the property? ☐ Yes ☐ No

5.  Part or all of the Loan proceeds ☐ will ☒ will not be used for demolition or construction of improvements on the Property.

6.  The Property [pick one]:

   ☐ Is comprised of only residential units. The number of residential units is: _____.

   ☒ Is comprised of only commercial, industrial, agricultural, retail property and/or vacant land.

   ☐ Is comprised of mixed use property (part residential and part commercial, retail or industrial _____ units). The Property has [state number] _____ residential units and _____ non-residential units.

7.  I do ☐ do not ☒ intend to occupy any housing unit on the Property as my personal residence if and when the Loan closes. **[Check "I do" if any Borrower will use the Property as his/her personal residence.]**

8.  Each of the undersigned Borrower's current principal residence is [state address]:

| EACH BORROWER'S NAME | CURRENT PRINCIPAL ADDRESS |
|---|---|
| THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY | 10226 REGENT STREET, LOS ANGELES, CA 90034 |
| CLINTON BROWN | 10226 REGENT STREET, LOS ANGELES, CA 90034 |
|  |  |

9.  If the Property is wholly or partially residential rental property [pick all that apply]:

☐ It is rented to a third party (not a relative or family member) who pays, or will pay, fair market value rent.

☐ It is occupied by a relative or family member who pays, or will pay, fair market value rent.

☐ It is occupied by a relative or family member who does (or will) not pay rent or who pays (or will pay) less than fair market value.

☒ Not applicable because the Property does not contain a residential rental unit.

10.  If the property is commercial, industrial, agricultural, retail property, vacant land or mixed use property or mixed use property [check all applicable boxes]:

☐ Borrower currently rents it to a third party to produce income.

☐ Borrower currently uses it in Borrower's business.

☐ It is currently vacant land held exclusively for investment (i.e., for appreciation and resale) and not for any personal use.

☐ It is currently vacant land acquired exclusively for development and resale and not for personal use.

☐ It is currently vacant land upon which Borrower intends to build a personal residence or vacation home in the future.

Other: _____

11.  The Property is ☐ is not ☒ agricultural property which [check all applicable boxes]:

☒ Is comprised of 25 or more acres of land; and,

Will ☐ Will not ☒ be used primarily for "agricultural purposes." (See INSTRUCTION: above on "Agricultural purpose" loans.)

12.  Borrower has ☐ has not ☒ attached a separate Supplemental Real Property Loan Security Declaration for each property securing the loan other than the above listed Property. [check applicable box]:

**THIS DECLARATION IS PART OF YOUR LOAN APPLICATION. PLEASE MAKE SURE THE STATEMENTS ABOVE, AS COMPLETED, ARE TRUE AND ACCURATE. UNTRUE OR FALSE STATEMENTS MAY SUBJECT YOU TO CIVIL OR CRIMINAL PENALTIES.**

**LOAN NUMBER: RMF4027704**

# LOAN ESCROW ADDENDUM

## SOURCE OF REPAYMENT

Dear Borrower:

In order to grant your loan request, we require that you tell us your source for repayment of your loan:

[x] Regular Monthly Payments

*Company Income*

[x] Balloon Payment

*Company Income*

I hereby certify that the above information is correct and I understand that the lender will rely on these representations when making the loan.

11/16/2020

THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, BY CLINTON BROWN, MANAGING MEMBER – Borrower                    /Date

11/16/2020

CLINTON BROWN – Co-Borrower                    /Date

**SIGNING AGENT: THIS DOCUMENT MUST BE COMPLETED BY THE BORROWER AT TIME OF SIGNING.**

 

**This page is part of your document - DO NOT DISCARD**



## 20201688734



**Pages:**
**0004**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**12/18/20 AT 08:00AM**

| | |
|---|---|
| FEES: | 28.00 |
| TAXES: | 328.90 |
| OTHER: | 0.00 |
| PAID: | 356.90 |





**L E A D S H E E T**



**202012180190061**

**00019565343**



**011590631**

**SEQ:**
**01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

*E460070*

E08_201218_8000049



RECORDING REQUESTED BY:
Equity Title Company
Order No. 3910120-06600
Escrow No. 21868-10
Parcel No. 2064-005-011, 2064-005-015

AND WHEN RECORDED MAIL TO:

THE ATLAS LLC, A CALIFORNIA
LIMITED LIABILITY COMPANY
10226 REGENT STREET
LOS ANGELES, CA 90034

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS $328.90

☒ computed on full value of property conveyed, or
☐ computed on full value less liens or encumbrances remaining at the time of sale.
☒ unincorporated area:        ☐ Agoura Hills, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **Tax Deed Enterprises LLC - Limited Liability Corp.**

hereby GRANT(S) to  **THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY**

the following described real property in the County of **Los Angeles**, State of California:
                    **See exhibit "A" attached hereto and made a part** hereof for legal description
More commonly known as: **Vacant Land - APN #2064-005-011 and #2064-005-015, Agoura Hills, CA 91301**

Date        November 12, 2020

Tax Deed Enterprises, LLC. a limited liability Corp.

By: Emil Assentato, Manager

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF New York
COUNTY OF Nassau                    } S.S.

On 17th Nov 2020, before me, Lucy Gioino, Notary Public personally appeared **Emil Assentato**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of New York that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

LUCY GIOINO
Notary Public, State of New York
No. 01GI6167210
Qualified in Nassau County
Commission Expires May 29, 2023

Mail Tax Statements to: SAME AS ABOVE or Address Noted Below

EXHIBIT "A"

**PARCEL 1:**

LOT 3 IN TRACT NO. 33128, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, RECORDED IN BOOK 1099, PAGES 94 TO 97, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT FROM A PORTION OF SAID LAND, ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS AND OTHER HYDROCARBONS, BY WHATSOEVER NAME KNOWN, THAT MAY BE WITHIN OR UNDER THE PARCELS OF LAND HEREINAFTER DESCRIBED, WITHOUT, HOWEVER, THE RIGHT EVER TO DRILL, DIG OR MINE THROUGH THE SURFACE OF SAID LAND THEREFOR OR OTHERWISE IN SUCH MANNER AS TO ENDANGER THE SAFETY OF ANY HIGHWAY THAT MAY BE CONSTRUCTED ON THE LANDS HEREBY CONVEYED AS PROVIDED IN THE DEED RECORDED APRIL 2, 1951 AS INSTRUMENT NO. 3289, OF OFFICIAL RECORDS.

ALSO EXCEPT FROM A PORTION OF SAID LAND, ONE-HALF OF ALL CRUDE OIL, PETROLEUM, GAS, BREA, ASPHALTUM AND ALL KINDRED SUBSTANCES AND OTHER MINERALS UNDER AND IN SAID LAND, WITHOUT RIGHT OF ENTRY, AS PROVIDED IN THE DEED RECORDED DECEMBER 6, 1954 AS INSTRUMENT NO, 540, OF OFFICIAL RECORDS.

ALSO EXCEPT FROM A PORTION OF SAID LAND, ONE-HALF OF ALL MINERALS, OIL, PETROLEUM, ASPHALTUM, GAS, COAL AND OTHER HYDROCARBON SUBSTANCES AND WATER CONTAINED IN, ON, WITHIN AND UNDER SAID LAND, PROVIDED, HOWEVER, THAT THIS GRANT SHALL NEITHER GRANT NOR SHALL IT BE CONSTRUED AS GRANTING TO GRANTEES, THEIR SUCCESSORS IN INTEREST OR ASSIGNS THE RIGHT TO GO UPON OR UNDER SAID LANDS FOR THE PURPOSE OF EXTRACTING ANY OF SAID SUBSTANCES, AS PROVIDED IN THE DEED RECORDED OCTOBER 23, 1958 AS INSTRUMENT NO. 1532, OF OFFICIAL RECORDS.

ALSO EXCEPT ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS AND OTHER  HYDROCARBONS BY WHATSOEVER NAME KNOWN THAT MAY BE WITHIN OR UNDER THE HEREIN CONVEYED PARCEL OF LAND, AND THE RIGHTS THERETO, TOGETHER WITH CERTAIN OTHER CONDITIONS, AS EXCEPTED IN SAID PARCELS 45809-5 AND 46809-6 OF SAID FINAL ORDER OF CONDEMNATION, IN DEED (STATE PARCEL 18.1A) RECORDED APRIL 2, 1951 IN BOOK 35947 PAGE 142, OFFICIAL RECORDS, IN SAID PARCELS 1 AND 2 OF DEEDS (STATE PARCEL B7694).

**PARCEL 2:**

THAT PORTION OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER AND OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 25, TOWNSHIP 1 NORTH, RANGE 18 WEST, AND THAT PORTION OF GOVERNMENT LOT 3 OF SAID SECTION 25, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEASTERLY TERMINUS OF THAT CERTAIN COURSE DESCRIBED IN PARCEL 2 OF SAID DEED RECORDED IN BOOK 35947 PAGE 142, OF OFFICIAL RECORDS, AS HAVING A BEARING OF SOUTH 58° 434' 09" WEST, A DISTANCE OF 147.26 FEET; THENCE ALONG THE SOUTHERLY LINE OF THE LAND DESCRIBED IN LAST SAID DEED SOUTH 84° 44' 04" EAST, (ON A DIFFERENT BASIS OF BEARING), 182.76 FEET TO A TANGENT CURVE IN SAID SOUTHERLY LINE, CONCAVE NORTHERLY AND HAVING A RADIUS OF 2,050 FEET; THENCE ALONG SAID CURVE EASTERLY, THROUGH AN ANGLE OF 02° 20' 44" AN ARC DISTANCE 83.92 FEET;

ORDER NO. 3910120-06600

### LEGAL DESCRIPTION CONTINUED

THENCE SOUTH 41° 07' 44" WEST, 275.25 FEET; THENCE SOUTH 52° 31' 06" WEST, 207.20 FEET; THENCE SOUTH 84° 11' 33" WEST, 124.90 FEET; THENCE NORTH 62° 04' 30" WEST, 287.87 FEET; THENCE NORTH 77° 18' 25" WEST, 360.87 FEET; THENCE SOUTH 71° 31' 30" WEST, 155.86 FEET; THENCE SOUTH 75° 17' 41" WEST, 146.58 FEET; THENCE SOUTH 80° 06' 39" WEST, 237.08 FEET TO A POINT IN SAID SOUTHERLY LINE OF LAND DESCRIBED IN SAID DEED; THENCE IN A GENERAL EASTERLY DIRECTION ALONG SAID SOUTHERLY LINE, THROUGH THE VARIOUS COURSES AND DISTANCES THEREIN, TO THE POINT OF BEGINNING.

EXCEPTING THAT PORTION OF LAND RECORDED IN DEED 1996-1294372.

EXCEPT ONE-HALF OF ALL CRUDE OIL, PETROLEUM, GAS, BREA, ASPHALTUM AND ALL KINDRED SUBSTANCES AND OTHER MINERALS, UNDER AND IN SAID LAND, WITHOUT RIGHT OF ENTRY, AS RESERVED IN THE DEED FROM NORBERT R. NETTLESHIP AND M. ATHEA WHITE NETTLESHIP, HUSBAND AND WIFE, RECORDED DECEMBER 6, 1954 IN BOOK 46287 PAGE 361, OF OFFICIAL RECORDS.

