CLINTON BROWN, Pro Se
16821 Edgar Street
Pacific Palisades, CA 90272
clinton@atlasinc.solar
310-487-6453

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINTON BROWN,<br><br>Plaintiff,<br><br>vs.<br><br>STEVE WEERA TONASUT TRUST, EMIL ASSENTATO, TAX DEED ENTERPRISES LLC,<br><br>Defendant. | CASE NO. 2:23-cv-02972-MEMF-KS<br><br>**Opposition to Motion to Dismiss Under Rules 12(b)(1), 12(b)(6) and 9(b) or Statement Under Rule 12(e).**<br><br>**Judge:** Honorable Maame Ewusi-Mensah Frimpong<br><br>**Magistrate Judge:** Karen L. Stevenson<br><br>**Action Filed:** 04/20/2023<br><br>**Action Due:** 05/22/2023 |

**REPLY TO MOTION TO DISMISS UNDER 12(B)(1), 12(B)(6), AND 9(B), OR STATEMENT UNDER 12(E)**

**NOTICE TO THE COURT**, pursuant to *L.R. 7-9*, the Plaintiff submits an opposition to Docket 18 for the hearing scheduled on August 24, 2023, for the Defendant, STEVE WEERA TONASUT TRUST. (Dk. 21).

## STANDING

To establish standing to sue in Federal court, a Plaintiff must show that it has suffered a concrete and particularized injury, one that is both traceable to the Defendant and redressable by a Court Order. *(United States v. Texas, No. 22-58, 599 U.S. ___ (June 23, 2023) (Gorsuch, J., concurring) (citing Lujan v. Defenders of*

*Wildlife, 504 U. S. 555, 560–561 (1992)).* To survive a motion to dismiss, a Complaint must contain sufficient factual matter . . . to state a claim for relief that is plausible on its face. *(Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).* This standard generally only requires a short and plain statement of the claim showing that the pleader is entitled to relief. In additon, F.R.C.P. 9(b) states that an allegation of fraud or mistake must state with particularity the circumstances constituting fraud. Specifically, the circumstances required by F.R.C.P. 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *(Novobilski v. Specialized Loan Servicing, LLC, No. 2:22-cv-00147-MEMF-MAR, 2022 U.S. Dist. LEXIS 148499 (C.D. Cal. Aug. 16, 2022)) (citing Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1106 (9th Cir. 2003); Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993)).*

| **Requirement** | **Details** | **Page Number and Line** |
|---|---|---|
| Who | Steve Weera Tonasut Trust, Emil Assentato, Tax Deed Enterprises LLC (Defendants) | Page 1, Lines 24-28; Page 2, Lines 1-3 |
| What | Failure to disclose the transaction as an "investment contract," and thus a "security," leading to misrepresentation, fraud, and deceit | Page 3, Lines 1-18 |
| When | On or before October 22, 2020, to February 1, 2023. | Page 2, Lines 2-9; Page 3, Lines 14-17 |
| Where | Los Angeles County, California; Property at 27250 Agoura Rd., Calabasas, CA 91302 | Page 2, Lines 3-5 |
| How | Defendants employed capital in a common enterprise, relied solely on the Plaintiff's entrepreneurial capital for the generation of | Page 3, Lines 11-17, Page 3, Lines, 18-20 |

|  | profits, and undercapitalized the development to the detriment of the Plaintiff |  |
|---|---|---|
| Why (Steve Weera Tonasut Trust) | Acquired 15% undivided interest in the Plaintiff's Property for $100,000 on February 1, 2022, and agreed to delay interest payments on the $179,000 deed of trust until December 1, 2023. (To acquire full ownership of the property and money) | Page 3, Lines 15-17 |

To qualify as "strong" within the intendment of *§ 78u-4(b)(2)*, an inference of scienter must be more than merely plausible or reasonable--it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent. *(Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314, 127 S. Ct. 2499 (2007)*. F.R.C.P. 9(b) requires that the circumstances constituting fraud be stated with particularity but provides that malice, intent, knowledge, and other condition of mind of a person, *may be averred generally*. *Id*. The inquiry is whether all of the facts alleged, *taken collectively*, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard. *Id*.

