UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CLINTON BROWN,

Plaintiff,

v.

EMIL ASSENTATO; TAX DEED
ENTERPTISES, LLC; and STEVE WEERA
TONASUT TRUST,

Defendants.

Case No.:  2:23-cv-02972-MEMF-KS

**ORDER GRANTING REQUESTS FOR JUDICIAL NOTICE AND MOTIONS TO DISMISS [ECF NOS. 18, 26]**

Before the Court are a Motion to Dismiss and Request for Judicial Notice filed by Defendant Steve Weera Tonasut Trust, as well as a Motion to Dismiss and Request for Judicial Notice filed by Defendants Emil Assentato and Tax Deed Enterprises, LLC. ECF Nos. 18, 18-2, 26, 26-2. For the reasons stated herein, the Court GRANTS IN PART both Requests for Judicial Notice and GRANTS both Motions to Dismiss.

/ / /

/ / /

/ / /

1

**BACKGROUND**

I.   **Factual Background**[1]

Plaintiff Clinton Brown ("Brown") is an individual residing in California. Compl. at 1.[2] Defendant Emil Assentato ("Assentato") is an individual residing in New York. *Id.* Defendant Tax Deed Enterprises, LLC ("TDE") is a limited liability company with an address in Florida. *Id.* Assentato controls TDE. *Id.* at 2. Defendant Steve Weera Tonasut Trust ("Tonasut Trust," or collectively with Assentato and TDE, "Defendants") is a trust with an address in California. *Id.* at 1.

On October 22, 2020, Brown, Assentato, and TDE signed an operating agreement that created a partnership. *Id.* at 2. On December 18, 2020, Brown purchased an interest in a property located at 27250 Agoura Road in Calabasas, California (the "Agoura Property"). *Id.* The Agoura Property was previously owned outright by TDE and had an outstanding property tax debt of $171,000. *Id.* at 3. The Agoura Property was sold for a market price of $299,000.

Brown made a $10,000 cash deposit and executed deeds of trust[3] for $179,000 with the Tonasut Trust and $110,000 with Assentato. Brown received a 50% ownership interest in the Agoura Property. *Id.* at 2. Assentato received a 30% ownership interest, and TDE retained 20%. *Id.* Brown was solely responsible for development of the property. *Id.*

In January 2021, Assentato loaned Brown $250,000 to finance the development of a solar farm on the Agoura Property. *Id.* at 3. Brown was individually responsible for paying back the loan

---

[1] Unless otherwise indicated, the following factual background is derived from Plaintiff Clinton Brown's Complaint. ECF No. 1 ("Complaint" or "Compl."). For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations and is therefore not—at this stage—finding that they are true.

[2] The Complaint does not contain numbered paragraphs and so the Court cites to page numbers within the complaint rather than paragraphs. Brown is reminded that, despite his *pro se* status, he is obligated to comply with the Federal Rules of Civil Procedure and the Local Rules. *See* C.D. Cal. L.R. 83-2.2.3 ("Any person appearing pro se is required to comply with these Local Rules, and with [the Federal Rules of Civil Procedure]"); *see also* Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs").

[3] Although the Complaint does not make this clear, the Court understands a "deed of trust" to be a loan agreement between a property purchaser and a lender where title to the property is held by either the lender or a third-party trustee (as opposed to the purchaser) until the loan is repaid. *See* Deed, Black's Law Dictionary (11th ed. 2019).

and paying interest. *Id.* Brown also made interest payments of $1,977 per month to the Tonasut Trust in connection with the $179,000 deed of trust. *Id.* In September 2021, Brown faced a shortage of capital and ceased making interest payments to the Tonasut Trust. *Id.* Also in late 2021, the Los Angeles County Department of Regional Planning rejected an application for a solar farm at the Agoura Property. *Id.* at 3.

Brown then agreed to transfer 15% (from his 50%) ownership in the Agoura Property to the Tonasut Trust in exchange for $100,000 cash and an agreement to delay interest payments on the $179,000 deed of trust. *Id.* This agreement was formalized, and the Tonasut Trust acquired the 15% interest on February 1, 2022. *Id.*

On December 17, 2022, Brown filed a separate lawsuit in this Court against an official in the Los Angeles County Department of Regional Planning alleging that the denial of the solar farm permit was a violation of the Takings Clause of the United States Constitution. *See id.*; *see also Clinton Brown v. Clark R. Taylor*, Case No. 2:22-cv-09203-MEMF-KS.

## II.    Procedural History

Brown filed this action in this Court on April 20, 2023. *See* Compl. Brown brings one cause of action against Assentato, TDE, and the Tonasut Trust: violations of the Securities Exchange Act of 1934 (15 U.S.C. §§ 77a–77rr). In his prayer for relief, Brown requests: (1) that the Court declare that "the land transfer" was an "investment contract" and "security" as defined by 15 U.S.C. § 77b(a)(1) ("Section 77b(a)(1)"); (2) that the Court find that Defendants' omissions in connected with the sale of this "investment contract" violated 15 U.S.C. § 77q(a)(1) ("Section 77q(a)(1)") and 15 U.S.C. § 78j(b) ("Section 78j(b)"); (3) that the Court rescind Defendants' ownership interests in the Agoura Property pursuant to 15 U.S.C. § 77l(a)(2) ("Section 77l(a)(2)"); and (4) that the Court grant other remedies it finds just. *See* Compl. at 6.