ALSO EXCEPTING THREFROM ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS, AND OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN THAT MAY BE WITHIN OR UNDER THE PARCEL OF LAND HEREINABOVE DESCRIBED TOGETHER WITH THE PERPETUAL RIGHT OF DRILLING, MINING, EXPLORING AND OPERATING THEREFOR AND REMOVING THE SAME FROM SAID LAND OR ANY OTHER LAND, INCLUDING THE RIGHT TO WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THOSE HEREINABOVE DESCRIBED, OIL OR GAS WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF THE LAND HEREIN ABOVE DESCRIBED, AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS UNDER SAID BENEATH OR BEYOND THE EXTERIOR LIMITS THEREOF, AND TO REDRILL, RETUNNEL, EQUIP, MAINTAIN, REPAIR, DEEPEN AND OPERATE ANNY SUCH WELLS OR MINES, WITHOUT, HOWEVER, THE RIGHT TO DRILL, MINE, EXPLORE AND OPERATE THROUGH THE SURFACE OR THE UPPER 100 FEET OF THE SUBSURFACE OF THE LAND HEREINABOVE DESCRIBED OR OTHERWISE IN SUCH MANNER AS TO ENDANGER THE SAFETY OF ANY HIGHWAY THAT MAY BE CONSTRUCTED ON SAID LANDS, AS EXCEPTED BY DEED FROM BOB HOPE, WHO ACQUIRED TITLE AS LESTER T. HOPE AND DOLORES HOPE, HUSBAND AND WIFE, RECORDED JULY 11, 1964.

***END OF LEGAL DESCRIPTION***



**California Secretary of State**
Electronic Filing



## LLC Registration – Articles of Organization

Entity Name:

|  |  |
|---|---|
| Entity (File) Number: | |
| File Date: | |
| Entity Type: | Domestic LLC |
| Jurisdiction: | California |

Detailed Filing Information

1.  Entity Name:

2.  Business Addresses:

    a.  Initial Street Address of
        Designated Office in California:

    b.  Initial Mailing Address:

3.  Agent for Service of Process:

4.  Management Structure:

5.  Purpose Statement:

    The purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company may be organized under the California Revised Uniform Limited Liability Company Act.

Electronic Signature:

The organizer affirms the information contained herein is true and correct.

Organizer:

**Secretary of State
Statement of Information
(Limited Liability Company)**

| LLC-12 |

**22-A51148**

# FILED

**In the office of the Secretary of State
of the State of California**

**JAN 26, 2022**

This Space For Office Use Only

**IMPORTANT —** This form can be filed online at
bizfile.sos.ca.gov.

Read instructions **before completing this form.**

**Filing Fee - $20.00**

**Copy Fees -** First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

**1. Limited Liability Company Name** (Enter the **exact** name of the LLC. If you registered in California using an alternate name, see instructions.)

THE ATLAS LLC

| **2. 12-Digit Secretary of State Entity Number** | **3. State, Foreign Country or Place of Organization** (only if formed outside of California) |
|---|---|
| 202022310428 | CALIFORNIA |

**4. Business Addresses**

| | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| a. Street Address of Principal Office - Do not list a P.O. Box<br>16821 Edgar Street | Pacific Palisades | CA | 90272 |
| b. Mailing Address of LLC, **if different than item 4a**<br>16821 Edgar Street | Pacific Palisades | CA | 90272 |
| c. Street Address of **California** Office, if Item 4a is not in California<br>Do not list a P.O. Box<br>16821 Edgar Street | Pacific Palisades | CA | 90272 |

**5. Manager(s) or Member(s)**   If no managers have been appointed or elected, provide the name and address of each member. At least one name and address must be listed. If the manager/member is an individual, complete Items 5a and 5c (leave Item 5b blank). If the manager/member is an additional managers/members, enter the names(s) and address(es) on Form LLC-12A.

| a. First Name, if an individual - Do not complete Item 5b | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Clinton | | Brown | |

| b. Entity Name - Do not complete Item 5a |
|---|
| |

| c. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 16821 Edgar Street | Pacific Palisades | CA | 90272 |

**6.  Service of Process** (Must provide either Individual **OR** Corporation.)

    **INDIVIDUAL** – Complete Items 6a and 6b only.  Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is **not** a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Clinton | | Brown | |

| b. Street Address (if agent is **not** a corporation) - **Do not enter a P.O. Box** | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 16821 Edgar Street | Pacific Palisades | **CA** | 90272 |

    **CORPORATION** – Complete Item 6c only.  Only include the name of the registered agent Corporation.

| c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 6a or 6b |
|---|
| |

**7.  Type of Business**

| Describe the type of business or services of the Limited Liability Company |
|---|
| real estate development |

**8.  Chief Executive Officer, if elected or appointed**

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Clinton | | Brown | |

| b. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 16821 Edgar Street | Pacific Palisades | CA | 90272 |

**9.  Labor Judgment**

| Does a Manager or Member have an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal therefrom is pending, for the violation of any wage order or provision of the Labor Code? | ☐ Yes   ☑ No |
|---|---|

**10.**  By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized by California law to sign.

| 01/26/2022 | Clinton Brown | CEO | |
|---|---|---|---|
| Date | Type or Print Name | Title | Signature |

   2021 California Secretary of State
bizfile.sos.ca.gov

# PROMISSORY NOTE SECURED BY DEED OF TRUST
## (This Note contains an Acceleration Clause)
### PARTIALLY AMORTIZED BALLOON PAYMENT NOTE
### BUSINESS PURPOSE LOAN

Loan Number: RMF4027704     Property Address: APN: 2064-005-011 AND APN: 2064-005-015, AGOURA HILLS, CA 91301

Loan Amount: $179,000.00     BURLINGAME, California     OCTOBER 29, 2020

In installments as herein stated, for value received, THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY AND CLINTON BROWN, the undersigned Borrower(s), promise to pay to EXHIBIT D, the Beneficiary, or order, at a place that may be designated by the Beneficiary, the sum of: $179,000.00, ONE HUNDRED SEVENTY NINE THOUSAND DOLLARS exactly with interest from the date of funding on the unpaid principal at the rate of 12.99% percent per annum, payable in 24 partially amortizing installments of $1,948.77 each, beginning on 01/01/2021, and continuing MONTHLY ON THE FIRST DAY OF EACH MONTH thereafter until maturity, 12/01/2022, at which time all sums of principal and interest then remaining unpaid shall be due and payable in full. Interest shall be calculated on a 360 day year and on an ordinary annuity calculation basis. At the option of the Beneficiary, each payment shall be credited first on interest then due, then on late charges, then on advances, then on fees and the remainder on principal; and interest shall thereupon cease upon the principal so credited.

**Default of payment.** Upon default in any payment of any installment, then the balance of this obligation shall become due immediately at the option of the Holder hereof. Principal, interest, and all funds due Beneficiary payable in lawful money of the United States of America. Except where federal law is applicable, this Note shall be construed and enforceable according to the laws of the State of California for all purposes and any terms herein inconsistent therewith are hereby modified to conform to said law at the time of signing of these loan documents. Time is of the essence for each and every obligation under this Note.

**THE FOLLOWING PROVISIONS MAY RESULT IN THE COMPOUNDING OF INTEREST ON YOUR LOAN**

**At the option of the Beneficiary, if any payment should be insufficient to pay the interest then due, the balance of interest remaining shall be added to principal and will bear interest at the Note rate as the principal.**

**At the option of the Beneficiary, if any principal and/or interest installments, late charges, advances and/or costs should be repaid through or by any forbearance, bankruptcy plan or similar repayment plan or foreclosure, the total sum of these amounts will bear interest at the Note rate from the date due or advanced until the date repaid.**

If this Note is not paid when due, the Borrower(s) promise to pay, in addition to the principal and interest due under this Note, all costs of collection and any reasonable attorneys' fees incurred by the Beneficiary thereof on account of such collection, whether or not suit is filed hereon. Each Borrower consents to renewals, replacements, and extensions of time for payment hereof before, at, or after maturity; consents to the acceptance of security for this Note and waives demand, protest and any applicable statute of limitations. Advances shall bear interest at the interest rate stated in the note or the "Default" interest, whichever is higher, from date of advance until date paid in full.

**Payment late charge.** If any installment due hereunder is delinquent more than 10 days, the Borrower to this Note agrees to pay a late charge on each installment of $5.00 or 10.00% of the delinquent payment, whichever is larger. All late charges are to be paid immediately on demand.

**Page 1 of 3**

**Balloon late charge.** In addition, if any balloon payment is delinquent more than TEN days, the borrower will be charged **$17,900.00** as liquidated damages.

Borrower acknowledges that its failure to make timely payments under this Note will cause Lender to incur additional expenses in servicing and processing the Loan and that it is extremely difficult and impractical to determine those additional expenses. Borrower agrees that the late charges provided for in this Note represent fair and reasonable estimates taking into account all circumstances existing on the date of this Note, of the additional expenses Lender will incur by reason of such late payments. The late charges are payable in addition to, and not in lieu of, any default interest provided below.

**Return check charge.** Borrower and Beneficiary agree that it would be difficult to determine the actual damages to the Beneficiary or Beneficiary's agent for the return of an unpaid check provided by Borrower. It is hereby agreed that Borrower will pay the sum equal to 5% of the amount returned or $25.00, whichever is greater. However, in any event the maximum charge for an unpaid check is not to exceed the sum of $35.00. This amount is in lieu of any statutory monetary penalty, if any; however, Beneficiary does not waive any other rights that may be awarded under any statute. Should Borrower have two or more returned checks, for any reason, during the life of the loan, Beneficiary may demand that Borrower make payments in the form of cash, cashiers check or money order.

**Right to assign.** The holder of this Note shall have the right to sell, assign, or otherwise transfer, either in part or in its entirety, this Note, the Deed of Trust, and other instruments evidencing or securing the indebtedness of this Note to one or more investors without Borrower's consent.

**Prepayment penalty.** The principal and accrued interest on this loan may be prepaid in whole or in part at any time without penalty, however, Beneficiary is guaranteed to receive a minimum of **6 months** interest based on the original principal balance together with any interest paid or due in escrow.

**Default Interest.** Should Borrower default on any terms and conditions of this loan, Borrower shall pay a default interest rate in the amount **6.00%** per annum, in addition to the current rate of 12.99%, based on the principal balance and on all outstanding advances and advances to be made after default has occurred. Default interest shall commence as of the date of the default and shall continue until such time default has been cured or loan has been paid off.

**Advancing Fee.** For any advances made to senior encumbrances and/or obligations to protect the Beneficiary's interest in this Note, there will be an advancing fee equal to three (3%) of the amount so advanced subject with a minimum fee of fifty dollars ($50) per advance (per lender). Advances will bear interest at the same rate that is charged on the principal of this Note from the date of advancement to such date when all monies are paid in full in the form of cash and/or certified funds. ALL ADVANCES TO BE REPAID AT NOTE RATE OR DEFAULT INTEREST RATE, WHICHEVER ONE IS HIGHER, FROM DATE OF ADVANCE UNTIL DATE FUNDS ARE RECEIVED BY BENEFICIARY.

**Oral Representations.** The undersigned Borrower hereby states that the Beneficiary, their representative(s) nor any employee RUSHMYFILE, INC. has alluded to, given actual details(s) or discussed other terms of this loan other than what has been agreed to in writing.

**SEVERABILITY; ENTIRE AGREEMENT; AMENDMENTS.** The parties intend that the provisions of this Instrument and all other Loan Documents, including the Deed of Trust securing the indebtedness, shall be legally severable. If any term or provision of this Instrument or any other Loan Document, including the Deed of Trust securing the indebtedness, be determined to any extent by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Instrument or of such other Loan Document, including the aforesaid Deed of Trust, shall not be affected thereby and each term and provision shall be valid and be enforceable to the fullest extent permitted by law. This Instrument and the aforesaid Deed of Trust contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

**Page 2 of 3**

**Binding.** This Note and all of the covenants, promises and agreements contained in it shall be binding on and insure to the benefit of the respective legal and personal representatives, devisees, heirs, successors, and assigns of the Borrower and the Beneficiary.