The Defendants' undercapitalization of the enterprise created a situation where the Plaintiff is unable to fulfill financial commitments. (Dk. 1, 3, lines 7-14); (Dk. 27, 13, Section II), (Dk. 30-1, 6). This has put the Plaintiff in a precarious position where the risk of losing the property to the Defendants is not just hypothetical, but imminent. This sequence of events has resulted in concrete, particularized harm to the Plaintiff, and the threat of additional harm is looming. *(Lujan v. Defenders of Wildlife, 504 U. S. 555, 560–561 (1992))*. Plaintiff's standing results from (1) a concrete and particularized injury in fact; *The property is not merely real estate but represents a significant equity investment. The undercapitalization and loss of the asset translates into a considerable financial setback and interrupts the Plaintiff's anticipated income from the equity investment, which effectively functions as a*

*security*, (2) the injury can be traceable to the Defendants' actions*; failure to disclose the transaction as an investment contract and thus a security has led to misrepresentation, fraud, and deceit in the transaction,* (3) a favorable decision for the Plaintiff would result in a remedy for the wrong; *rescission of the Defendants' 50% and 15% ownership, respectively, in the real property obtained from violating security laws.*. Standing has been established by the Plaintiff and the allegations have been pled with the requisite needed for F.R.C.P. 9(b). (Complaint, Dk. 1); (Communications Dk. 30-1, 1-8). This isn't a *de minimis non curat lex* controversy, this is an alleged violation of Federal securities law.

In the alternative, the language of *§ 17(a)* of the 1933 Act, 48 Stat. 84, as amended, *15 U.S.C.S. § 77q(a),* requires scienter under *§ 17(a)(1),* but not under *§ 17(a)(2) or § 17(a)(3). (Aaron v. SEC, 446 U.S. 680, 697, 100 S. Ct. 1945 (1980)).* (Dk 1, 5, No. 3). In the absence of a conflict between reasonably plain meaning and legislative history, the words of a statute must prevail. *Id.* The end to which Congress intends to accomplish, which is providing robust protections for investors and promoting transparency and fairness in financial markets, is treated as the controlling factor of the law. *(A. C. Frost & Co. v. Coeur D'Alene Mines Corp., 312 U.S. 38, 45, para 1, S. Ct. 414 (1941)*). To fulfill the materiality requirement there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available. *(Basic Inc. v. Levinson, 485 U.S. 224, 231-232, 108 S. Ct. 978 (1988)*). Any reasonable investor would not rely on promises that would be broken if they had known that the other party was going to break them from the get-go. Whether scienter is required in this case is up to this Court. *Prima facia*, just a cursory review of the facts, demonstrates the Defendant's aim from the very beginning was to ultimately own the property himself, which without this Court's intervention will come to pass.

## COMMUNICATIONS

**January 2021:** Weera outlines three principles in the written letter. 1) He is an investor in the property. 2) He is offering to be a partner. 3) He says the Plaintiff must let him know about any decision regarding this property. (Dk. 30-1, 1-2)

- **February 2021**: Weera initially expresses interest in the Agoura Hills project and asks how he fits into it. (Dk. 30-1, 3); (Dk. 1, 2, lines 12-13).
- **November 2021**: Weera notes that Clinton Brown "Plaintiff" missed payments in October and November. (Dk. 30-1, 4); (Dk. 1, 3, lines 7-8).
- **January 2022**: Weera's proposal for a change in the ownership structure of the Agoura Hills project was countered. Plaintiff suggested that in exchange for the cancellation of a $179,000 loan and any associated back payments/fees, Weera would receive a 15% ownership stake in the project. The rest of the ownership would be divided between Clinton Brown (35%), Emil Assentato (30%), and Tax Deed Enterprises LLC (20%, a company owned by Emil). (Dk. 30-1, 5); (Dk. 1, 3, lines 11-12). Weera proposed that the Plaintiff would not have to make payments on the 1st Deed of Trust and that he would set aside additional funds for the project. (Dk. 30-1, 6). (Dk. 1, 3, lines 11-13).
- **January 2022**: Weera's lawyer sent the language that was adopted in the LLC Amendment for the transaction. (Dk. 30-1, 7); (Dk. 27, 29-30).
- **November 2022**: Weera proposes a new deal to avoid foreclosure expenses. Weera offers to forgive a $200,000 loan that Atlas LLC owes him in exchange for 70% ownership of the land. This would result in Steve owning 85% of the project, and Atlas LLC owning 15%. (Dk. 30-1, 8); (Dk. 1, 3, lines 18-20).