The Tonasut Trust filed a Motion to Dismiss on May 22, 2023, alongside a Memorandum of Points and Authorities and Request for Judicial Notice. ECF No. 18 ("Tonasut Motion" or "Tonasut Mot."); ECF No. 18-1 ("Tonasut MPA"); ECF No. 18-2 ("Tonasut RJN"). Assentato and TDE filed a Motion to Dismiss on July 15, 2023, alongside a Memorandum of Points and Authorities and Request for Judicial Notice. ECF No. 26 ("Assentato Motion" or "Assentato Mot."); ECF No. 26-1

("Assentato MPA"); ECF No. 26-2 ("Assentato RJN"). Brown filed an Opposition to the Assentato Motion on July 16, 2023. ECF No. 27 ("First Opp'n"). Brown filed an Opposition to Tonasut Motion on July 23, 2023. ECF No. 30 ("Second Opp'n"). Assentato and TDE filed a Reply in support of their Motion on July 24, 2023. ECF No. 31 ("Assentato Reply"). The Tonasut Trust filed a Reply in support of its Motion on July 31, 2023. ECF No. 32 ("Tonasut Reply").

The Court held a hearing on the Motion on September 21, 2023.

## REQUESTS FOR JUDICIAL NOTICE (ECF Nos. 18-2, 26-2)

### I.    Applicable Law

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b) ("Rule 201"). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).  Once a fact is judicially noticed, the court "must instruct the jury to accept the noticed fact as conclusive." Fed. R. Evid. 201(f).

On a motion to dismiss, courts are generally prohibited from "consider[ing] any material beyond the pleadings." *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee*, 250 F.3d at 688).  Courts generally only consider the complaint and other materials "submitted with and attached to the Complaint." *Id.* at 999. Documents not attached to the complaint—including documents that might otherwise be subject to judicial notice—may only be considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006)). A court considering a motion to dismiss should not take judicial notice of material that cannot be considered for the motion. *See Lee*, 250 F.3d at 689–90.

A Court may take judicial notice of a document and consider it in analyzing a motion to dismiss. *See Corinthian Colleges*, 655 F.3d at 998. In order to do so, the document must satisfy both the *Corinthian Colleges* test and the requirements of Rule 201. *See id.* (first considering whether

document was referenced in and central to complaint, and second considering Rule 201). However, a Court may also consider certain documents in deciding a motion to dismiss without taking judicial notice of the documents. *See Marder*, 450 F.3d at 448 (finding documents may be considered in deciding motion to dismiss, based on a test identical to the one in *Corinthian Colleges*, without taking judicial notice of the documents). In some circumstances, it may be appropriate to deny a request for judicial notice, avoiding the obligation to instruct the jury on the trust of a document, but nevertheless consider the document as evidence in deciding a motion to dismiss. *See id.*

## II.   <u>Discussion</u>

The Tonasut Trust requests judicial notice of nine documents that are related to the series of transactions described in the Factual Background above. *See* Tonasut RJN at 2. Assentato and TDE request judicial notice of four documents related to the same series of transactions. The Court will briefly analyze each item.

There does not appear to be any dispute as to the authenticity of the items Defendants request judicial notice of. Brown has not opposed either request, and has "confirm[ed] the authenticity of documents filed by Assentato and TDE." *See* First Opp'n at 2. However, a lack of dispute as to authenticity is not alone sufficient for judicial notice, particularly on a motion to dismiss. To be considered on a motion to dismiss, the documents must be both referenced in, and central to, the complaint. *Corinthian Colleges*, 655 F.3d at 999. Otherwise, the more general rule that the Court only considers the factual matter in the complaint on a motion to dismiss applies. If this standard is not met, the Court will neither consider the document nor take notice of it. *See Lee*, 250 F.3d at 689–90 (court considering a motion to dismiss should not take notice of documents that cannot be considered in deciding the motion). Even if this standard is met, the documents must also meet Rule 201's requirements to be judicially noticeable. *See* Fed. R. Evid. 201. But the Court may consider documents in deciding these Motions without taking judicial notice of them. *See Marder*, 450 F.3d at 448 (explaining circumstances in which documents may be considered on a motion to dismiss). When a court considers documents referenced in the complaint in deciding a motion to dismiss, it

1    need not convert the 12(b)(6) motion into a motion for summary judgment.[4] *Corinthian Colleges*,

2    655 F.3d at 993 n.4.

3        **A.  Tonasut Trust's Documents**

4        Document No. 1: "Agreement to Procure Lender, dated October 29, 2020, between Clinton

5    Brown of The Atlas . . .  and "Rushmyfile.com" loan broker . . . ." *See* Tonasut RJN at 2; *see also*

6    Tonasut RJN at 5–11 (the document). This document is not referenced in the Complaint. *See* Compl.

7    at 2-4. Nor does the Complaint refer to any agreement with this date, or any agreement with

8    Rushmyfile.com. *See id.* This document therefore cannot be considered in ruling on a motion to

9    dismiss. *See Corinthian Colleges*, 655 F.3d at 999. The Court need not reach the question of whether

10   it would otherwise be subject to judicial notice. *See Lee*, 250 F.3d at 689–90 (when deciding a

11   motion to dismiss, court should not take judicial notice of any document that cannot be considered).

12   The Tonasut RJN is DENIED as to this document, and this document will not be considered in

13   deciding the Motions to Dismiss.

14       Document No. 2: "Certificate of Business Purpose Loan and Loan and Real Property

15   Security Declaration, from Clinton Brown for Atlas LLC, dated Nov. 10, 2020 . . . ." *See* Tonasut

16   RJN at 2 (describing the document); *see also* Tonasut RJN at 12–14 (the document). This document

17   appears closely related to the loan for $179,000 between Brown and Tonasut Trust. *See* Compl. at 2.

18   It is referenced in the Complaint and central to the Complaint, and Brown has not questioned its

19   authenticity. *See Corinthian Colleges*, 655 F.3d at 999. However, this document does not appear to

20   meet the requirements of Rule 201, as its existence and facts within it are neither generally known

21   within the district nor easily verifiable from sources that cannot be questioned. *See* Fed. R. Evid.