**Acceleration clause.** This Note is secured by a First Deed of Trust of even date herewith which contains the following provision:

**In the event of sale or transfer, conveyance or alienation of said real property, or any part thereof, or any interest therein, whether voluntary or involuntary (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), Beneficiary shall have the right of acceleration, at its option, to declare the Note secured by the Deed of Trust, irrespective of the maturity date expressed therein, and without demand or notice, immediately due and payable. No waiver of this right shall be effective unless it is in writing. Consent by the Beneficiary to one such transaction shall not constitute waiver of the right to require such consent to succeeding transactions.**

This Note is secured by a Deed of Trust to SUPERIOR LOAN SERVICING, as Trustee.

11/16/2020

THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, BY CLINTON BROWN, MANAGING MEMBER – Borrower                    /Date

11/16/2020

CLINTON BROWN – Co-Borrower                    /Date



the Trustee for cancellation before reconveyance or Trustee's Deed. This loan was originated by RUSHMYFILE, INC., License No. 01893519, NMLS No. 396905, a company licensed by the Bureau of Real Estate (formerly the Department of Real Estate).

**Page 3 of 3**

# Exhibit D

**<u>LENDER VESTING</u>**

STEVE WEERA TONASUT, TRUSTEE OF THE TONASUT FAMILY TRUST DATED JUNE 14, 2004

 **This page is part of your document - DO NOT DISCARD** 



## 20201688735



**Pages:**
**0021**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**12/18/20 AT 08:00AM**

|  |  |
|---|---|
| FEES: | 84.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 84.00 |





**L E A D S H E E T**



**202012180190061**

**00019565344**



**011590631**

**SEQ:**
**02**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

*E460070*



E08_201218_8000049

RECORDED AT REQUEST OF
EQUITY TITLE CO

WHEN RECORDED MAIL TO
SUPERIOR LOAN SERVICING
7525 TOPANGA CANYON BLVD
CANOGA PARK, CA. 91303

(FOR RECORDER'S USE ONLY)

DEED OF TRUST AND ASSIGNMENT OF RENTS

(Please fill in document Title(s) on this line)

SB 2 Exemptions (choose the statement that applies):

⦿ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with a transfer subject to the imposition of documentary transfer tax"

○ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with a transfer of real property that is a residential dwelling to an owner-occupier"

○ Exempt from fee per GC 27388.1 (a) (1); "fee cap of $225 reached"

○ Exempt from fee per GC 27388.1 (a) (1); "not related to real property"

39-01707-0600

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

Superior Loan Servicing
7525 Topanga Canyon Blvd
Canoga Park, CA 91303
Loan Number: RMF4027704

Property Address:
APN: 2064-005-011 AND APN: 2064-005-015
AGOURA HILLS, CA 91301

APN: 2064-005-011; 2064-005-015          SPACE ABOVE THIS LINE FOR RECORDERS USE

# DEED OF TRUST
# AND ASSIGNMENT OF RENTS

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19, 20 and 22. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated OCTOBER 29, 2020, together with all Riders to this document.

**(B) "Borrower"** is THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY. Borrower is the trustor under this Security Instrument. Borrower's mailing address is: 10226 REGENT STREET, LOS ANGELES, CA 90034.

**(C) "Lender"** is EXHIBIT D. Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is SUPERIOR LOAN SERVICING, to whom Borrower irrevocably grants, transfers and assigns property, in Trust, with Power of Sale.

**(E) "Note"** means the promissory note signed by Borrower and dated OCTOBER 29, 2020. The Note states that Borrower owes Lender ONE HUNDRED SEVENTY NINE THOUSAND DOLLARS exactly (U.S. $179,000.00) plus interest.

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower : Assignment of Rents and Profits; Security Agreement and Protection of Lenders' Security Rider.

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** mean those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5 for (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (1) principal and interest under the Note, plus (2) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (a) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (b) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of **LOS ANGELES**, which currently has the address of **APN: 2064-005-011 AND APN: 2064-005-015, AGOURA HILLS, CA 91301** and fully described as:

**SEE LEGAL DESCRIPTION ATTACHED EXHIBIT "A"**

**APN # 2064-005-011; 2064-005-015**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and nonuniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity or (d) Electronic Funds Transfer. Additionally, Lender can require payment due to senior encumbrances, including insurance, in the forms listed above.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment(s) or partial payment(s) if the payment(s) or partial payments are insufficient to bring the Loan current. Lender may accept any payment(s) or partial

payment(s) insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment(s) or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment(s) to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to any amounts under the Note owed by Borrower. Lender shall decide how to apply funds. Should a Notice of Default be of record, funds may be applied and the Notice of Default shall remain valid. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: First - interest due under the Note; Second - principal due under the Note; Third - amounts due under Section 3. However, should advances be made under this Deed of Trust, Lender has sole discretion as to the distribution as to how payments shall be applied when received. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Should Lender require, borrower or his successor shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 9. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 8 and pay such amount and Borrower shall then be obligated under Section 8 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust including borrower's covenants to make payments when due. Additionally, borrower shall pay all taxes, assessments, charges, including garbage billings, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given (excluding Deed of Trust liens, which need no notice), Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.   Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (1) a onetime charge for flood zone determination, certification and tracking services or (2) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

Borrower is to provide and deliver evidence of insurance to lender, which is to the satisfaction of Lender.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made

promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (1) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (2) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration. Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause. Additionally, should Borrower be conducting illegal activity on or about the property, this shall constitute a breach under this security agreement.

**7. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, fraudulent, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**8. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (1) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (2) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (3) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to, (1) paying any sums secured by a lien which has priority over this Security Instrument, (2) appearing in court, and (3) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. The parties hereto agree that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

9. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a nonrefundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 9 affects Borrower's obligation to pay interest at the rate provided in the Note.

10. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender. If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment

of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.
All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, foreclosure fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's Mailing Address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Mailing Address unless Borrower has designated a substitute notice address by notice to Lender.

**Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.**

Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument. Borrower requests that a copy of any Notice of Default and any Notice of Sale hereunder be mailed to Borrower at the Mailing Address stated herein, unless Borrower has designated another address by Notice to Lender.

**15.** **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (1) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (2) words in the singular shall mean and include the plural and vice versa, and (3) the word "may" gives sole discretion without any obligation to take any action.

**16.** **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17.** **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

In the event of sale or transfer, conveyance or alienation of said real property, or any part thereof, or any interest therein, whether voluntary or involuntary (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), Beneficiary shall have the right of acceleration, at it's option, to declare the Note secured by the Deed of Trust, irrespective of the maturity date expressed therein, and without demand or notice, immediately due and payable. No waiver of this right shall be effective unless it is in writing. Consent by the Beneficiary to one such transaction shall not constitute waiver of the right to require such consent to succeeding transactions.

**18.** **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (i) five business days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (ii) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (iii) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, foreclosure fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19.** **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer(s) and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20.   Hazardous Substances.** As used in this Section 20: (1) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (2) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (3) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (4) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup .

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (1) that is in violation of any Environmental Law, (2) which creates an Environmental Condition or (3) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (1) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (2) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (3) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21.   Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee, Agent of Beneficiary or Agent of Trustee, of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold the Property, which notice Trustee, Agent of Beneficiary or Agent of Trustee shall cause to be filed for record. Trustee, Agent of Beneficiary or Agent of Trustee shall be entitled to rely upon the correctness of such notice.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee or Trustee's Agent, without demand on Borrower, shall sell the Property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as Trustee or Beneficiary may determine at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee, or Trustee's Agent may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Borrower, Trustee or Beneficiary as herein defined, may purchase at such sale. Trustor hereby waives any and all rights expressed or implied under California Civil Code Section 2924g(b). All junior lienholders shall be bound by this as well.

If the Mortgaged Property consists of several lots, parcels or items of property, Beneficiary may: (a) designate the order in which such lots, parcels or items shall he offered for sale or sold, or (b) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Beneficiary deems in its best interest. Any person, including Trustor, Trustee or Beneficiary, may purchase at any sale hereunder, and Beneficiary shall have the right to purchase at any sale hereunder by crediting upon the bid price the amount of all or any part of the indebtedness hereby secured. Should Beneficiary desire that more than one sale or other disposition of the Mortgaged Property be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed of Trust on any part of the Mortgaged Property not sold until all indebtedness secured hereby has been fully paid. In the event Beneficiary elects to dispose of the Mortgaged Property through more than one sale, Trustor agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein the same may be made, including reasonable compensation to Trustee and Beneficiary, their agents and counsel, and to pay all expenses, liabilities and advances made or incurred by Trustee in connection with such sale or sales, together with interest on all such advances made by Trustee at the lower of the rate set forth in the Note, or the maximum rate permitted by law to be charged by Trustee.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with

the sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby, and the remainder, if any, to the person or persons legally entitled thereto.

**22.   The Agreement is Binding.** This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devises, administrators, executors, successors and assigns. The term "Beneficiary" shall mean the owner and holder, including pledgees, of the Note secured hereby, whether or not named as Beneficiary herein. In this Deed of Trust, whenever the contract so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. As used herein, "fixtures" includes but is not limited to carpeting, built-in appliances, drapery and drapery rods, landscaping, water tanks, plumbing, machinery, air conditioners, ducts, and the like.

**23.   Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, and if the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24.   Grievances.** Neither Borrower nor Lender may commence, join, or be joined to any judicial action, except an appointment of a receiver and/or a judicial foreclosure (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 55.

**25.   Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law.

**26.   Multiple Lender Loans:** Pursuant to Civil Code Section 2941.9, if this Deed of Trust has more than one Beneficiary (Lender) with an undivided interest, it is subject to a signed agreement between all of the Lenders to be governed by the Lenders holding more than 50% of the record beneficial interest of this Deed of Trust. This may occur during escrow or after the close of escrow. Additionally, pursuant to Business & Professions Code Section 10238(i), the holders of more than 50% of the recorded beneficial interests of the notes or interests may govern the actions to be taken on behalf of all holders in accordance with Civil Code Section 2941.9 in the event of default or foreclosure for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf and the sale, encumbrance, or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

**27.   Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**28.   Senior Lien Information.** Lender may require information on any and all senior lien information from Borrower. Said request must be made in writing to Borrower. Borrower must submit the information to Lender within 20 days of the date of request. Said information can include, but is not limited to: name of senior lien holder, balance due, payment amount, next due date, address of lien holder, phone number of lien holder, loan number and amounts advanced.

**29.   Document Drawing Service.** If a document drawing service has been hired to draw loan documents, Borrower hereby agrees to indemnify and hold Document Drawing Service, its officers, agents and representatives harmless from and against any costs, expense (including, without limitation attorney fees, consulting fees and court costs).

**30.   Indemnification.** Borrower hereby agrees to indemnify (as the same are incurred or accrued) and hold Lender and its officers, agents, representatives harmless from and against any cost, expense (including, without limitation attorney fees, consulting fees and court costs), demand, claim or lawsuit arising out of or related to the Property or the Loan, including, but not limited to any claims made by contractors, suppliers, mechanics lien claimants, homeowner associations, governmental authorities, stop notice claimants, title companies or persons purporting to be injured on or by the Property or by the acts or conduct of Borrower, its contractors, subcontractors, suppliers and or other persons dealing with Borrower. If Borrower fails to provide such indemnity as the same accrues and as expenses

are incurred, the amount not paid shall be added to the principal amount of the Note and bear interest thereon at the same rate then in effect (including any default rate in effect) and shall be secured by the same collateral as securing the Note and Loan Agreement.