Pursuant to its statutory grant of rulemaking authority the SEC defined an accredited investor, and the definition creates a practical, bright-line test. *(Morello*

*v. White*, No. CV 16-04440 DMG (AJW), 2017 U.S. Dist. LEXIS 161373 (C.D. Cal. Sep. 5, 2017)). The accredited investor definition attempts to identify those persons whose financial sophistication and ability to sustain the risk of loss of an investment or ability to fend for themselves render the protection of the Securities Act's registration process unnecessary. *Id*. Thus, a person either meets the criteria of an accredited investor or not. Because the definition of accredited investor is an objective test, it is objective to determine whether the Defendants were accredited investors as portrayed by their actions. *(SEC v. Ralston Purina Co. (346 U.S. 119 (1953))*. The fundamental purpose behind the Securities Acts is to eliminate serious abuses in a largely unregulated securities market. *(United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 849, 95 S. Ct. 2051, 44 L. Ed. 2d 621 (1975)*)). The Supreme Court has observed that Congress determined that the best way to achieve its goal of protecting investors was to define the term 'security' in sufficiently broad terms to include within that definition the many types of instruments that in our commercial world fall within the ordinary concept of a security. *(Reves v. Ernst & Young, 494 U.S. 56, 61, 110 S. Ct. 945, 108 L. Ed. 2d 47 (1990))*. Congress, therefore, enacted a definition of security that is sufficiently broad to encompass virtually any instrument that might be offered or sold as an investment. *Id*.

## **SUBJECT MATTER JURISDICTION**

The starting point in every case involving construction of a statute is the language itself. *(Landreth Timber Co. v. Landreth, 471 U.S. 681, 685, II, 105 S. Ct. 2297 (1985))*. United States District Courts have almost exclusive jurisdiction over violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. *(15 U.S.C. § 77v(a) and 15 U.S.C. § 78aa, respectively); (Section 929P(b)(1) of the Dodd Frank Wall Street Reform and Consumer Protection Act, Public Law No. 111-203, 124 Stat. 1376, 1864 (2010))*. Thus, subject matter jurisdiction is established, *in this case*.

## FEDERAL SECURITIY LAWS

Together, the Securities Act of 1933, 48 Stat. 74, *15 U. S. C. §77a et seq.*, and the Securities Exchange Act of 1934, 48 Stat. 881, *15 U. S. C. §78a et seq.*, form the backbone of American securities law. *(Slack Technologies, LLC, FKA Slack Technologies, Inc., et al. v. Pirani, 585 U.S. 1, I. (2023).* Congress meant to bar deceptive devices and contrivances in the purchase or sale of securities whether conducted in the organized markets or face to face. *(SEC v. Zandford, 535 U.S. 813, 822, para 1, 122 S. Ct. 1899 (2002)).* The term security is defined in the Securities Act of 1933 and the Securities Exchange Act of 1934. *(Securities Act of 1933 § 2(a)(1), 15 U.S.C. § 77b(a)(1); (Securities Exchange Act of 1934 § 3(a)(10) 15 U.S.C. § 78c(a)(10) (as amended through P.L. 117-328, enacted December 29, 2022).* The term security is used in slightly different formations, but virtually identical in meaning. *(SEC v. Edwards, 540 U.S. 389, 393, II. 124 S. Ct. 892 (2004) (citing Reves, supra, 61, n.1).* Any contract or action that involves exchanging a security or interest in a security for something of value is considered a sale or an offer to sell. *(Section 2(a)(3); (15 U.S.C. § 77b(a)(3)).* The term issuer means every person who issues or proposes to issue any security. *(Section 2(a)(4) (15 U.S.C. § 77b(a)(4)).* Interstate commerce refers to any communication involving securities that crosses state lines. *(Section 2(a)(7); (15 U.S.C. § 77b(a); (Tcherepnin v. Knight, 389 U.S. 332, 336, para 1, 88 S. Ct. 548 (1967)).* The term security means investment contract, but it is not defined by Congress. *(Edwards, supra).*

## INVESTMENT CONTRACT

The term investment contract under Federal securities law means, an investment (1) in a common venture premised on (2) a reasonable expectation of profits to be (3) derived solely from the entrepreneurial or managerial efforts of others. *(SEC v. W. J. Howey Co., 328 U.S. 293, 298-299, 301, 66 S. Ct. 1100, 1102-1104, 90 L. Ed. 1244, reh. denied 329 U.S. 819, 67 S. Ct. 27, 91 L. Ed. 697 (1946)).*