22   201(b). Accordingly, the Tonasut RJN is DENIED as to this document, but the document may still

23

24

25   ──────────

26   [4] Brown requests that if the Court consider the documents submitted through the Requests for Judicial Notice,
     then the Court should convert the Motions to Dismiss into Motions for Summary Judgment. The Court
27   declines to do so, finding that this would not be appropriate given the lack of a factual record, and is not
     required under any controlling authority. *See Corinthian Colleges*, 655 F.3d at 993 n.4 ("A district court may
28   consider documents referenced by the Complaint without converting a 12(b)(6) motion to one for summary
     judgment.").

be considered in deciding these Motions. *See Marder*, 450 F.3d at 448 (considering documents central to complaint in deciding motion to dismiss, without taking judicial notice).

Document No. 3: "Loan Escrow Addendum, Source of Repayment, Exh. 3. . . ." *See* Tonasut RJN at 2 (describing the document); *see also* Tonasut RJN at 15 (the document). This document is not referenced in the Complaint and does not appear central to it. The Tonasut RJN is DENIED as to this document, and the document will not be considered.

Document No. 4: "Grant Deed dated Nov. 12, 2020 . . . recorded 12/18/2020 . . . ." *See* Tonasut RJN at 2 (describing the document); *see also* Tonasut RJN at 16–19 (the document). This document appears to be the deed for the sale of the Agoura Property from TDE to Assentato. *See* Compl. at 2. It is both referenced in and essential to the Complaint, and thus can be considered in deciding the Motions to Dismiss. *See Corinthian Colleges*, 655 F.3d at 999. It is also on record with the County of Los Angeles, and so can be verified from a source that would not be questioned and is therefore appropriate for judicial notice. *See* Fed. R. Evid. 201(b). The Tonasut RJN is GRANTED as to this document, and the document will be considered in deciding the Motions to Dismiss.

Document No. 5: "(composite exhibit) Secretary of State of California, LLC Registration-- Articles of Organization filed 08/06/2020 [and] Secretary of State Statement of Information, filed Jan. 26, 2022 . . . ." *See* Tonasut RJN at 2 (describing the documents); *see also* Tonasut RJN at 20– 22 (the documents). These documents—corporate registration documents for Brown's entity, The Atlas LLC—are not referenced in the Complaint nor central to it. They are not appropriate to consider in deciding the Motions to Dismiss, and therefore not appropriate to take judicial notice of at this time. *See Corinthian Colleges*, 655 F.3d at 999; *Lee*, 250 F.3d at 689–90. The Tonasut RJN is DENIED as to these documents, and the documents will not be considered.

Document No. 6: "Promissory Note Secured by Deed of Trust, dated Oct. 29, 2020, makers The Atlas LLC and Clinton Brown to Steve Weera Tonasut, as Trustee, lender . . . ." *See* Tonasut RJN at 2 (describing the document); *see also* Tonasut RJN at 23–26 (the document). This document appears to be a promissory note related to the loan for $179,000 between Brown and Tonasut Trust. *See* Compl. at 2. It is referenced in the Complaint and central to the Complaint, and Brown has not questioned its authenticity. *See Corinthian Colleges*, 655 F.3d at 999. However, this document does

not appear to meet the requirements of Rule 201, as its existence and facts within it are neither generally known within the district nor easily verified from sources that cannot be questioned. *See* Fed. R. Evid. 201(b). Accordingly, the Tonasut RJN is DENIED as to this document, but the document may still be considered in deciding these Motions. *See Marder*, 450 F.3d at 448 (considering documents central to complaint in deciding motion to dismiss, without taking judicial notice).

Document No. 7: "Deed of Trust dated Oct. 29, 2020, The Atlas LLC as trustor (borrower), Superior Loan Servicing as trustee, and Steve Weera Tonasut, as trustee, the beneficiary, recorded 12/18/2020 . . . ." *See* Tonasut RJN at 2 (describing the document); *see also* Tonasut RJN at 27–47 (the document). This document appears to be the deed of trust for the $179,000 loan between Brown and Tonasut Trust. *See* Compl. at 2. It is referenced in the complaint and central to the complaint, and Brown has not questioned its authenticity. *See Corinthian Colleges*, 655 F.3d at 999. It is also on record with the County of Los Angeles, and so can be verified from a source that cannot be questioned and is therefore appropriate for judicial notice. *See* Fed. R. Evid. 201(b). The Tonasut RJN is GRANTED as to this document, and the document will be considered in deciding the Motions to Dismiss.

Document No. 8: "Grant Deed, Atlas LLC as grantor to Steve Weera Tonasut, as trustee, grantee, recorded 02/01/2022 . . . ." *See* Tonasut RJN at 2 (describing the document); *see also* Tonasut RJN at 48–58 (the document). This appears to be the grant deed for the transfer of 15% ownership to the Tonasut Trust on February 1, 2023. *See* Compl. at 3. It is referenced in the Complaint and central to the Complaint, and Brown has not questioned its authenticity. *See Corinthian Colleges*, 655 F.3d at 999. It is also on record with the County of Los Angeles, and so can be verified from a source that would not be questioned and is therefore appropriate for judicial notice. *See* Fed. R. Evid. 201(b). The Tonasut RJN is GRANTED as to this document, and the document will be considered in deciding the Motions to Dismiss.

Document No. 9: "(composite exhibit) Loan Extensions/Modification Agreements of 02/28/2022 and of 2/23/2023 . . . ." *See* Tonasut RJN at 2 (describing the documents); *see also* Tonasut RJN at 54–63 (the documents). This appears to be the loan modification agreements that

were made in exchange for the 15% transfer of ownership to the Tonasut Trust. *See* Compl. at 3. These documents are referenced in the Complaint and central to the Complaint, and Brown has not questioned their authenticity. *See Corinthian Colleges*, 655 F.3d at 999. However, this document does not appear to meet the requirements of Rule 201, as its existence and facts within it are neither generally known within the district nor easily verified from sources that cannot be questioned. *See* Fed. R. Evid. 201(b). Accordingly, the Tonasut RJN is DENIED as to this document, but the document may still be considered in deciding these Motions. *See Marder*, 450 F.3d at 448 (considering documents central to complaint in deciding motion to dismiss, without taking judicial notice).