**31. Acceptance by Lender of Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full), or any sums secured by this Deed of Trust after a notice of default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payments so made to the loans secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such payment promptly or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

**32. Unsecured Portion of Indebtedness.** If any part of the secured indebtedness cannot be lawfully secured by this Deed of Trust, or if any part of the Property cannot be lawfully subject to the lien and security interest hereof to the full extent of such indebtedness, then all payments made shall be applied on said indebtedness first in discharge of that portion thereof which is unsecured by this Deed of Trust.

**33. Waiver of Marshalling; Other Waivers.** To the extent permitted by law, Borrower waives (i) the benefit of all present or future laws providing for any appraisement before sale of any portion of the Mortgaged Property, (ii) all rights of redemption, valuation, appraisement, stay of execution, notice of election to mature or declare due the whole of the Indebtedness and marshalling in the event of foreclosure of the lien created by this Instrument, (iii) all rights and remedies which Borrower may have or be able to assert by reason of the laws of the State of California pertaining to the rights and remedies of sureties, (iv) the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce the Note or any other obligation secured by this Instrument, and (v) any rights, legal or equitable, to require marshalling of assets or to require upon foreclosure sales in a particular order, including any rights under California Civil Code Sections 2899 and 3433. If the Mortgaged Property consists of several lots, parcels or items of property, Beneficiary may: (a) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (b) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Beneficiary deems in its best interest. Any person, including Trustor, Trustee or Beneficiary, may purchase at any sale hereunder, and Beneficiary shall have the right to purchase at any sale hereunder by crediting upon the bid price the amount of all or any part of the indebtedness hereby secured. Should Beneficiary desire that more than one sale or other disposition of the Mortgaged Property be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed of Trust on any part of the Mortgaged Property not sold until all indebtedness secured hereby has been fully paid. In the event Beneficiary elects to dispose of the Mortgaged Property through more than one sale, Trustor agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein the same may be made, including reasonable compensation to Trustee and Beneficiary, their agents and counsel, and to pay all expenses, liabilities and advances made or incurred by Trustee in connection with such sale or sales, together with interest on all such advances made by Trustee at the lower of the rate set forth in the Note, or the maximum rate permitted by law to be charged by Trustee.

**34. 125% TITLE INSURANCE POLICY.** Borrower agrees to allow Lender to obtain a title policy in an amount exceeding the face amount of the loan by 25% and instruct insuring title company of same. Lender and Borrower acknowledge this increase of coverage is not for the allowance of negative amortization of the principal balance. This additional coverage is to pay for losses the Lender may incur in a case which could increase the amount above the original principal balance coverage. Said losses could include delinquent interest, late charges, attorney fees, advances for insurance, taxes, etc. Borrower acknowledges this increase of coverage does result in a higher fee which Borrower shall bear for the Lender title insurance policy.

**35. Property Assessed Clean Energy ("PACE") (or similar type program).** All Property Assessed Clean Energy ("PACE") (or similar type program) are prohibited. In the event that a PACE assessment/loan becomes a lien on the Property and becomes a part of the payment of property taxes or becomes senior to this Security Instrument in any way, Borrower shall be in breach of the note and this Security Instrument and Lender has the right to take all acts set forth in Security Instrument and to accelerate this Loan. The loan shall be in default and Lender may proceed under Section 21 of this Security Instrument.

**36. SEVERABILITY; ENTIRE AGREEMENT; AMENDMENTS.** The parties intend that the provisions of this Instrument and all other Loan Documents, including the Promissory Note evidencing the indebtedness secured hereby, shall be legally severable. If any term or provision of this Instrument or any other Loan Document, including the Promissory Note evidencing the indebtedness secured hereby, be determined to any extent by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Instrument or of such other Loan Document, including the aforesaid Promissory Note, shall not be affected thereby and each term and provision shall be valid and be enforceable to the fullest extent permitted by law. This Instrument and the aforesaid Promissory Note contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

11/16/2020

THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, BY CLINTON BROWN, MANAGING MEMBER – Borrower                                                        /Date

— Co-Borrower                                                                                            /Date

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____LOS ANGELES_____)

On _NOV 1 0 2020_____ before me, _____LANA BROWN, A NOTARY PUBLIC_____
                                                          (insert name and title of the officer)

personally appeared __Clinton Brown_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

LANA BROWN
Notary Public - California
Los Angeles County
Commission # 2296575
My Comm. Expires Aug 8, 2023

# PROTECTION OF LENDER'S SECURITY RIDER

NOTICE:                THIS RIDER ADDS A PROVISION TO THE SECURITY INSTRUMENT ALLOWING THE LENDER TO REQUIRE PAYMENT OF THE LENDER'S ATTORNEY'S FEES IN BANKRUPTCY CASES.

THIS PROTECTION OF LENDER'S SECURITY RIDER is made OCTOBER 29, 2020, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's note to EXHIBIT D(the "Lender") of the same date (the "Note") and covering the property described in the Security Instrument and located at: **APN: 2064-005-011 AND APN: 2064-005-015, AGOURA HILLS, CA 91301**- Property address.

AMENDED COVENANT. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PROTECTION OF LENDER'S SECURITY
In addition to the uniform covenant contained in section 8 of the Security Instrument, the following information is added:

8. Protection of Lender's Security. If Lender's interest in the Property is materially affected by any proceeding under the Bankruptcy Laws of the United States, Lender, at Lender's option, may take such action, including seeking relief under the Bankruptcy Laws, and disburse such sums, including reasonable attorney's fees, as is necessary to protect Lender's interest.

If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or Applicable Law.

Any amounts disbursed by Lender pursuant to this Section 8, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this Section 8 shall require Lender to incur any expense or take any action hereunder.

By SIGNING BELOW, Borrower accepts and agrees to the terms and covenant contained in this PROTECTION OF LENDER'S SECURITY RIDER.

THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, BY CLINTON BROWN, MANAGING
MEMBER – Borrower                                                                                    /Date

– Co-Borrower                                                                                         /Date

# RIDER TO DEED OF TRUST
# ASSIGNMENT OF RENTS AND PROFITS
# AND SECURITY AGREEMENT

**THIS RIDER** is made this OCTOBER 29, 2020 and is incorporated into and shall be deemed to amend and supplement the Deed of Trust of even date given by the undersigned (the "Borrower") to secure Borrower's promissory note to SUPERIOR LOAN SERVICING, as Trustee for the benefit of EXHIBIT D~ (collectively, "Lender") and covering the Property described in the Deed of Trust and located at APN: 2064-005-011 AND APN: 2064-005-015, AGOURA HILLS, CA 91301.

### 1. Assignment of Rents, Revenues and Profits

(a)  All of Borrower's interest in any leases, membership contracts, concessions agreements, rental agreements or any other agreements pertaining to the Property now existing or hereafter entered into, all of the rents, royalties, issues, profits, revenue, income and other benefits of the Property arising from the use or enjoyment of all or any portion thereof or from any lease or agreement pertaining to occupancy of any portion of the Property now existing or hereafter entered into whether now due, past due, or to become due, and including all unpaid rents, security deposits, prepaid membership fees and dues and other charges (the "Rents and Profits"), are hereby absolutely, presently and unconditionally assigned, transferred and conveyed to Lender to be applied by Lender in payment of the principal and interest and all other sums payable on the Note, and of all other sums payable under the Deed of Trust. Prior to the occurrence of any Event of Default; Borrower shall have a license to collect and receive all Rents and Profits, which license shall be terminable at the sole option of Lender, without regard to the adequacy of its security hereunder and without notice to or demand upon Borrower, upon the occurrence of any Event of Default. It is understood and agreed that neither the foregoing Assignment of Rents and Profits to Lender nor the exercise by Lender of any of its rights or remedies under the Deed of Trust shall be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof, unless and until Lender, in person or by agent, assumes actual possession thereof. Nor shall appointment of a receiver for the Property by any court at the request of Lender or by agreement with Borrower, or the entering into possession of the Property or any part thereof by such receiver, be deemed to make Lender a mortgagee-in-possession or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof. Upon the occurrence of any Event of Default, this shall constitute a direction to and full authority to each lessee under any lease and each guarantor of any lease to pay all Rents and Profits to Lender without proof of the default relied upon. Borrower hereby irrevocably authorizes each lessee and guarantor to rely upon and comply with any notice or demand by Lender for the payment to Lender of any Rents and Profits due or to become due.

(b)  Borrower shall apply the Rents and Profits to the payment of all necessary and reasonable operating costs and expenses of the Property, debt service on the indebtedness secured hereby, and a reasonable reserve for future expenses, repairs and replacements for the Property, before using the Rents and Profits for Borrower's personal use or any other purpose not for the direct benefit of the Property.

### 2. Security Agreement This Deed of Trust is intended to be a security agreement pursuant to the California Uniform Commercial Code for:

(a)  any and all items of personal property specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the California Uniform Commercial Code and which are not in this Deed of Trust effectively made part of the real property, including, without limitation, Borrower's interest in all building materials, fixtures, equipment and machinery incorporated or to be incorporated into improvements constructed and to be constructed on the Property together with all interest of the Borrower in all personal property, appliances, equipment and cost of goods now or hereafter owned or possessed by Borrower located upon, in, or about or used in connection with the Property, including, without limitation, any and all personal property necessary for the operation and maintenance of any business located on the property, together with all increases, substitutes, replacements, proceeds and products thereof and additions and accessions thereto, all rents, issues and profits due or to become due Borrower from or pertaining to said real property, Borrower's interest in any monies deposited by or on behalf of Borrower with any city, county, public body, utility or agency for the installation or as security for the installation of any utility pertaining to the Property, all rights to the use of any trade name, trademark or service mark now or hereafter associated with the business or businesses conducted on said premises (subject, however, to any franchise or license agreements relating thereto) together with all rights of borrower under any policy or policies of insurance covering the foregoing property and all proceeds, loss payments and premium refunds which may be payable with respect to such insurance policies or any other insurance policies insuring said real or personal property and the proceeds of any involuntary disposition, including without limitation any tort judgment proceeds; and

(b)  any and all items of property specified above as part of the Property which, under Applicable Law, constitute fixtures and may be subject to a security interest under Section 9334 and/or 9604 California Uniform Commercial Code.

Borrower hereby grants Lender a security interest in said property, all of which is referred to in this Deed of Trust as "Personal Property," and in all additions thereto, substitutions therefor and proceeds thereof, for the purpose of securing all indebtedness and other obligations of Borrower now or hereafter secured by this Deed of Trust, which shall be a paramount and superior lien on all such Personal Property at all times. Borrower agrees to execute and deliver financing and continuation statements covering the Personal Property from time to time and in such form as Lender may require to perfect and continue the perfection of Lender's lien or security interest with respect to the Personal Property. Borrower shall pay all costs of filing such statements and renewals and releases thereof and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Upon the occurrence of any default of Borrower hereunder, Lender shall have the rights and remedies of a secured party under The California Uniform Commercial Code, including, Section 9604 thereof, as well as all other rights and remedies available at law or in equity.

Notwithstanding anything to the contrary contained in this Paragraph 2, Borrower may from time to time replace items of personal property and fixtures constituting a part of the Property, provided that:

(1)  the replacements for such items of personal property or fixtures are of equivalent value and quality;

(2)  Borrower has good and clear title to such replacement property free and clear of any and all liens, encumbrances, security interests, ownership interests, claims of title (contingents or otherwise), or charges of any kind, or the rights of any conditional sellers, vendors or any third parties in or to such replacement property have been expressly subordinated at no cost to Lender to the lien of the Deed of Trust in a manner satisfactory to Lender; and

(3)  at the option of Lender, Borrower provides at no cost to Lender a satisfactory opinion of counsel to the effect that the Deed of Trust constitutes a valid and subsisting first lien on and security interest in such replacement property and is not subject to being subordinated or the priority thereof affected under any applicable law, including, but not limited to, the provisions of California Commercial Code Sections 9334 and/or 9604.