A common enterprise is a venture in which the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment. *(Brodt v. Bache & Co., 595 F.2d, 460, para 6, (quoting Securities and Exchange Commission v. Glenn W. Turner Enterprises, 474 F.2d 476, 482 n.7 (9th Cir.), cert. denied, 414 U.S. 821, 38 L. Ed. 2d 53, 94 S. Ct. 117 (1973); (Mordaunt v. Incomco, 686 F.2d, 815, 817 (9th Cir.1982)).* It is not necessary that the funds of investors are pooled; what must be shown is that the fortunes of the investors are linked with those of the promoters, thereby establishing the requisite element of vertical commonality. *(United States v. Jones, 712 F.2d 1316, 1321 (9th Cir. 1983) (citing Mordaunt v. Incomco, 686 F.2d 815, 817 (9th Cir.1982); EI Khadem v. Equity Securities Corp., 494 F.2d 1224, 1229 (9th Cir.), cert. denied, 419 U.S. 900, 95 S.Ct. 188, 42 L.Ed.2d 146 (1974)).* It is immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise. *(Howey, supra).* A security and thus an investment contract is a flexible rather than static principle, one that is capable of adaptation. *Id.* In searching for the meaning and scope of the word security in the Securities Act and the Securities Exchange Act, form should be disregarded for substance and the emphasis should be on economic reality. *(Tcherepnin, supra); (Howey); (Edwards); (Reves); (Jones); (Glenn); (Zandford); (Collecting cases).* Thus, a common enterprise exists when there's a direct correlation between the success or failure of the Plaintiff's efforts and the success or failure of the investment.

## **LEGAL ANALYSIS**

Securities laws are meant to be flexible and remedial, not restrictive, to effectively combat fraud. The Acts set higher conduct standards in the securities industry and are not limited to common-law fraud doctrines. The equal sharing of risk of error is achieved by using a preponderance-of-the-evidence standard, which doesn't favor any side. *(Herman & Maclean v. Huddleston, 459 U.S. 375, 390, para*

*2, 382 103 S. Ct. 683, 1983)).* Given the broadly remedial purposes of Federal securities legislation, the burden of proof is reasonably imposed on an issuer who pleads exemption. *(SEC v. Ralston Purina Co., 346 U.S. 119, 126 (1953) (citing Schlemmer v. Buffalo, R. & P. R. Co., 205 U.S. 1, 10 (1907)); Securities Act of 1933, Pub. L. No. 73-22, 48 Stat. 74, preamble (1933)).* Private contracts cannot supersede Federal security laws. *(Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 109 S. Ct. 1917 (1989)).* An investment scheme promising a fixed rate of return can be an investment contract and thus a security subject to Federal security laws. *(Edwards, 397).* The security in question also involved communications and instruments across state lines. *(n.5)* The Securities Act of 1933 prohibits the offer as well as the sale of unregistered, non-exempt securities. The 1934 Act allows investors to recover for fraud in the sale of unregistered shares upon proof of scienter. *(Slack, supra, 4, para 3, (June 1, 2023).* It [1934 Act] allows suits in connection with the purchase or sale of "any security," whether registered or not. §78j. *(Slack supra, 2, para 2).* Thus, the focus of inquiry should be on the need for the protections afforded by registration. *(SEC v. Ralston Purina Co., 346 U.S. 119, 127, para 1, 73 S. Ct. 981 (1953)).* The obvious opportunities for pressure and imposition make it advisable all parties are entitled to compliance with the Acts. *Id.* The law doesn't protect individuals from making bad investments, it protects individuals from bad actors.

## SUBSTANCE OVER FORM

The terms "maker" or "co-maker" could be substituted for "purchaser" or "co-purchaser", or whatever term really. That's a form; and is not the substance of the transaction. The transaction was an investment contract and thus an unregistered security. The protections afforded for the registration of a security ensure that *all parties benefit from such registration*. In this case, the Defendant is clearly the issuer because he is claiming to have an exemption to registration. Thus, the Defendant has

the burden of proof to prove that the transaction was not a security, or alternatively, that an exemption exists for such security. *Iterum*, if we look at the substance of the transaction then this is, *de facto,* an investment contract and thus an unregistered security.

**THEREFORE**, what's in a name? That which we call a rose by any other name would smell as sweet. *In this case it could be said*, if it looks like a duck and quacks like a duck, then it's probably a duck. (Citations omitted).

"I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."

Clinton Brown                                                                                               07/23/2023