### B. Assentato's and TDE's Documents

Document No. 1: "(composite exhibit) Secretary of State of California, LLC Registration-- Articles of Organization filed 08/06/2020, and; Secretary of State Statement of Information, filed Jan. 26, 2022 . . . ." *See* Assentato RJN at 2 (describing the documents); *see also* Assentato RJN at 5–7 (the documents). These are identical to Tonasut Trust's Document No. 5. For the same reasons, the Assentato RJN is DENIED as to these documents, and the documents will not be considered.

Document No. 2: "Grant Deed dated Nov. 12, 2020, by Tax Deed Enterprises, LLC to Atlas LLC, dated Nov. 12, 2020, recorded 12/18/2020 . . . ." *See* Assentato RJN at 2 (describing the documents); *see also* Assentato RJN at 8–11 (the documents). This is identical to Tonasut Trust's Document No. 4. For the same reasons, the Assentato RJN is GRANTED as to this document, and the document will be considered in deciding the Motions to Dismiss.

Document No. 3: "Deed of Trust dated Oct. 22, 2020, recorded 12/18/20 . . . ." *See* Assentato RJN at 2 (describing the document); *see also* Assentato RJN at 12–26 (the document). This appears to be the deed of trust between Brown and Assentation. *See* Compl. at 2. It is referenced in the Complaint and central to the Complaint, and Brown has not questioned its authenticity. *See Corinthian Colleges*, 655 F.3d at 999. It is also on record with the County of Los Angeles, and so can be verified from a source that would not be questioned and is therefore appropriate for judicial notice. *See* Fed. R. Evid. 201(b). The Assentato RJN is GRANTED as to this document, and the document will be considered in deciding the Motions to Dismiss.

Document No. 4: "Loan Agreement, Borrower The Atlas, LLC, Lender Emil Assentato, dated February 2, 2021 . . . ." *See* Assentato RJN at 2 (describing the document); *see also* Assentato RJN at 27–30 (the document). This appears to be the loan agreement between Assentato and Brown for $250,000. *See* Compl. at 3. It is referenced in the Complaint and central to the Complaint, and Brown has not questioned its authenticity. *See Corinthian Colleges*, 655 F.3d at 999. Further, Brown references this document and makes arguments based on it in of his Oppositions. *See* First Opp'n at (referencing "Docket 26-1, 2, lines 8-9," and arguing "that makes it more likely that it is indeed a security."). These documents may be considered. However, this document does not appear to meet the requirements of Rule 201, as its existence and facts within it are neither generally known within the district nor easily verified from sources that cannot be questioned. *See* Fed. R. Evid. 201(b). Accordingly, the Tonasut RJN is DENIED as to this document, but the document may still be considered in deciding these Motions. *See Marder*, 450 F.3d at 448 (considering documents central to complaint in deciding motion to dismiss, without taking judicial notice).

**C. Conclusion as to Requests for Judicial Notice:**

For the reasons described above, the Requests for Judicial Notice are GRANTED as to the following documents:

1. Grant Deed dated Nov. 12, 2020, and recorded December 18, 2020 (Tonasut Trust's Document No. 4, and Assentato's and TDE's Document No. 2)

2. Deed of Trust dated Oct. 29, 2020, The Atlas LLC as trustor (borrower), Superior Loan Servicing as trustee, and Steve Weera Tonasut, as trustee and beneficiary, recorded December 18, 2020 (Tonasut Trust's Document No. 7)

3. Grant Deed recorded February 1, 2022 (Tonasut Trust's Document No. 8)

4. Deed of Trust dated Oct. 22, 2020, The Atlas LLC as trustor (borrower), Emil Assentato as lender, Brown Realty Group as trustee, recorded December 18, 2020 (Assentato's and TDE's Document No. 3).

/ / /

The Requests for Judicial Notice are DENIED as to the following documents, but the Court will still consider these documents, for the reasons described above:

1.  Certificate of Business Purpose Loan and Loan and Real Property Security Declaration, from Clinton Brown for Atlas LLC, dated Nov. 10, 2020 (Tonasut Trust's Document No. 2).

2.  Promissory Note Secured by Deed of Trust, dated Oct. 29, 2020, The Atlas LLC and Clinton Brown to Steve Weera Tonasut, as Trustee (Tonasut Trust's Document No. 6).

3.  Loan Extensions/Modification Agreements of February 28, 2022, and of February 23, 2023 (Tonasut Trust's Document No. 9).

4.  Loan Agreement, Borrower The Atlas, LLC, Lender Emil Assentato, dated February 2, 2021 (Assentato's and TDE's Document No. 4).

/ / /

The Requests for Judicial Notice are DENIED as to the following documents, and the Court will not consider them:

1.  Agreement to Procure Lender, dated October 29, 2020 (Tonasut Trust's Document No. 1)

2.  Loan Escrow Addendum, Source of Repayment, Exhibit 3 (Tonasut Trust's Document No. 3)

3.  Secretary of State of California, LLC Registration—Articles of Organization filed August 6, 2020, and Secretary of State Statement of Information, filed January 26, 2022 (Tonasut Trust's Document No. 5, and Assentato's and TDE's Document No. 1).

## **MOTIONS TO DISMISS (ECF Nos. 18, 26)**

### I.  **Applicable Law**

Defendants bring their Motions pursuant to Federal Rules of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").[5] The standards for each are discussed below.