**IN WITNESS WHEREOF**, Borrowers have executed this Rider as of the date first above written.

11/10/2020

_____
THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, BY CLINTON BROWN, MANAGING
MEMBER – Borrower                                                                /Date


_____
– Co-Borrower                                                                  /Date

# RIDER TO DEED OF TRUST

The following provisions are a part of and incorporated into that certain Deed of Trust and Assignment of Rents dated as of OCTOBER 29, 2020, by and between THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY ("Trustor"), SUPERIOR LOAN SERVICING ("Trustee") and EXHIBIT D ("Beneficiary").

## Assignment of Rents and Profits

**(a) Present Assignment.** All of Trustor's interest in any leases or other occupancy agreements pertaining to the Property now existing or hereafter entered into, and all of the rents, royalties, issues, profits, revenue, income and other benefits of the Property arising from the use or enjoyment of all or any portion thereof or from any lease or agreement pertaining to occupancy of any portion of the Property now existing or hereafter entered into whether now due, past due, or to become due, and including all prepaid rents and security deposits (the "Rents and Profits"), are hereby absolutely, presently and unconditionally assigned, transferred and conveyed to Beneficiary to be applied by Beneficiary in payment of the principal and interest and all other sums payable on the Note and under this Deed of Trust subject to the rights of residential tenants under California Civil Code Section 1950.5(d). Beneficiary waives the right to exercise the rights and powers assigned to Beneficiary herein and agrees not to revoke such waiver until and unless an event of acceleration (as set forth in Section 4 of the Deed of Trust) occurs. It is understood and agreed that neither the foregoing assignment of Rents and Profits to Beneficiary nor the exercise by Beneficiary of any of its rights or remedies hereunder shall be deemed to make Beneficiary a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof, unless and until Beneficiary, in person or by agent, assumes actual possession thereof. Nor shall appointment of a receiver for the Property by any court at the request of Beneficiary or by agreement with Trustor, or the entering into possession of the Property or any part thereof by such receiver, be deemed to make Beneficiary a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property. Upon the occurrence of any event of default, this shall constitute a direction to and full authority to each lessee under any lease to pay all Rents and Profits to Beneficiary without proof of the default. Trustor hereby irrevocably authorizes each lessee to rely on and comply with any notice or demand by Beneficiary for the payment to Beneficiary of any Rents and Profits due or to become due.

**(b) Application of Rents.** Trustor shall apply the Rents and Profits to the payment of all necessary and reasonable operating costs and expenses of the Property, and debt service on the indebtedness secured hereby, before using the Rents and Profits for Trustor's personal use or any other purpose not for the direct benefit of the Property.

**(c) Notice to Tenants.** Trustor shall at all times perform the obligations of lessor under all such leases. Trustor shall at any time or from time to time, upon request of Beneficiary, transfer and assign to Beneficiary in such form as may be satisfactory to Beneficiary, Trustor's interest in any lease, subject to and upon the condition, however, that prior to the occurrence of any event of default hereunder Trustor shall have a license to collect and receive all Rents and Profits under such lease upon accrual, but not prior thereto, as set forth in Paragraph (a) above. Whenever requested by Beneficiary, Trustor shall furnish to Beneficiary a certificate of Trustor setting forth the names of all lessees under any leases, the terms of their respective leases, the space occupied, the rents payable thereunder, and the dates through which any and all rents have been paid.

**(d) Attornment.** Each lease for any part of the Property shall make provision for the attornment of the lessee thereunder to any person succeeding to the interest of Trustor as the result of any foreclosure or transfer in lieu of foreclosure hereunder.

**(e) Direct Creditor.** Beneficiary shall be deemed to be the creditor of each lessee in respect of any assignments for the benefit of creditors and any bankruptcy, arrangement, reorganization, insolvency, dissolution, receivership or other debtor-relief proceedings affecting such lessee (without obligation on the part of Beneficiary, however, to file timely claims in such proceedings or otherwise pursue creditor's rights therein). Beneficiary shall have the right to assign Trustor's right, title and interest in any leases to any subsequent holder of this Deed of Trust or any participating interest therein or to any person acquiring title to all or any part of the Property through foreclosure or otherwise. Any subsequent assignee shall have all the rights and powers herein provided to Beneficiary. Beneficiary shall have the authority, as Trustor's attorney-in-fact, such authority being coupled with an interest and irrevocable, to sign the name of Trustor and to bind Trustor on all papers and documents relating to the operation, leasing and maintenance of the Property.

**(f) Miscellaneous.** _____

_____

_____    11/10/2020

THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, BY CLINTON BROWN, MANAGING
MEMBER – Borrower                                                                /Date

_____    _____

– Co-Borrower                                                                       /Date

EXHIBIT "A"

PARCEL 1:

LOT 3 IN TRACT NO. 33128, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, RECORDED IN BOOK 1099, PAGES 94 TO 97, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT FROM A PORTION OF SAID LAND, ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS AND OTHER HYDROCARBONS, BY WHATSOEVER NAME KNOWN, THAT MAY BE WITHIN OR UNDER THE PARCELS OF LAND HEREINAFTER DESCRIBED, WITHOUT, HOWEVER, THE RIGHT EVER TO DRILL, DIG OR MINE THROUGH THE SURFACE OF SAID LAND THEREFOR OR OTHERWISE IN SUCH MANNER AS TO ENDANGER THE SAFETY OF ANY HIGHWAY THAT MAY BE CONSTRUCTED ON THE LANDS HEREBY CONVEYED AS PROVIDED IN THE DEED RECORDED APRIL 2, 1951 AS INSTRUMENT NO. 3289, OF OFFICIAL RECORDS.

ALSO EXCEPT FROM A PORTION OF SAID LAND, ONE-HALF OF ALL CRUDE OIL, PETROLEUM, GAS, BREA, ASPHALTUM AND ALL KINDRED SUBSTANCES AND OTHER MINERALS UNDER AND IN SAID LAND, WITHOUT RIGHT OF ENTRY, AS PROVIDED IN THE DEED RECORDED DECEMBER 6, 1954 AS INSTRUMENT NO, 540, OF OFFICIAL RECORDS.

ALSO EXCEPT FROM A PORTION OF SAID LAND, ONE-HALF OF ALL MINERALS, OIL, PETROLEUM, ASPHALTUM, GAS, COAL AND OTHER HYDROCARBON SUBSTANCES AND WATER CONTAINED IN, ON, WITHIN AND UNDER SAID LAND, PROVIDED, HOWEVER, THAT THIS GRANT SHALL NEITHER GRANT NOR SHALL IT BE CONSTRUED AS GRANTING TO GRANTEES, THEIR SUCCESSORS IN INTEREST OR ASSIGNS THE RIGHT TO GO UPON OR UNDER SAID LANDS FOR THE PURPOSE OF EXTRACTING ANY OF SAID SUBSTANCES, AS PROVIDED IN THE DEED RECORDED OCTOBER 23, 1958 AS INSTRUMENT NO. 1532, OF OFFICIAL RECORDS.

ALSO EXCEPT ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS AND OTHER  HYDROCARBONS BY WHATSOEVER NAME KNOWN THAT MAY BE WITHIN OR UNDER THE HEREIN CONVEYED PARCEL OF LAND, AND THE RIGHTS THERETO, TOGETHER WITH CERTAIN OTHER CONDITIONS, AS EXCEPTED IN SAID PARCELS 45809-5 AND 46809-6 OF SAID FINAL ORDER OF CONDEMNATION, IN DEED (STATE PARCEL 18.1A) RECORDED APRIL 2, 1951 IN BOOK 35947 PAGE 142, OFFICIAL RECORDS, IN SAID PARCELS 1 AND 2 OF DEEDS (STATE PARCEL B7694).

PARCEL 2:

THAT PORTION OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER AND OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 25, TOWNSHIP 1 NORTH, RANGE 18 WEST, AND THAT PORTION OF GOVERNMENT LOT 3 OF SAID SECTION 25, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEASTERLY TERMINUS OF THAT CERTAIN COURSE DESCRIBED IN PARCEL 2 OF SAID DEED RECORDED IN BOOK 35947 PAGE 142, OF OFFICIAL RECORDS, AS HAVING A BEARING OF SOUTH 58° 434' 09" WEST, A DISTANCE OF 147.26 FEET; THENCE ALONG THE SOUTHERLY LINE OF THE LAND DESCRIBED IN LAST SAID DEED SOUTH 84° 44' 04" EAST, (ON A DIFFERENT BASIS OF BEARING), 182.76 FEET TO A TANGENT CURVE IN SAID SOUTHERLY LINE, CONCAVE NORTHERLY AND HAVING A RADIUS OF 2,050 FEET; THENCE ALONG SAID CURVE EASTERLY, THROUGH AN ANGLE OF 02° 20' 44" AN ARC DISTANCE 83.92 FEET;

ORDER NO. 3910120-06600

### LEGAL DESCRIPTION CONTINUED

THENCE SOUTH 41° 07' 44" WEST, 275.25 FEET; THENCE SOUTH 52° 31' 06" WEST, 207.20 FEET; THENCE SOUTH 84° 11' 33" WEST, 124.90 FEET; THENCE NORTH 62° 04' 30" WEST, 287.87 FEET; THENCE NORTH 77° 18' 25" WEST, 360.87 FEET; THENCE SOUTH 71° 31' 30" WEST, 155.86 FEET; THENCE SOUTH 75° 17' 41" WEST, 146.58 FEET; THENCE SOUTH 80° 06' 39" WEST, 237.08 FEET TO A POINT IN SAID SOUTHERLY LINE OF LAND DESCRIBED IN SAID DEED; THENCE IN A GENERAL EASTERLY DIRECTION ALONG SAID SOUTHERLY LINE, THROUGH THE VARIOUS COURSES AND DISTANCES THEREIN, TO THE POINT OF BEGINNING.

EXCEPTING THAT PORTION OF LAND RECORDED IN DEED 1996-1294372.

EXCEPT ONE-HALF OF ALL CRUDE OIL, PETROLEUM, GAS, BREA, ASPHALTUM AND ALL KINDRED SUBSTANCES AND OTHER MINERALS, UNDER AND IN SAID LAND, WITHOUT RIGHT OF ENTRY, AS RESERVED IN THE DEED FROM NORBERT R. NETTLESHIP AND M. ATHEA WHITE NETTLESHIP, HUSBAND AND WIFE, RECORDED DECEMBER 6, 1954 IN BOOK 46287 PAGE 361, OF OFFICIAL RECORDS.

ALSO EXCEPTING THREFROM ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS, AND OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN THAT MAY BE WITHIN OR UNDER THE PARCEL OF LAND HEREINABOVE DESCRIBED TOGETHER WITH THE PERPETUAL RIGHT OF DRILLING, MINING, EXPLORING AND OPERATING THEREFOR AND REMOVING THE SAME FROM SAID LAND OR ANY OTHER LAND, INCLUDING THE RIGHT TO WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THOSE HEREINABOVE DESCRIBED, OIL OR GAS WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF THE LAND HEREIN ABOVE DESCRIBED, AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS UNDER SAID BENEATH OR BEYOND THE EXTERIOR LIMITS THEREOF, AND TO REDRILL, RETUNNEL, EQUIP, MAINTAIN, REPAIR, DEEPEN AND OPERATE ANNY SUCH WELLS OR MINES, WITHOUT, HOWEVER, THE RIGHT TO DRILL, MINE, EXPLORE AND OPERATE THROUGH THE SURFACE OR THE UPPER 100 FEET OF THE SUBSURFACE OF THE LAND HEREINABOVE DESCRIBED OR OTHERWISE IN SUCH MANNER AS TO ENDANGER THE SAFETY OF ANY HIGHWAY THAT MAY BE CONSTRUCTED ON SAID LANDS, AS EXCEPTED BY DEED FROM BOB HOPE, WHO ACQUIRED TITLE AS LESTER T. HOPE AND DOLORES HOPE, HUSBAND AND WIFE, RECORDED JULY 11, 1964.