---

[5] Defendants also raise the particularity requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") and the standing requirement of the United States Constitution, and move for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) ("Rule 12(e)"). *See* Tonasut Mot. at 1; Assentato Mot. at 1. The Court will address Rule 9(b) in its discussion of whether Brown has properly stated a claim and will address standing as part of the discussion of whether there is subject matter jurisdiction. The Court need not reach the motion for a more definite statement, as the Complaint will be dismissed.

### A.  Rule 12(b)(1): Lack of Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction," and can only hear cases where there is a valid basis for federal jurisdiction. *Richardson v. United States*, 943 F.2d 1107, 1112 (9th Cir. 1991). Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") authorizes a party to seek dismissal of an action for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). In the context of a 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

One possible basis for jurisdiction, and the only one relevant to this Order, is federal question jurisdiction, which grants federal courts jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 ("Section 1331"). Whether an action arises under the laws of the United States is determined by the "well-pleaded-complaint rule," which dictates that courts should analyze whether an action arises under federal law by examining "what necessarily appears in the plaintiff's statement of his own claim." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002). If a plaintiff brings a claim under federal law, that is generally sufficient for jurisdiction, even if the claim is destined to fail. *See Bell v. Hood*, 327 U.S. 678, 682 (1946). "Whether the complaint states a cause of action on which relief could be granted is a question of law," which must be decided "after and not before the court has assumed jurisdiction over the controversy." *Id.* The only exceptions are where federal claims are "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." *Id.* at 682–83.

### i.  Standing

Federal subject matter jurisdiction also requires that the plaintiff have standing. A plaintiff will lack standing unless the plaintiff: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

"Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler*, 598 F.3d at 1122. In the context of

1  a 12(b)(1) motion, the plaintiff bears the burden of establishing Article III standing to assert the

2  claims. *Id.*

3    **B.  Rule 12(b)(6): Failure to State a Claim**

4    Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to

5  state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to

6  dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

7  relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

8  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

9  pleads factual content that allows the court to draw the reasonable inference that the defendant is

10  liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

11    The determination of whether a complaint satisfies the plausibility standard is a "context-

12  specific task that requires the reviewing court to draw on its judicial experience and common sense."

13  *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view

14  them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir.

15  2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to

16  accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting

17  *Twombly*, 550 U.S. at 555).

18    Moreover, Federal Rule of Civil Procedure 9(b) states that an allegation of "fraud or mistake

19  must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Specifically,

20  the "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the

21  fraudulent activity. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003);

22  *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("[Rule 9(b) requires] the times, dates, places,

23  benefits received, and other details of the alleged fraudulent activity."). Additionally, the allegation

24  "must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at

25  1106.

26    As a general rule, leave to amend a dismissed complaint should be freely granted unless it is

27  clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St.*

28  *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

1

**II.**    <u>**Discussion**</u>

2

For the reasons discussed below, the Court finds that there is subject matter jurisdiction and

3

Brown has standing, but that Brown has failed to state a claim upon which relief can be granted.

4

Accordingly, the Motions to Dismiss will be GRANTED.

5

**A.  The Court has subject matter jurisdiction.**

6

Defendants argue that the action should be dismissed pursuant to Rule 12(b)(1) for lack of

7

subject matter jurisdiction and lack of standing. These arguments fail.

8

**1.  There is federal question jurisdiction.**

9

Brown's Complaint avers that the court has subject matter jurisdiction pursuant to Section

10

1331 because Brown's claims arise under federal law. *See* Compl. at 1. This is correct.

11

Brown brings a claim for violations of Section 77q(a)(1) and Section 78j(b). *See id.* at 5*; see*

12

*also* 15 U.S.C. § 77q(a)(1); 15 U.S.C. § 78j(b). These are federal laws. Bringing claims under these

13

laws is sufficient to endow the Court with subject matter jurisdiction.

14

Defendants argue that there is no subject matter jurisdiction because "there was no 'security'

15

offered, sold or transferred" which is required for a violation of Section 77q(a)(1) or Section 78j(b).

16

*See* Tonasut Mot. at 6; Assentato Mot. at 5. This is essentially an argument that Brown has failed to

17

properly state a claim, and that his claim will fail. But Defendants have not argued that Brown did

18

not bring a claim under federal law.

19

Because Brown brought a claim under federal law, there is subject matter jurisdiction. *See*

20

*Bell*, 327 U.S. at 682. It does not matter whether the claim will fail. *See id.* ("Whether the complaint

21

states a cause of action on which relief could be granted is a question of law," which must be

22

decided "after and not before the court has assumed jurisdiction over the controversy."). There is no

23

indication that the federal law claims are "immaterial and made solely for the purpose of obtaining

24

jurisdiction" or "wholly insubstantial and frivolous," and so the presence of claims brought under

25

federal law is sufficient for subject matter jurisdiction. *See id.*

26

**2.  Brown has standing.**

27

Defendants make a similarly flawed argument as to standing. *See* Tonasut Mot. at 6;

28

Assentato Mot. at 5. Defendants argue that Brown has no standing because no security was sold to

14

him, and "the purchase money secured loan to Plaintiff and Atlas LLC was their obligation, not their purchase, and not an investment." Tonasut Mot. at 6. This is the same argument Defendants made concerning Brown's Section 77q(a)(1) and Section 78j(b) claims—because Defendants claim that they did not actually sell any security, they cannot have violated securities laws, and so Brown has no standing. This logical chain does not work on a 12(b)(1) motion.

Brown alleges that he purchased property in a complex transaction from defendants. *See* Compl. at 1 (Brown "purchased 32.4 acres of land . . . Plaintiff paid a $10,000 cash deposit . . . Plaintiff, *at the time*, believed the purchase was a standard real estate transaction . . . ."). And Brown makes allegations, which, drawing all inferences in his favor, suggest that Brown suffered losses. *See* Compl. at 2 ("Plaintiff paid the market price of $299,000 for a 50% ownership interest"), 3 (Plaintiff was forced to borrow further money and sell property when he was unable to make payments on his loans from Defendants), 4 ("Defendants employed capital in a common enterprise, relied solely on the Plaintiffs entrepreneurial capital for the generation of profits and undercapitalized the development to the detriment of the Plaintiff."). These harms appear traceable to defendants and redressable by the Court. This is sufficient for standing. *See Spokeo*, 578 U.S. at 338. Whether Brown has actually stated a claim for violations of Section 77q(a)(1) or Section 78j(b) is a separate inquiry.