**\*\*\*END OF LEGAL DESCRIPTION\*\*\***

# Exhibit D

**<u>LENDER VESTING</u>**

STEVE WEERA TONASUT, TRUSTEE OF THE TONASUT FAMILY TRUST DATED JUNE 14, 2004



**This page is part of your document - DO NOT DISCARD**



## 20220123442



**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**02/01/22 AT 08:00AM**

**Pages:
0006**

| | |
|---|---|
| FEES: | 34.00 |
| TAXES: | 110.00 |
| OTHER: | 0.00 |
| PAID: | 144.00 |



**L E A D S H E E T**



**202202010160023**

**00021891968**



**013119153**

**SEQ:
01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

*E442318*



3910120-06606

Recording requested by and
when recorded mail to:

Steve Weera Tonasut
20147 Chapter Dr.
Woodland Hills, CA 91364

Mail Tax Statements to:

Atlas LLC
16821 Edgar Street,
Pacific Palisades, CA 90272

## GRANT DEED



THE UNDERSIGNED GRANTOR(s) DECLARE(s) THAT DOCUMENTARY TRANSFER TAX IS $110.00
☐ computed on full value of property conveyed, or
☒ computed on full value less liens or encumbrances remaining at the time of sale
☒ unincorporated area:

The Atlas LLC, a California Limited Liability Company, hereby remise, release and
quitclaim to STEVE WEERA TONASUT, Trustee of the TONASUT FAMILY TRUST
dated JUNE 14, 2004, an undivided 15% interest, in and to the real property in County of
Los Angeles, State of California, described as follows:

Attached hereto as Exhibit "A"

ASSESSOR'S PARCEL NUMBER        2064-005-011 and 2064-005-015

Dated  1/28/2022                 SEE ATTACHED
                                 CERTIFICATE

Atlas, LLC, A California Limited Liability Company

Clinton Brown, Member
        AKA CLINTON BYRON BROWN
Atlas, LLC, A California Limited Liability Company

Emil Assentato, Member

Atlas LLC A California Limited Liability Company

Tax Deeds Enterprises, LLC Member
Emil Assentato

MAIL TAX STATEMENTS AS SHOWN ABOVE

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _New York_ )ss

County of _Nassau_ )

On _January 27, 2022_ , before me, _Patricia Valle_ ,

a Notary Public, personally appeared Emil Assentato, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ~~California~~ _New York_ that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Notary Public

PATRICIA VALLE
NOTARY PUBLIC - STATE OF NEW YORK
No. 01VA6122337
Qualified in Nassau County
Commission Expires 02/07/2025

**CALIFORNIA ACKNOWLEDGMENT**                                   **CIVIL CODE § 1189**

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California

County of __LOS ANGELES__

On __01 - 28 - 2022__ before me, __RONNY NAIDOO (NOTARY PUBLIC)__
_____Date_____                            _Here Insert Name and Title of the Officer_

personally appeared __CLINTON BYRON BROWN__
                              _Name(s) of Signer(s)_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

RONNY NAIDOO
Notary Public - California
Los Angeles County
Commission # 2267130
My Comm. Expires Dec 10, 2022

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
_Place Notary Seal and/or Stamp Above_                  _Signature of Notary Public_

---

──────── **OPTIONAL** ────────

_Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document._

**Description of Attached Document**
Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| □ Corporate Officer – Title(s): _____ | □ Corporate Officer – Title(s): _____ |
| □ Partner – □ Limited □ General | □ Partner – □ Limited □ General |
| □ Individual    □ Attorney in Fact | □ Individual    □ Attorney in Fact |
| □ Trustee    □ Guardian or Conservator | □ Trustee    □ Guardian or Conservator |
| □ Other: _____ | □ Other: _____ |
| Signer is Representing: _____ | Signer is Representing: _____ |

---

©2019 National Notary Association

ORDER NO. 3910120-06600

## EXHIBIT "A"

**PARCEL 1:**

LOT 3 IN TRACT NO. 33128, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, RECORDED IN BOOK 1099, PAGES 94 TO 97, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT FROM A PORTION OF SAID LAND, ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS AND OTHER HYDROCARBONS, BY WHATSOEVER NAME KNOWN, THAT MAY BE WITHIN OR UNDER THE PARCELS OF LAND HEREINAFTER DESCRIBED, WITHOUT, HOWEVER, THE RIGHT EVER TO DRILL, DIG OR MINE THROUGH THE SURFACE OF SAID LAND THEREFOR OR OTHERWISE IN SUCH MANNER AS TO ENDANGER THE SAFETY OF ANY HIGHWAY THAT MAY BE CONSTRUCTED ON THE LANDS HEREBY CONVEYED AS PROVIDED IN THE DEED RECORDED APRIL 2, 1951 AS INSTRUMENT NO. 3289, OF OFFICIAL RECORDS.

ALSO EXCEPT FROM A PORTION OF SAID LAND, ONE-HALF OF ALL CRUDE OIL, PETROLEUM, GAS, BREA, ASPHALTUM AND ALL KINDRED SUBSTANCES AND OTHER MINERALS UNDER AND IN SAID LAND, WITHOUT RIGHT OF ENTRY, AS PROVIDED IN THE DEED RECORDED DECEMBER 6, 1954 AS INSTRUMENT NO, 540, OF OFFICIAL RECORDS.

ALSO EXCEPT FROM A PORTION OF SAID LAND, ONE-HALF OF ALL MINERALS, OIL, PETROLEUM, ASPHALTUM, GAS, COAL AND OTHER HYDROCARBON SUBSTANCES AND WATER CONTAINED IN, ON, WITHIN AND UNDER SAID LAND, PROVIDED, HOWEVER, THAT THIS GRANT SHALL NEITHER GRANT NOR SHALL IT BE CONSTRUED AS GRANTING TO GRANTEES, THEIR SUCCESSORS IN INTEREST OR ASSIGNS THE RIGHT TO GO UPON OR UNDER SAID LANDS FOR THE PURPOSE OF EXTRACTING ANY OF SAID SUBSTANCES, AS PROVIDED IN THE DEED RECORDED OCTOBER 23, 1958 AS INSTRUMENT NO. 1532, OF OFFICIAL RECORDS.

ALSO EXCEPT ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS AND OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN THAT MAY BE WITHIN OR UNDER THE HEREIN CONVEYED PARCEL OF LAND, AND THE RIGHTS THERETO, TOGETHER WITH CERTAIN OTHER CONDITIONS, AS EXCEPTED IN SAID PARCELS 45809-5 AND 46809-6 OF SAID FINAL ORDER OF CONDEMNATION, IN DEED (STATE PARCEL 18.1A) RECORDED APRIL 2, 1951 IN BOOK 35947 PAGE 142, OFFICIAL RECORDS, IN SAID PARCELS 1 AND 2 OF DEEDS (STATE PARCEL B7694).

**PARCEL 2:**

THAT PORTION OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER AND OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 25, TOWNSHIP 1 NORTH, RANGE 18 WEST, AND THAT PORTION OF GOVERNMENT LOT 3 OF SAID SECTION 25, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEASTERLY TERMINUS OF THAT CERTAIN COURSE DESCRIBED IN PARCEL 2 OF SAID DEED RECORDED IN BOOK 35947 PAGE 142, OF OFFICIAL RECORDS, AS HAVING A BEARING OF SOUTH 58° 434' 09" WEST, A DISTANCE OF 147.26 FEET; THENCE ALONG THE SOUTHERLY LINE OF THE LAND DESCRIBED IN LAST SAID DEED SOUTH 84° 44' 04" EAST, (ON A DIFFERENT BASIS OF BEARING), 182.76 FEET TO A TANGENT CURVE IN SAID SOUTHERLY LINE, CONCAVE NORTHERLY AND HAVING A RADIUS OF 2,050 FEET; THENCE ALONG SAID CURVE EASTERLY, THROUGH AN ANGLE OF 02° 20' 44" AN ARC DISTANCE 83.92 FEET;

## LEGAL DESCRIPTION CONTINUED

THENCE SOUTH 41° 07' 44" WEST, 275.25 FEET; THENCE SOUTH 52° 31' 06" WEST, 207.20 FEET;
THENCE SOUTH 84° 11' 33" WEST, 124.90 FEET; THENCE NORTH 62° 04' 30" WEST, 287.87 FEET;
THENCE NORTH 77° 18' 25" WEST, 360.87 FEET; THENCE SOUTH 71° 31' 30" WEST, 155.86 FEET;
THENCE SOUTH 75° 17' 41" WEST, 146.58 FEET; THENCE SOUTH 80° 06' 39" WEST, 237.08 FEET TO
A POINT IN SAID SOUTHERLY LINE OF LAND DESCRIBED IN SAID DEED; THENCE IN A GENERAL
EASTERLY DIRECTION ALONG SAID SOUTHERLY LINE, THROUGH THE VARIOUS COURSES AND
DISTANCES THEREIN, TO THE POINT OF BEGINNING.

EXCEPTING THAT PORTION OF LAND RECORDED IN DEED 1996-129437.

EXCEPT ONE-HALF OF ALL CRUDE OIL, PETROLEUM, GAS, BREA, ASPHALTUM AND ALL KINDRED
SUBSTANCES AND OTHER MINERALS, UNDER AND IN SAID LAND, WITHOUT RIGHT OF ENTRY, AS
RESERVED IN THE DEED FROM NORBERT R. NETTLESHIP AND M. ATHEA WHITE NETTLESHIP,
HUSBAND AND WIFE, RECORDED DECEMBER 6, 1954 IN BOOK 46287 PAGE 361, OF OFFICIAL
RECORDS.

ALSO EXCEPTING THREFROM ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS,
NATURAL GAS RIGHTS, AND OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN THAT
MAY BE WITHIN OR UNDER THE PARCEL OF LAND HEREINABOVE DESCRIBED TOGETHER WITH
THE PERPETUAL RIGHT OF DRILLING, MINING, EXPLORING AND OPERATING THEREFOR AND
REMOVING THE SAME FROM SAID LAND OR ANY OTHER LAND, INCLUDING THE RIGHT TO
WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THOSE
HEREINABOVE DESCRIBED, OIL OR GAS WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR
ACROSS THE SUBSURFACE OF THE LAND HEREIN ABOVE DESCRIBED, AND TO BOTTOM SUCH
WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS UNDER SAID
BENEATH OR BEYOND THE EXTERIOR LIMITS THEREOF, AND TO REDRILL, RETUNNEL, EQUIP,
MAINTAIN, REPAIR, DEEPEN AND OPERATE ANNY SUCH WELLS OR MINES, WITHOUT, HOWEVER,
THE RIGHT TO DRILL, MINE, EXPLORE AND OPERATE THROUGH THE SURFACE OR THE UPPER
100 FEET OF THE SUBSURFACE OF THE LAND HEREINABOVE DESCRIBED OR OTHERWISE IN
SUCH MANNER AS TO ENDANGER THE SAFETY OF ANY HIGHWAY THAT MAY BE CONSTRUCTED
ON SAID LANDS, AS EXCEPTED BY DEED FROM BOB HOPE, WHO ACQUIRED TITLE AS LESTER T.
HOPE AND DOLORES HOPE, HUSBAND AND WIFE, RECORDED JULY 11, 1964.