**B.  Brown failed to state a claim upon which relief can be granted.**

Brown appears to bring only one cause of action against Defendants: violations of the Securities Exchange Act of 1934 (15 U.S.C. §§ 77a–78rr). However, Brown's prayer for relief provides more detail on what he seeks and the grounds on which he seeks it. First, Brown requests that the Court declare that "the land transfer" was an "investment contract" and "security" as defined by Section 77b(a)(1). *See* Compl. at 5. Second, Brown requests that the Court find that Defendants' omissions in connected with the sale of this "investment contract" violated Section 77q(a)(1) and Section 78j(b). *See id.* Third, Brown requests that the Court order rescission "of the Defendants [*sic*] 50% and 15% ownership," citing Section 77l(a)(2).

The Court will analyze each of these to determine whether any is a claim upon which relief may be granted. In doing so, the Court will take Brown's allegations as true and draw all inferences in Brown's favor. *See Park*, 851 F.3d at 918.

      i.   <u>There is no private right of action for violations of Section 77q(a)(1)</u>

At the outset, the Court finds that Brown failed to state a claim for violations of Section 77q(a)(1). The Ninth Circuit has held that there is no private right of action for a violation of this section. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 823 F.2d 1349, 1350–58 (9th Cir. 1987) (examining in detail whether there is a private right of action under "section 17(a) of the Securities Act of 1933, [currently codified as] 15 U.S.C. § 77q(a)," and holding that "no private right of action lies under section 17(a)"). Other Circuits have held the same. *See, e.g.*, *Brannan v. Eisenstein*, 804 F.2d 1041, 1043 n.1 (8th Cir. 1986), *Landry v. All Am. Assur. Co.*, 688 F.2d 381, 387–91 (5th Cir. 1982). Section 77q(a) was not intended to create a right for private litigants to sue, and such a right would be superfluous against the backdrop of other securities laws that create similar rights. *See Washington Pub. Power Supply*, 823 F.2d at 1355–56.

So, regardless of whether Brown's allegations amount to conduct that Section 77q(a)(1) prohibits, Brown may not bring a cause of action under this section. Brown's claim under Section 77q(a)(1) fails.

      ii.   <u>Brown adequately pleaded the sale of a security.</u>

The Court must next determine whether Brown pleaded that Brown or Defendants sold any security, both for Brown's request for declaratory relief and his Section 78j(b) claim. Brown requests that the Court find that "the land transfer" was an "investment contract" and "*security*" (emphasis added), which necessarily depends on Brown pleading that a security was sold. Brown's claim that Defendants' violation of Section 78j(b) is also dependent on pleading as such. There is a private right of action for violations of Rule10b-5, which the SEC created to enforce Section 78(j)(b). *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 141–42 (2011). The elements of a violation of Rule 10b-5 are: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a *security*; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss

causation." *Id.* at 141 n.3 (emphasis added). If there was no security sold, the claim will fail at the third element.

A "security," as used in the Securities Act, includes "commonly known documents traded for speculation or investment" and "securities of a more variable character," including "investment contract[s]." *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 297 (1946). An "investment contract" is "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *Id.* at 298.[6]

Here, Brown, Assentato, and TDE all purchased interests in the Agoura Property, intending to build a solar farm. *Compl.* at 1. The Tonasut Trust later also acquired an interest. *Id.* at 3. Brown, Assentato, and TDE entered in to an "Operating Agreement" together.[7] *See* Compl. at 2 (describing agreement); *see also* First Opp'n at 12–27. Brown alleges that he alone was "*solely responsible* for the development and resale of the solar facility in the *common enterprise*." Compl. at 2. This allegation that Brown was solely responsible for generating profits through his efforts does not appear conclusory, as it is supported by the agreement. *See* First Opp'n at 38 (Brown's "initial contributions" are to be responsible for all substantive work, while Assentato will provide funds and consult). It is also supported by other allegations, including that Brown borrowed money in his individual capacity to fund the solar farm and that Brown alone brought suit against the County official when the solar farm application was rejected. *See* Compl. at 3.

Drawing all inferences in favor of Brown, this transaction constituted an investment contract and therefore a security. Brown, Assentato, TDE, and the Tonasut Trust all pooled money in a

---

[6] There is a separate "family resemblance" test to determine whether a "note" is a security. *See Reves v. Ernst & Young*, 494 U.S. 56, 63-64 (1990) (describing family resemblance test for notes, and distinguishing it from the *W.J. Howey* test "for determining whether an instrument is an 'investment contract.'") The transactions in question do not appear to qualify as notes, and so the family resemblance test is not applicable.

[7] Although the agreement itself is not part of the Complaint, the Complaint clearly references its existence. *See* Compl. at 2 ("Plaintiff, Emil Assentato, and Tax Deed Enterprises LLC singed an operating agreement . . . ."). With the agreement itself now part of the record, and with no challenges as to authenticity, the Court finds it appropriate to consider the agreement in ruling on the Motions to Dismiss. *See United States v. Corinthian Colleges*, 655 F.3d at 998 (court may consider document outside the complaint in ruling on motion to dismiss if: (1) the document is referenced in the complaint, (2) the document is central to the complaint, and (3) there is no question as to authenticity).