**\*\*\*END OF LEGAL DESCRIPTION\*\*\***

DocuSign Envelope ID: 94E83CFF-48F1-4CFC-938D-13063169D6C4

*Loan No: RMF4027704*                                      *Borrower: THE ATLAS LLC*

## LOAN EXTENSION/MODIFICATION AGREEMENT

THIS AGREEMENT ("Agreement") is made **02/28/2022**, by and between **Steve Weera Tonasut,** ~~Trustee of the Tonasut Family Trust Dated June 14, 2004, as to an undivided 100.000%~~ **interest,** ("Lender") and **The Atlas LLC, A California Limited Liability Company,** ("Borrower").

## RECITALS

A.   Lender has made a loan (the "Loan") to Borrowers evidenced by a promissory note (the "Note") in the amount of **$179,000.00** dated **10/29/2020** which is secured by a Deed of Trust   (the "Deed of Trust") dated **10/19/2020** recorded on **12/18/2020** as Doc# **20201688735** Book; Page; of Official Records of **Los Angeles County**, California (collectively the Note and the Deeds of Trust hereinafter shall be referred to as the "Loan Documents").

B.   By its terms, the Note becomes due on **12/01/2022** the "Maturity Date".

C.   Borrower desires to ☐ extend the Maturity Date of the Note and/or ☒ modify the terms of the Note and Lender is willing to accommodate Borrower's desire, on the terms and conditions contained herein.

**NOW THEREFORE**, for valuable consideration receipt of which is hereby acknowledged, the parties agree as follows:

1.   **Confirmation of Loan Amount.**  As of the date of this Agreement the principal due on the Loan is **$178,907.80**

2.   **Description of Modifications.**

(a) **Interest Rate.**    The interest rate shall be ☒ unchanged or ☐ modified to **12.990%** per annum.

(b) **Maturity Date ("Due Date").**    The Maturity Date ☒ shall remain the same **12/01/2022** or ☐ is extended to **N/A**, at which time all sums remaining unpaid under the Loan Documents shall be due and payable in full.

3.   **Deferred Payments.**    Borrower and Lender agree to defer **October 2021 – November 2022** monthly interest payments to the Principal Balance each month until **12/01/2022**, at which time all amounts of Principal and Interest shall be due and payable in full.

4.   **Inducement.**    As a material inducement to Lender to enter into this Agreement, Borrower hereby ratifies, reaffirms and agrees that (i) the Loan Documents, as modified herein, represent valid, enforceable and collectible obligations of Borrower, and that there are no existing claims, defenses, personal or otherwise, or rights of set off with respect to any of these Loan

1of 5

Documents, (ii) the liens, security interests, assignments and rights created by the Loan Documents, as modified herein, are valid, enforceable and existing liens, security interests, assignments, and rights, of the priority required by lender, (iii) this Agreement shall in no manner, waive, affect or impair the indebtedness, the Note or any liens and security interests, and (iv) any and all rights or remedies of Lender previously limited, waived or diminished are hereby reinstated in full as if such limitation, waiver or diminishment has not occurred.

5.    **No Further Commitments**.    Borrower acknowledges that Lender's complete agreement with regard to modifying the Loan terms is contained herein and that there have been no other promises or commitments made concerning further modifications, advances, forbearances, waivers, extensions or other agreements.

6.    *Title Insurance and Costs*.   *At Lender's option Borrower shall provide Lender at Borrower's cost a 110.5 endorsement to its title insurance policy assuring Lender that nothing contained herein shall affect or impair the lien of the Deed of Trust or its priority. Borrower shall pay all costs and expenses incurred by Lender in connection with this Agreement, including all title and recording fees.*

7.    **Fees and Costs**.  **Borrower shall pay a nonrefundable fee of $495.00 made to Superior Loan Servicing for Document Preparation.** All such costs, expenses and fees shall be paid in full as a condition precedent to the effectiveness of this Agreement **via cashier's check, money order, or wire**. Also required at time of signing is **Evidence of Current Insurance and Proof that Property Taxes are paid and current.**

8.    **Relief From Stay**.   Borrower agrees that in consideration of the recitals and mutual covenants contained herein and other considerations, including Lender's forbearance, in the event Borrower, or any of them, shall file any petition with any Bankruptcy Court of competent jurisdiction under Title 11 of the U.S. Code as amended or be the subject of any order for relief issued under Title 11 of the U.S. Code as amended, Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code as amended or otherwise on or against the exercise of the rights and remedies otherwise available to Lender as provided in the Loan Documents and as otherwise provided by law and Borrower fully, knowingly and irrevocably hereby waives any and all rights to object to such relief from stay sought by Lender.

9.    **Miscellaneous.**

      (a) **No Waiver**.  Any waivers of the rights of Lender occurring on or before the date hereof shall not, and do not, constitute the waiver of any rights of Lender to fully enforce the terms and conditions of any of the Loan Documents hereafter.

      (b) **Attorneys' Fees**.  In the event of any dispute between the parties regarding this Agreement or the release contained herein, the prevailing party shall be entitled to attorneys' fees, costs and expenses, whether or not litigation is commenced.

2 of 5

(c) **Entire Agreement**.  This Agreement constitutes and expresses the entire understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, whether expressed or implied, oral or written.  This Agreement may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties hereto.  Neither this Agreement nor any portion or provision hereof may be changed, waived or amended orally or in any manner other than by an agreement in writing signed by all the parties hereto.

(d) **Severability**.   The provisions of this Agreement are independent of and separable from each other.  If any provision hereof shall for any reason be held invalid or unenforceable, it is the intent of the parties that such invalidity or unenforceability shall not invalidate any other provision hereof, and that this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

(e) **Further Assurances**.  Borrower shall, upon the request of Lender, execute, acknowledge, and deliver such further instruments or documents and take such other action as may be necessary to perfect or continue any security interest and to effect the purposes and comply with the intent of the Agreement.

(f) **Successors**.  Except as otherwise provided in the Loan Documents or this Agreement, this Agreement shall be binding upon the heirs, executors, administrators, successors and assignees of the respective parties.

(g) **Document References**.  Except as otherwise defined herein or unless the context so requires, the capitalized terms used herein shall have the meanings given to them in the respective Loan Documents.  Any reference in any of the Loan Documents to the Loan, or to the other Loan Documents, shall be deemed to refer to the Loan and the Loan Documents, as modified hereby.  All the Loan Documents shall be deemed modified so as to be in accordance with the modifications contained herein.

(h) **Remaining Terms Unmodified**.  Except as modified herein, the Note, Deed of Trust and other Loan Documents shall remain unaffected, unchanged and unimpaired by reason of this Agreement.

(i) **Applicable Law; Interpretation**.  To the extent not preempted or controlled by the laws of the United States, this Agreement shall be governed by and construed in accordance with the internal and conflict laws of the State of California.

(j) **Effective Date**.  This Agreement shall become effective after all conditions as required herein have been satisfied.

(k) **Time of the Essence**.  Time is of the essence in performing each and all of the terms of this Agreement.

10.          **Claims and Release**.  Borrower acknowledges that Lender requires that as a condition of Lender entering into this Agreement that Borrower release any claim, action, dispute, or demand, including any claim concerning lender liability which Borrower has or may have

3of 5

DocuSign Envelope ID: 94E83CFF-48F1-4CFC-938D-13063169D6C4

against Lender. It is the intention that this Agreement shall resolve or waive all outstanding claims and disputes, if any, between Lender and Borrower.

In consideration of Lender's entering into this Agreement, and for other good and valuable consideration, the receipt of which is hereby acknowledged, Borrower agrees as follows:

(a) Borrower and its agents, employees, attorneys, affiliates, successors and assignees, hereby, effective as of the date of this Agreement, absolutely release and forever discharge Lender and their agents, officers, directors, trustees, employees, successors and assignees, and each of them, of and from any and all claims, demands, damages, liabilities, causes of action, attorney's fees, costs and expenses of every nature, whether known or unknown or holds or at any time has owned or held, by reason of any matter, fact or thing done, omitted or suffered to be done prior to the date of this Agreement, either directly or indirectly, by reason of or arising out of (1) the making of or administration of the Loan; or (2) any other transaction relating to the Loan or the Property.

(b) Borrower warrants and represents that the entire claims which are the subject of the release are owned by Borrower and that no claim or any part thereof, has been assigned to or is owned by anyone other than Borrower and there is no action or litigation pending or instituted involving such claims.

(c) Borrower acknowledges that this release is voluntary and without any duress or undue influence, and is given as part of the consideration for Lender's accommodation of Borrower's request for Loan modification.

(d) Borrower hereby waives and relinquishes all rights and benefits afforded under Section 1542 of the California Civil Code and acknowledges that Borrower may hereafter discover facts different than or in addition to those which Borrower now knows or believes to be true with respect to the claims, demands, damages, liabilities, causes of action, attorneys' fees, costs and expenses above released and agrees that Borrower's release shall be and remain effective in all respects, notwithstanding such different or additional facts. Section 1542 of Civil Code of the State of California reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release which if known by him must have materially affected his settlement with the debtor."

11.   **Arbitration of Disputes**.   If the initials of BORROWER and LENDER appear below, all controversies or claims among or between the parties including BORROWER, LENDER, their respective officers, directors, agents, employees and assignees, arising out of or relating to this Agreement shall be determined by binding arbitration in accordance with applicable rules of the American Arbitration Association or Judicial Arbitration and Mediation Services, In. ("JAMS"), at the election of the party initiating arbitration. Judgment on the arbitrator's award may be entered in any court having jurisdiction. Without waiving a party's right to arbitration, any party may seek judicial relief to: (a) enforce the assignment of rents provision contained in the deed(s) of trust securing the LOAN, including the appointment of a receiver; (b) secure possession of the PROPERTY by an action for unlawful detainer; or (c) commence an action in interpleader for the sole purpose of resolving conflicting claims to funds or DOCUMENTS delivered in escrow. Any proceeding for judicial foreclosure shall not be subject to arbitration. The exercise of the power of sale contained in the deed of trust securing the LOAN, or the exercise of any private

4of 5

default remedies under the California Commercial Code shall not constitute a waiver of the Agreement nor shall they be deemed inconsistent with arbitration.

NOTICE: IF YOU INITIAL IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY A NEUTRAL ARBITRATOR AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP YOUR RIGHT TO HAVE THE DISPUTE *LITIGATED IN A COURT OR JURY TRIAL.  YOU ARE ALSO GIVING UP YOUR* JUDICIAL RIGHTS TO DISCOVERY AND APPEAL.  YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.  NOTWITHSTANDING YOUR ELECTION TO ARBITRATE, YOU HAVE THE RIGHT TO CONTACT APPROPRIATE REGULATORY AGENCIES TO REGISTER A COMPLAINT ABOUT THE COMPANY OR THIS TRANSACTION.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.

BORROWER:                                         LENDER:

_____CB_____        _____        _____        _____
INITIAL                      INITIAL                      INITIAL                      INITIAL

This Loan Extension Agreement may be signed in counterpart, each of which shall be deemed an original and together shall constitute the same agreement.

    **IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date above written.

**BORROWERS**:

**The Atlas LLC, A California Limited Liability Company.**

DocuSigned by:

_Clinton Brown_        5/1/2022        _____
—8C21B57E277C448

Borrower   *Clinton Brown, Managing*        Date        Borrower        Date
           *Member*

*Loan No: RMF4027704*                                    *Borrower: THE ATLAS LLC*

## LOAN EXTENSION/MODIFICATION AGREEMENT

THIS AGREEMENT ("Agreement") is made **02/27/2023**, by and between **Steve Weera Tonasut, Trustee of the Tonasut Family Trust Dated June 14, 2004, as to an undivided 100.000% interest**, ("Lender") and **The Atlas LLC, A California Limited Liability Company**, ("Borrower").