1   common enterprise and expected to profit based solely on the efforts of Brown. *See W.J. Howey Co.*,

2   328 U.S. at 297. Although the Tonasut Trust was not part of the initial ownership group, the Tonasut

3   Trust later acquired an interest in the property and became a part owner.[8] *Compl.* at 3. All pooled

4   their resources and expected to profit based on Brown's efforts This meets the definition of an

5   investment contract. *See W.J. Howey Co.*, 328 U.S. at 297.

6        Defendants argue repeatedly that they did not sell any security to Brown, and if any security

7   was sold, Brown is the one who sold it. *See, e.g.*, Tonasut Mot. at 6; Assentato Mot. at 5, Tonasut

8   Reply at 2 ("If anything, it is Plaintiff alone who 'issued' a security or investment contract to

9   defendants."); Assentato Reply at 2. But regardless of whether this is true, it is of no consequence.

10  Brown's claims do not depend on a finding that he purchased a security from Defendants. *See Janus*,

11  564 U.S. at 141 n.3 (defining elements of Rule 10b-5 violation). Brown's claims for a Section 78j(b)

12  depend on finding misrepresentations in connection with "the *purchase or sale* of a security." *Id.*

13  (emphasis added). If Defendants made misrepresentations in purchasing a security from Brown, and

14  the other elements are met, the fact that Brown was the seller would not alone defeat Brown's claim.

15  Defendants provide no authority suggesting otherwise, and the Court is aware of none. The

16  purported fact that Brown sold a security to Defendants is also not fatal to Brown's request that the

17  Court declare that "the land transfer" was an "investment contract" and "security." *See* Compl. at 6.

18  Brown does not specify which land transfer should be found to be a security, or who should be

19  construed as the buyer. *See id.*

20       Assentato also argues that the loan he made to Brown—of 250,000 to finance the

21  development of a solar farm on the Agoura Property (*see* Compl. at 3)—was not a security, based on

22  the "family resemblance" test. *See* Assentato Mot. at 6. The Court's finding is not that Brown

23  adequately pleaded that this loan was a security. Rather, the Court's finding is that, drawing all

24  inferences in favor of Brown, Brown adequately pleaded that the combination of (1) Brown,

25

26  ─────────────────

27  [8] The Tonasut Trust argued at the hearing that it only loaned money and was not part of any security. The Complaint alleges otherwise, and states that the Tonasut Trust "acquired a 15% undivided interest in the Plaintiff's Property." Compl. at 3. Such an interest, when combined with other facts, may constitute an

28  investment contract. *See W.J. Howey Co.*, 328 U.S. at 297.

Assentato, TDE, and the Tonasut Trust all acquiring interests in one piece of property; (2) Brown, Assentato, and TDE signing an operating agreement; (3) and all parties' apparent understanding that profits would come solely from Brown's efforts, constituted an investment contract and thus a security.

In sum, Brown adequately pleaded that a security was sold. To be clear, this is not a definitive judicial finding that any transaction constituted a security. It is only a finding that, at this stage, drawing all inferences in favor of Brown, Brown has pleaded sufficient facts that if proven true could support a finding that a security was sold.

### iii. Brown failed to meet the requirements of Rule 9(b), and so his Section 78j(b) claim fails

Brown's claim for a violation of Section 78j(b) requires, among other elements, that Brown show "a material misrepresentation or omission by the defendant" and "scienter."[9] *See Janus*, 564 U.S. at 141 n.3. These elements must be pleaded to satisfy the both the pleading requirements of Rule 9(b) and the pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). Under Rule 9(b), a plaintiff pleading fraud must specify "with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) (citing Fed. R. Civ. P. 9(b)). The PSLRA further requires that the complaint "specify each statement alleged to have been misleading, and the reason or reasons why the statement is misleading," and must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *In re VeriFone Holdings*, 704 F.3d at 701 (citing 15 U.S.C. § 78u–4(b)(1)(B)).

Here, Brown's Complaint fails to meet this standard. Brown's Complaint does not identify any specific false statement that any Defendant made, as required by Rule 9(b). Nor does it identify when exactly such a statement occurred, or where. *See Lancaster Cmty. Hosp.*, 940 F.2d at 405

---

[9] "Scienter" means "a wrongful state of mind." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005). It has also been described as "intention to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007).

(must state "the time, place, and manner of each act of fraud"). Nor does it identify "the role of each defendant in each scheme." *Id.* Nor does the Complaint identify the reasons why each statement was misleading as required by the PSLRA. *See In re VeriFone Holdings*, 704 F.3d at 701. Finally, the Complaint does not have specific facts "giving rise to a strong inference that the defendant acted with the required state of mind." *Id.*

In his Oppositions, Brown included a chart which purports to explain why his Complaint satisfied Rule 9(b). *See* 1st Opp'n at 4. The chart in fact demonstrates how Brown falls short. Brown does not identify any specific statement and instead describes a general failure to disclose the details of the transaction. *See id.* In explaining who made false statements, Brown identifies all three Defendants as a group, with no distinction as to which Defendant made any specific statement. *Id.* In identifying when statements were made, Brown points to "October 22, 2020, to February 1, 2022," a period of nearly a year and half. *Id.* He says all statements were made in Los Angeles County. *Id.*

Brown must be more specific. He must identify a specific statement (or many specific statements), allege specifically where and when the statement was made, allege which defendant made the statement, and describe what exactly was false about the statement. *See In re VeriFone Holdings*, 704 F.3d at 701. Finally, Brown must also allege facts suggesting that Defendants had intent to defraud in making the statements. *See In re VeriFone Holdings*, 704 F.3d at 701.

This shortcoming is a fatal flaw in Brown's claim for a violation of Section 78j(b). *See id.* The Motions to Dismiss will be GRANTED as to this claim. Brown will be granted leave to amend, as further facts might cure the issues. *See Manzarek*, 519 F.3d at 1031.

iii. <u>Brown failed to meet the requirements of the Declaratory Judgment Act, so his request for a declaration that a security was sold fails.</u>

Brown requested that the Court declare that "the land transfer" was an "investment contract" and "security" as defined by Section 77b(a)(1). *See* Compl. at 6. It is somewhat unclear whether this is intended to be a subsidiary piece of another claim or a standalone claim for a declaratory judgment. In the interest of completeness, the Court will analyze it as the latter.