# RECITALS

A.   Lender has made a loan (the "Loan") to Borrowers evidenced by a promissory note (the "Note") in the amount of **$179,000.00** dated **10/29/2020** which is secured by a Deed of Trust (the "Deed of Trust") dated **10/19/2020** recorded on **12/18/2020 as** Doc# **20201688735** Book; Page; of Official Records of **Los Angeles County**, California (collectively the Note and the Deeds of Trust hereinafter shall be referred to as the "Loan Documents").

B.   By its terms, the Note became due on **12/01/2022** the "Maturity Date".

C.   Borrower desires to ☐ extend the Maturity Date of the Note and/or ☒ modify the terms of the Note and Lender is willing to accommodate Borrower's desire, on the terms and conditions contained herein.

**NOW THEREFORE**, for valuable consideration receipt of which is hereby acknowledged, the parties agree as follows:

1.   **Confirmation of Loan Amount.** As of the date of this Agreement the principal due on the Loan is **$202,147.96 A total of $26,259.02 is being added to Principal. New principal balance is $228,406.98.**

2.   **Description of Modifications.**

(a) **Interest Rate.** The interest rate shall be ☒ unchanged or ☐ modified to **12.990%** per annum.

(b) **Maturity Date ("Due Date").** The Maturity Date ☐ shall remain the same or ☒ is extended to **12/01/2023**, at which time all sums remaining unpaid under the Loan Documents shall be due and payable in full. Loan was previously modified on 02/28/2022 with no maturity date extension.

3.   **Deferred Payments.** Borrower and Lender agree to defer **12 months (December 1, 2022 – December 1, 2023)** of monthly interest payments to the Principal Balance, at which time all amounts of Principal and Interest shall be due and payable in full.

4.   **Inducement.** As a material inducement to Lender to enter into this Agreement, Borrower hereby ratifies, reaffirms and agrees that (i) the Loan Documents, as modified herein, represent valid, enforceable and collectible obligations of Borrower, and that there are no existing

1of 5

claims, defenses, personal or otherwise, or rights of set off with respect to any of these Loan Documents, (ii) the liens, security interests, assignments and rights created by the Loan Documents, as modified herein, are valid, enforceable and existing liens, security interests, assignments, and rights, of the priority required by lender, (iii) this Agreement shall in no manner, waive, affect or impair the indebtedness, the Note or any liens and security interests, and (iv) any and all rights or remedies of Lender previously limited, waived or diminished are hereby reinstated in full as if such limitation, waiver or diminishment has not occurred.

5. **No Further Commitments**. Borrower acknowledges that Lender's complete agreement with regard to modifying the Loan terms is contained herein and that there have been no other promises or commitments made concerning further modifications, advances, forbearances, waivers, extensions or other agreements.

6. **Title Insurance and Costs**. At Lender's option Borrower shall provide Lender at Borrower's cost a 110.5 endorsement to its title insurance policy assuring Lender that nothing contained herein shall affect or impair the lien of the Deed of Trust or its priority. Borrower shall pay all costs and expenses incurred by Lender in connection with this Agreement, including all title and recording fees.

7. **Fees and Costs**. Lender shall pay a **$495.00 document preparation fee and a $520.00 extension fee to Superior Loan Servicing on behalf of the borrower (which will be paid back by the borrower upon loan payoff)**. All such costs, expenses and fees shall be paid in full as a condition precedent to the effectiveness of this Agreement **via cashier's check, money order, or wire**. Also required at time of signing is **Evidence of Current Insurance and Proof that Property Taxes are paid and current.**

8. **Relief From Stay**. Borrower agrees that in consideration of the recitals and mutual covenants contained herein and other considerations, including Lender's forbearance, in the event Borrower, or any of them, shall file any petition with any Bankruptcy Court of competent jurisdiction under Title 11 of the U.S. Code as amended or be the subject of any order for relief issued under Title 11 of the U.S. Code as amended, Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code as amended or otherwise on or against the exercise of the rights and remedies otherwise available to Lender as provided in the Loan Documents and as otherwise provided by law and Borrower fully, knowingly and irrevocably hereby waives any and all rights to object to such relief from stay sought by Lender.

9. **Miscellaneous.**

(a) **No Waiver**. Any waivers of the rights of Lender occurring on or before the date hereof shall not, and do not, constitute the waiver of any rights of Lender to fully enforce the terms and conditions of any of the Loan Documents hereafter.

(b) **Attorneys' Fees**. In the event of any dispute between the parties regarding this Agreement or the release contained herein, the prevailing party shall be entitled to attorneys' fees, costs and expenses, whether or not litigation is commenced.

2of 5

DocuSign Envelope ID: D8F4DAC8-AEB0-4B09-AF03-BD3E710F2B04

(c) **Entire Agreement**.  This Agreement constitutes and expresses the entire understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, whether expressed or implied, oral or written.  This Agreement may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties hereto.  Neither this Agreement nor any portion or provision hereof may be changed, waived or amended orally or in any manner other than by an agreement in writing signed by all the parties hereto.

(d) **Severability**.   The provisions of this Agreement are independent of and separable from each other.  If any provision hereof shall for any reason be held invalid or unenforceable, it is the intent of the parties that such invalidity or unenforceability shall not invalidate any other provision hereof, and that this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

(e) **Further Assurances**.  Borrower shall, upon the request of Lender, execute, acknowledge, and deliver such further instruments or documents and take such other action as may be necessary to perfect or continue any security interest and to effect the purposes and comply with the intent of the Agreement.

(f) **Successors**.  Except as otherwise provided in the Loan Documents or this Agreement, this Agreement shall be binding upon the heirs, executors, administrators, successors and assignees of the respective parties.

(g) **Document References**.  Except as otherwise defined herein or unless the context so requires, the capitalized terms used herein shall have the meanings given to them in the respective Loan Documents.  Any reference in any of the Loan Documents to the Loan, or to the other Loan Documents, shall be deemed to refer to the Loan and the Loan Documents, as modified hereby.  All the Loan Documents shall be deemed modified so as to be in accordance with the modifications contained herein.

(h) **Remaining Terms Unmodified**.  Except as modified herein, the Note, Deed of Trust and other Loan Documents shall remain unaffected, unchanged and unimpaired by reason of this Agreement.

(i) **Applicable Law; Interpretation**.  To the extent not preempted or controlled by the laws of the United States, this Agreement shall be governed by and construed in accordance with the internal and conflict laws of the State of California.

(j) **Effective Date**.  This Agreement shall become effective after all conditions as required herein have been satisfied.

(k) **Time of the Essence**.  Time is of the essence in performing each and all of the terms of this Agreement.

10.        **Claims and Release**.  Borrower acknowledges that Lender requires that as a condition of Lender entering into this Agreement that Borrower release any claim, action, dispute, or demand, including any claim concerning lender liability which Borrower has or may have

3of 5

against Lender. It is the intention that this Agreement shall resolve or waive all outstanding claims and disputes, if any, between Lender and Borrower.

In consideration of Lender's entering into this Agreement, and for other good and valuable consideration, the receipt of which is hereby acknowledged, Borrower agrees as follows:

(a) Borrower and its agents, employees, attorneys, affiliates, successors and assignees, hereby, effective as of the date of this Agreement, absolutely release and forever discharge Lender and their agents, officers, directors, trustees, employees, successors and assignees, and each of them, of and from any and all claims, demands, damages, liabilities, causes of action, attorney's fees, costs and expenses of every nature, whether known or unknown or holds or at any time has owned or held, by reason of any matter, fact or thing done, omitted or suffered to be done prior to the date of this Agreement, either directly or indirectly, by reason of or arising out of (1) the making of or administration of the Loan; or (2) any other transaction relating to the Property.

(b) Borrower warrants and represents that the entire claims which are the subject of the release are owned by Borrower and that no claim or any part thereof, has been assigned to or is owned by anyone other than Borrower and there is no action or litigation pending or instituted involving such claims.

(c) Borrower acknowledges that this release is voluntary and without any duress or undue influence, and is given as part of the consideration for Lender's accommodation of Borrower's request for Loan modification.

(d) Borrower hereby waives and relinquishes all rights and benefits afforded under Section 1542 of the California Civil Code and acknowledges that Borrower may hereafter discover facts different than or in addition to those which Borrower now knows or believes to be true with respect to the claims, demands, damages, liabilities, causes of action, attorneys' fees, costs and expenses above released and agrees that Borrower's release shall be and remain effective in all respects, notwithstanding such different or additional facts. Section 1542 of Civil Code of the State of California reads as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release which if known by him must have materially affected his settlement with the debtor."

11. **Arbitration of Disputes**. If the initials of BORROWER and LENDER appear below, all controversies or claims among or between the parties including BORROWER, LENDER, their respective officers, directors, agents, employees and assignees, arising out of or relating to this Agreement shall be determined by binding arbitration in accordance with applicable rules of the American Arbitration Association or Judicial Arbitration and Mediation Services, In. ("JAMS"), at the election of the party initiating arbitration. Judgment on the arbitrator's award may be entered in any court having jurisdiction. Without waiving a party's right to arbitration, any party may seek judicial relief to: (a) enforce the assignment of rents provision contained in the deed(s) of trust securing the LOAN, including the appointment of a receiver; (b) secure possession of the PROPERTY by an action for unlawful detainer; or (c) commence an action in interpleader for the sole purpose of resolving conflicting claims to funds or DOCUMENTS delivered in escrow. Any proceeding for judicial foreclosure shall not be subject to arbitration. The exercise of the power of sale contained in the deed of trust securing the LOAN, or the exercise of any private

4 of 5

default remedies under the California Commercial Code shall not constitute a waiver of the Agreement nor shall they be deemed inconsistent with arbitration.

NOTICE: IF YOU INITIAL IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY A NEUTRAL ARBITRATOR AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP YOUR RIGHT TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL.   YOU ARE ALSO GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL.   YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.  NOTWITHSTANDING YOUR ELECTION TO ARBITRATE, YOU HAVE THE RIGHT TO CONTACT APPROPRIATE REGULATORY AGENCIES TO REGISTER A COMPLAINT ABOUT THE COMPANY OR THIS TRANSACTION.
WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.

BORROWER: _CB_                    LENDER:

_____     _____     _____     _____
INITIAL                    INITIAL                    INITIAL                    INITIAL

This Loan Extension Agreement may be signed in counterpart, each of which shall be deemed an original and together shall constitute the same agreement.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date above written.
**BORROWERS:**

The Atlas LLC, A California Limited Liability
Company

_Clinton Brown_ (DocuSigned by)
0413E3743F9B49E...                         2/28/2023                    _____
Borrower   *Clinton Brown, Managing*      Date      Borrower                              Date
           *Member*

PROOF OF SERVICE

For service on persons not deemed served under Local Rule 5-3.2.1 for documents filed electronically:

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Orange, State of California, and not a party to the above-entitled cause.

On May 22, 2023, I served a true copy of this:

REQUEST FOR JUDICIAL NOTICE I.S.O. MOTION TO DISMISS COMPLAINT BY DEFENDANT TONASUT AS TRUSTEE

by delivering to the person indicated below in the manner as provided in FRCivP 5(b) by depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the following:

Clinton Brown, Pro Se, 16821 Edgar Street, Pacific Palisades CA  90272 (whose business phone is (310) 487-6453 and email clinton@atlasinc.solar)

Place of Mailing: Santa Ana, California.

EMAIL SERVICE: On May 22, 2023, I emailed the document to Clinton Brown at the email address: clinton@atlasinc.solar from my email fredhickman@gmail.com, and did not receive an error message upon the transmission.

Executed on May 22, 2023, at Santa Ana, California.

I hereby certify that I am a member of the Bar of the United States District Court, Central District of California.

/s/ Fred Hickman_____
Fred Hickman
fredhickman@gmail.com