As discussed above, the Court finds that Brown has stated facts that could support his requested finding. But that alone is not sufficient for a declaratory judgment. Pursuant to the

Declaratory Judgment Act, courts may "declare the rights and other legal relations of any interested party seeking such declaration," but may only do so in "a case of actual controversy." *See* 28 U.S.C. § 2201(a). A plaintiff lacks standing to pursue injunctive relief if the plaintiff "would not stand to benefit from such relief." *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1047–48 (9th Cir. 2014).

Here, the Court sees no discernable benefit to Brown from a declaration that the land transfer was a security. *See id.* Such a declaration would not lead to any special rights. Unlike in other cases where declaratory relief is permitted—for example, where a party seeks to understand whether a copyright is valid and when a license expires so it can plan its conduct accordingly—the Court sees no way in which Brown will act differently if the requested declaratory relief is granted. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1553 (9th Cir. 1989). While Brown would in some sense benefit in this litigation if the Court declared that he met one element of his claims—that the land transfer was a security—that alone does not appear to be the sort of benefit that declaratory relief is intended for, and is not sufficient to create a judiciable controversy. *See id.* at 1553–54 (declaratory relief would not be appropriate if "no substantive rights of the parties would be affected by a declaration."). Unlike the parties seeking to understand copyright validity and ownership in *Hal Roach*, who sought to understand their rights and plan their conduct accordingly, Brown has not shown that any substantive rights would be affected by a declaration that the transfer was a security, or that he would act differently based on such a declaratory finding. Because Brown would not benefit from the requested relief, the action cannot continue on that request alone.

The Motions to Dismiss will be GRANTED as to the request for declaratory relief. Brown will be granted leave to amend. *See Manzarek*, 519 F.3d at 1031.

### iv.  Brown failed to state a claim for rescission under Section 77l(a)(2)

Under Section 77l(a)(2),[10] a buyer of a security may sue for rescission. *See Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 885 (9th Cir. 2008). The buyer must show that there was "(1) an offer or

---

[10] Section 77l(a)(2) is often referred to as "Section 12(a)(2)" of the Securities Act. *See, e.g.*, *Miller*, 519 F.3d at 885.

sale of a security, (2) by the use of a means or instrumentality of interstate commerce, (3) by means of a prospectus or oral communication, (4) that includes an untrue statement of material fact or omits to state a material fact . . . ." *Id.* Notably, rescission under this section does not require a showing of reliance or scienter. *See id.* at 886.

Section 77l(a)(2) allows the *buyer* of a security to seek rescission. *See id.*; *see also Gustafson v. Alloyd Co.*, 513 U.S. 561, 578–80 (1995) ("It is understandable that Congress would provide *buyers* with a right to rescind . . . A *buyer* who discovered a material omission in a prospectus after the passage of the Act could sue for rescission" (emphasis added)). No authority suggests a party may seek rescission of any other party's purchases.

Here, Brown seeks to rescind "*Defendants* [*sic*] 50% and 15% ownership" (emphasis added), which Brown describes as "real property obtained from violating security laws." In other words, Brown wishes to rescind the *Defendants'* purchases of interests in the Agoura Property. This request has no basis in Section 77l(a)(2). Brown can neither use Section 77l(a)(2) to rescind the purchases the *Defendants* made from him nor the purchases *Defendants* made from others.

The Motions to Dismiss are GRANTED as to the request for rescission pursuant to Section 77l(a)(2). Brown will be granted leave to amend, as amending this request might lead to a valid claim for rescission. *See Manzarek*, 519 F.3d at 1031.

v.   Conclusion as to Motions to Dismiss

For these reasons, Brown has not stated a claim which entitles him to any of the relief he requests. The Motions to Dismiss will be GRANTED. However, Brown will be GRANTED LEAVE TO AMEND. *See Manzarek*, 519 F.3d at 1031.

**CONCLUSION**

For the reasons stated herein, the Court ORDERS as follows:

1. Tonasut Trust's Request for Judicial Notice (ECF No. 18-2) is GRANTED IN PART. The Request is GRANTED as to: Tonasut Trust's Document No. 4, Tonasut Trust's Document No. 7, and Tonasut Trust's Document No. 8. The Request is DENIED as to: Tonasut Trust's Document No. 1, Tonasut Trust's Document No. 2, Tonasut Trust's Document No. 3,

Tonasut Trust's Document No. 5, Tonasut Trust's Document No. 6, and Tonasut Trust's Document No. 9.

2. Assentato's and TDE's Request for Judicial Notice (ECF No. 26-2) is GRANTED IN PART. The Request is GRANTED as to: Assentato's and TDE's Document No. 2 and Assentato's and TDE's Document No. 3. The Request is DENIED as to Assentato's and TDE's Document No. 1 and Assentato's and TDE's Document No. 4.

3. Tonasut Trust's Motion (ECF No. 18) to Dismiss is GRANTED as to all Brown's claims and all relief Brown requested, on the basis that Brown failed to state a claim upon which relief can be granted. Brown is GRANTED LEAVE TO AMEND.

4. Assentato's and TDE's Motion to Dismiss (ECF No. 26) is GRANTED as to all Brown's claims and all relief Brown requested, on the basis that Brown failed to state a claim upon which relief can be granted. Brown is GRANTED LEAVE TO AMEND.

5. Brown is ORDERED to file a First Amended Complaint within twenty-eight (28) days of the date of this Order if he still desires to pursue any of the claims being dismissed with leave to amend.


IT IS SO ORDERED.

Dated: December 6, 2023

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge