


**This page is part of your document - DO NOT DISCARD**

# 20230884374




**Pages:
0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/18/23 AT 08:00AM**

| | |
|---|---|
| FEES: | 35.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 110.00 |






**L E A D S H E E T**



202312180110020

00024066803



014446801

**SEQ:
01**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

E442318

2405983CAD_Package_1_

RECORDING REQUESTED BY:
WFG National-Default Services

WHEN RECORDED MAIL TO:
**Asset Default Management, Inc.**
**7525 Topanga Canyon Blvd.**
**Canoga Park, California 91303**

*2405983040*

TS No.: **2023-01808**    Loan No.: **RMF4027704**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: **2064-005-011, 2064-005-015**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### IMPORTANT NOTICE
### IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,
and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$268,027.17** as of **12/15/2023**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

TS No.: 2023-01808          Loan No.: RMF4027704

NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**The Tonasut Family Trust DTD 6/14/2004**
**C/O Asset Default Management, Inc.**
**7525 Topanga Canyon Blvd.**
**Canoga Park, California 91303**
**Phone: (818) 629-2272**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN:  That **Superior Loan Servicing** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **10/29/2020**, executed by **The Atlas LLC, A California Limited Liability Company**, as Trustor, to secure certain obligations in favor of **Steve Weera Tonasut, Trustee Of The Tonasut Family Trust Dated June 14, 2004**, as beneficiary, recorded 12/18/2020, as Instrument No. 20201688735, in Book , Page ,  of Official Records in the Office of the Recorder of **Los Angeles** County, California describing land therein as: As more fully described in said Deed of Trust

Including one **NOTE(S) FOR THE ORIGINAL** sum of **$179,000.00**, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:
    **The balance of principal and interest which became due on 12/1/2023, along with late charges, foreclosure fees and costs any legal fees or advances that have become due. A Loan Extension/Modification Agreement dated 02/28/2022.  A second Loan Extension/Modification Agreement dated 02/27/2023.**

    That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: 12/15/2023

                    Superior Loan Servicing, by Asset Default Management, Inc., as
                    Agent for Trustee

                    By:_____
                        Julie Taberdo, Sr. Trustee Sale Officer

## Declaration of Mortgage Servicer Pursuant to
## Civil Code §2923.5(b), §2923.55(c)

Borrower(s)/ Loan Number:   RMF4027704   THE ATLAS LLC

Mortgage Servicer:   Superior Loan Servicing

Property Address:   APN 2064-005-001 APN-2064-005-015 Agoura Hills, CA 91301

T. S. No.   2023- 01808

[✔] **1.** The mortgage servicer has contacted the borrower in person or by telephone pursuant to California Civil Code §2923.5(a)(2), §2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

[ ] **2.** No contact was required by the mortgage servicer because the individual(s) did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

[ ] **3.** The requirements of California Civil Code §2923.5, §2923.55 do not apply because the borrower, loan, or property does not meet the criteria in California Civil Code §2924.15 (a)

[ ] **4.** The requirements of California Civil Code §2923.5, §2923.55 do not apply because the loan is not occupied by a tenant that meets the conditions described in California Civil Code §2924.15 et seq.

[ ] **5.** Pursuant to California Civil Code §3273.10 the mortgage servicer declares it has denied a forbearance request, during the effective time period of 10-1-2021 and 12-1-2023. A copy of written denial notice(s) is attached. A forbearance was [ ] was not [ ] subsequently provided.

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

By: _Tracy Ross_

_Tracy Ross_ , Authorized Signor for Mortgage Servicer

December 15, 2023

Date

 

**This page is part of your document - DO NOT DISCARD**



## 20220123442



**Pages:
0006**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**02/01/22 AT 08:00AM**

| | |
|---|---|
| FEES: | 34.00 |
| TAXES: | 110.00 |
| OTHER: | 0.00 |
| PAID: | 144.00 |





**L E A D S H E E T**



202202010160023

**00021891968**



013119153

**SEQ:
01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

*E442318*

 3910120-066060

Recording requested by and
when recorded mail to:

Steve Weera Tonasut
20147 Chapter Dr.
Woodland Hills, CA 91364

Mail Tax Statements to:

Atlas LLC
16821 Edgar Street,
Pacific Palisades, CA 90272

## GRANT DEED



THE UNDERSIGNED GRANTOR(s) DECLARE(s) THAT DOCUMENTARY TRANSFER TAX IS $110.00
  ☐ computed on full value of property conveyed, or
  ☒ computed on full value less liens or encumbrances remaining at the time of sale
  ☒ unincorporated area:

The Atlas LLC, a California Limited Liability Company, hereby remise, release and
quitclaim to STEVE WEERA TONASUT, Trustee of the TONASUT FAMILY TRUST
dated JUNE 14, 2004, an undivided 15% interest, in and to the real property in County of
Los Angeles, State of California, described as follows:

Attached hereto as Exhibit "A"

ASSESSOR'S PARCEL NUMBER          2064-005-011 and 2064-005-015

Dated  1/28/2022          SEE ATTACHED
                          CERTIFICATE
Atlas, LLC, A California Limited Liability Company

Clinton Brown, Member
AKA CLINTON BYRON BROWN
Atlas, LLC, A California Limited Liability Company

Emil Assentato, Member

Atlas, LLC, A California Limited Liability Company

Tax Deeds Enterprises, LLC Member
Emil Assentato

MAIL TAX STATEMENTS AS SHOWN ABOVE

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _New York_ )ss

County of _Nassau_ )

On _January 27, 2022_ , before me, _Patricia Valle_ ,
a Notary Public, personally appeared Emil Assentato, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ~~California~~ _New York_ that
the foregoing paragraph is true and correct.

Witness my hand and official seal.

Notary Public
PATRICIA VALLE
NOTARY PUBLIC - STATE OF NEW YORK
No. 01VA6122337
Qualified in Nassau County
Commission Expires 02/07/2025

**CALIFORNIA ACKNOWLEDGMENT**                                                      **CIVIL CODE § 1189**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of **LOS ANGELES**

On **01 - 28 - 2022** before me, **RONNY NAIDOO (NOTARY PUBLIC)**
   *Date*                                  *Here Insert Name and Title of the Officer*

personally appeared **CLINTON BYRON BROWN**
                              *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

RONNY NAIDOO
Notary Public · California
Los Angeles County
Commission # 2267130
My Comm. Expires Dec 10, 2022

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                *Signature of Notary Public*

*Place Notary Seal and/or Stamp Above*

──────────────── **OPTIONAL** ────────────────

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| □ Corporate Officer – Title(s): _____ | □ Corporate Officer – Title(s): _____ |
| □ Partner – □ Limited □ General | □ Partner – □ Limited □ General |
| □ Individual          □ Attorney in Fact | □ Individual          □ Attorney in Fact |
| □ Trustee        □ Guardian or Conservator | □ Trustee        □ Guardian or Conservator |
| □ Other: _____ | □ Other: _____ |
| Signer is Representing: _____ | Signer is Representing: _____ |

©2019 National Notary Association

## EXHIBIT "A"

**PARCEL 1:**

LOT 3 IN TRACT NO. 33128, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, RECORDED IN BOOK 1099, PAGES 94 TO 97, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT FROM A PORTION OF SAID LAND, ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS AND OTHER HYDROCARBONS, BY WHATSOEVER NAME KNOWN, THAT MAY BE WITHIN OR UNDER THE PARCELS OF LAND HEREINAFTER DESCRIBED, WITHOUT, HOWEVER, THE RIGHT EVER TO DRILL, DIG OR MINE THROUGH THE SURFACE OF SAID LAND THEREFOR OR OTHERWISE IN SUCH MANNER AS TO ENDANGER THE SAFETY OF ANY HIGHWAY THAT MAY BE CONSTRUCTED ON THE LANDS HEREBY CONVEYED AS PROVIDED IN THE DEED RECORDED APRIL 2, 1951 AS INSTRUMENT NO. 3289, OF OFFICIAL RECORDS.

ALSO EXCEPT FROM A PORTION OF SAID LAND, ONE-HALF OF ALL CRUDE OIL, PETROLEUM, GAS, BREA, ASPHALTUM AND ALL KINDRED SUBSTANCES AND OTHER MINERALS UNDER AND IN SAID LAND, WITHOUT RIGHT OF ENTRY, AS PROVIDED IN THE DEED RECORDED DECEMBER 6, 1954 AS INSTRUMENT NO, 540, OF OFFICIAL RECORDS.

ALSO EXCEPT FROM A PORTION OF SAID LAND, ONE-HALF OF ALL MINERALS, OIL, PETROLEUM, ASPHALTUM, GAS, COAL AND OTHER HYDROCARBON SUBSTANCES AND WATER CONTAINED IN, ON, WITHIN AND UNDER SAID LAND, PROVIDED, HOWEVER, THAT THIS GRANT SHALL NEITHER GRANT NOR SHALL IT BE CONSTRUED AS GRANTING TO GRANTEES, THEIR SUCCESSORS IN INTEREST OR ASSIGNS THE RIGHT TO GO UPON OR UNDER SAID LANDS FOR THE PURPOSE OF EXTRACTING ANY OF SAID SUBSTANCES, AS PROVIDED IN THE DEED RECORDED OCTOBER 23, 1958 AS INSTRUMENT NO. 1532, OF OFFICIAL RECORDS.

ALSO EXCEPT ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS AND OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN THAT MAY BE WITHIN OR UNDER THE HEREIN CONVEYED PARCEL OF LAND, AND THE RIGHTS THERETO, TOGETHER WITH CERTAIN OTHER CONDITIONS, AS EXCEPTED IN SAID PARCELS 45809-5 AND 46809-6 OF SAID FINAL ORDER OF CONDEMNATION, IN DEED (STATE PARCEL 18.1A) RECORDED APRIL 2, 1951 IN BOOK 35947 PAGE 142, OFFICIAL RECORDS, IN SAID PARCELS 1 AND 2 OF DEEDS (STATE PARCEL B7694).

**PARCEL 2:**

THAT PORTION OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER AND OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 25, TOWNSHIP 1 NORTH, RANGE 18 WEST, AND THAT PORTION OF GOVERNMENT LOT 3 OF SAID SECTION 25, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEASTERLY TERMINUS OF THAT CERTAIN COURSE DESCRIBED IN PARCEL 2 OF SAID DEED RECORDED IN BOOK 35947 PAGE 142, OF OFFICIAL RECORDS, AS HAVING A BEARING OF SOUTH 58° 434' 09" WEST, A DISTANCE OF 147.26 FEET; THENCE ALONG THE SOUTHERLY LINE OF THE LAND DESCRIBED IN LAST SAID DEED SOUTH 84° 44' 04" EAST, (ON A DIFFERENT BASIS OF BEARING), 182.76 FEET TO A TANGENT CURVE IN SAID SOUTHERLY LINE, CONCAVE NORTHERLY AND HAVING A RADIUS OF 2,050 FEET; THENCE ALONG SAID CURVE EASTERLY, THROUGH AN ANGLE OF 02° 20' 44" AN ARC DISTANCE 83.92 FEET;

ORDER NO. 3910120-06600

## LEGAL DESCRIPTION CONTINUED

THENCE SOUTH 41° 07' 44" WEST, 275.25 FEET; THENCE SOUTH 52° 31' 06" WEST, 207.20 FEET; THENCE SOUTH 84° 11' 33" WEST, 124.90 FEET; THENCE NORTH 62° 04' 30" WEST, 287.87 FEET; THENCE NORTH 77° 18' 25" WEST, 360.87 FEET; THENCE SOUTH 71° 31' 30" WEST, 155.86 FEET; THENCE SOUTH 75° 17' 41" WEST, 146.58 FEET; THENCE SOUTH 80° 06' 39" WEST, 237.08 FEET TO A POINT IN SAID SOUTHERLY LINE OF LAND DESCRIBED IN SAID DEED; THENCE IN A GENERAL EASTERLY DIRECTION ALONG SAID SOUTHERLY LINE, THROUGH THE VARIOUS COURSES AND DISTANCES THEREIN, TO THE POINT OF BEGINNING.

EXCEPTING THAT PORTION OF LAND RECORDED IN DEED 1996-129437.

EXCEPT ONE-HALF OF ALL CRUDE OIL, PETROLEUM, GAS, BREA, ASPHALTUM AND ALL KINDRED SUBSTANCES AND OTHER MINERALS, UNDER AND IN SAID LAND, WITHOUT RIGHT OF ENTRY, AS RESERVED IN THE DEED FROM NORBERT R. NETTLESHIP AND M. ATHEA WHITE NETTLESHIP, HUSBAND AND WIFE, RECORDED DECEMBER 6, 1954 IN BOOK 46287 PAGE 361, OF OFFICIAL RECORDS.

ALSO EXCEPTING THREFROM ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS, AND OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN THAT MAY BE WITHIN OR UNDER THE PARCEL OF LAND HEREINABOVE DESCRIBED TOGETHER WITH THE PERPETUAL RIGHT OF DRILLING, MINING, EXPLORING AND OPERATING THEREFOR AND REMOVING THE SAME FROM SAID LAND OR ANY OTHER LAND, INCLUDING THE RIGHT TO WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THOSE HEREINABOVE DESCRIBED, OIL OR GAS WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF THE LAND HEREIN ABOVE DESCRIBED, AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS UNDER SAID BENEATH OR BEYOND THE EXTERIOR LIMITS THEREOF, AND TO REDRILL, RETUNNEL, EQUIP, MAINTAIN, REPAIR, DEEPEN AND OPERATE ANNY SUCH WELLS OR MINES, WITHOUT, HOWEVER, THE RIGHT TO DRILL, MINE, EXPLORE AND OPERATE THROUGH THE SURFACE OR THE UPPER 100 FEET OF THE SUBSURFACE OF THE LAND HEREINABOVE DESCRIBED OR OTHERWISE IN SUCH MANNER AS TO ENDANGER THE SAFETY OF ANY HIGHWAY THAT MAY BE CONSTRUCTED ON SAID LANDS, AS EXCEPTED BY DEED FROM BOB HOPE, WHO ACQUIRED TITLE AS LESTER T. HOPE AND DOLORES HOPE, HUSBAND AND WIFE, RECORDED JULY 11, 1964.

***END OF LEGAL DESCRIPTION***



**This page is part of your document - DO NOT DISCARD**



# 20201688736



**Pages: 0015**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/18/20 AT 08:00AM**

| | |
|---|---|
| FEES: | 66.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 66.00 |



**L E A D S H E E T**



202012180190061

00019565345



011590631

**SEQ: 03**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

*E460070*



RECORDED AT REQUEST OF

EQUITY TITLE CO

WHEN RECORDED MAIL TO

EMIL ASSENTATO
141 PIPING ROCK RD
LOCUST VALLEY, NY 11560

(FOR RECORDER'S USE ONLY)

# DEED OF TRUST

(Please fill in document Title(s) on this line)

SB 2 Exemptions (choose the statement that applies):

◉ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with a transfer subject to the imposition of documentary transfer tax"

○ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with a transfer of real property that is a residential dwelling to an owner-occupier"

○ Exempt from fee per GC 27388.1 (a) (1); "fee cap of $225 reached"

○ Exempt from fee per GC 27388.1 (a) (1); "not related to real property"

Accommodation

*39/0/20-06600*

RECORDING REQUEST BY

EQUITY TITLE CO

WHEN RECORDED MAIL TO
EMIL ASSENTATO
141 PIPING ROCK RD
LOCUST VALLEY, NY 11560

_____

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## TITLE(S)

DEED OF TRUST

Assessor's Identification Number (AIN)   2064-005-011 AND 2064-005-015

**Prepared By:**                                    |

Brown Realty Group                                  |

2945 Westwood Blvd                                  |

Los Angeles, CA 90064                               |

                                                    |

                                                    |


**After Recording Return To:**                      |

Emil Assentato                                      |

141 Piping Rock Rd                                  |

Locust Valley, NY 11560                             |

                                                    |

                                                    |

                                                    |

                                                    |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Parcel Number (APN): 2064-005-011 and 2064-005-015

# DEED OF TRUST

**THIS DEED OF TRUST (the "Trust") dated October 22, 2020, is made by and between:**

THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY of 10226 Regent St, Los Angeles, California 90034
(the "Borrower")

**-AND-**

Emil Assentato of 141 Piping Rock Rd, Locust Valley, New York 11560
(the "Lender")

**-AND-**

Brown Realty Group of 2945 Westwood Blvd, Los Angeles, California 90064
(the "Trustee")

**WITNESSETH:**

**THAT FOR AND IN CONSIDERATION OF** the sum lent to the Borrower by the Lender, in the amount of $110,000.00 U.S. Dollars (the "Principal Amount") as evidenced by the promissory note (the "Note") dated October 22, 2020, the receipt of which the Borrower does hereby acknowledge itself indebted, the Borrower IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS to TRUSTEE IN TRUST, WITH POWER OF SALE, the following described real property (the "Property"), located at APN 2064-005-011 and 2064-005-015 in the County of Los Angeles, State of California, with the following legal description:
SEE ATTACHED EXHIBIT "A" FOR COMPLETE LEGAL DESCRIPTION
scription:
TR=33128 LOT 0003
FOR DESC SEE ASSESSOR'S MAPS POR OF SW 1/4 AND SE 1/4 SEC 25 T1N R18W

**TOGETHER WITH** all the improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions will also be covered by this Trust.

**BORROWER COVENANTS** that Borrower is the legal owner of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower further warrants and will defend

THIS DEED OF TRUST IS SECOND AND SUBJECT TO A FIRST DEED OF TRUST RECORDING CONCURRENTLY.

generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**To Protect the Security of this Deed of Trust, the parties do hereby agree as follows:**

## TERMS RELATING TO PAYMENT

**1. PROMISE TO PAY.** The Borrower, for value received, promises to pay to the Lender the Principal Amount, interest and all fees and costs on the terms outlined in this Trust or in any amendment, extension, or renewal of the Trust and any additional amounts secured by this Trust on the terms elsewhere provided for such debts and liabilities.

**2. INTEREST.** The Borrower agrees to pay the Principal Amount with interest before and after maturity and before and after default at the rate of 0 percent (the "Interest Rate"). The Interest Rate will be calculated from the date this Trust begins on _October 22, 2020_ (the "Adjustment Date") and accrues until the whole of the Principal Amount is paid. The Loan will be repaid on the following terms:

a. The Principal Amount with interest will be repaid in consecutive annual installments of $110,000.00.

b. The Adjustment Date for this Trust is _October 22, 2021_;

c. The balance, if any, of the Principal Amount and any interest thereon and any other moneys owed under this Trust will be due and payable on November 04, 2021 (the "Maturity Date").

**3. PAYMENT LOCATION.** The Borrower will make payments to 141 Piping Rock Rd, Locust Valley, New York 11560, or at such other place as may be designated by Lender at a later date.

**4. FUNDS FOR ESCROW ITEMS.** The Borrower will pay to Lender, on the day periodic payments are due under this Trust, until the Principal Amount is paid in full, a sum (the "Funds") to provide for payment for: (a) any taxes, assessments, or other items which can take priority over this Trust as a lien or encumbrance on the Property; (b) lease payments on the Property, if any; (c) premiums for any and all insurance, including Mortgage Insurance required by the Lender. These items are called "Escrow Items."

The Borrower must notify the Lender of all amounts to be paid under this Section. If the Lender requires, the Borrower must provide receipts evidencing such payments to the Lender. If the Borrower does not make payments on time, the Lender can, at its discretion, make any and all past due payments for Escrow Items and the Borrower will be obligated to repay the Lender for any such amount. The Lender may waive the Borrowers obligation to pay the Lender for any and

all Escrow Items at any time by providing written notice to the Borrower. If such waiver occurs, the Borrower must pay directly, when and where payable, the amounts due for any and all Escrow Items. If the Borrower is obligated to pay Escrow Items directly, and the Borrower fails to make payments on time, then the Lender may exercise its rights under this Section and pay for any such amounts and Borrower will be obligated to repay Lender for any such amount.

The Borrower will collect and hold the Funds in accordance with the Real Estate Settlement Procedures Act (the "RESPA"). Lender will estimate the amount of Funds due in accordance with Applicable Law. If there is a surplus of Funds held in escrow, as defined under RESPA, the Lender must provide to Borrower the excess funds in accordance with RESPA. If there is a shortage or deficiency of Funds held in escrow, as defined under RESPA, Lender must notify Borrower in writing and Borrower must pay to Lender the amount necessary to make up the shortage or deficiency.

Upon payment in full of all Funds relating to Escrow Items, Lender will promptly refund to Borrower any excess Funds held by Lender.

**5. OBLIGATION TO PAY**. The Borrower agrees to pay all moneys payable pursuant to this Trust and all additional amounts secured by this Trust without abatement, set-off or counterclaim. Should the Borrower make any claim against the Lender either initially or by way of abatement, set-off or counterclaim, the Borrower agrees that any such claim will not reduce or postpone their obligation to make all payments as provided by this Trust.

**6. APPLICATION OF PAYMENTS**. All payments paid by the Borrower and received by the Lender will first be applied in payment of the interest calculated at the Interest Rate, and second in payment of the Principal Amount. Such payments will be applied in the order in which it became due. However, if the Borrower defaults on payment, then the Lender will have the right to apply any payments received while in default as the Lender so chooses.

**7. PREPAYMENT PRIVILEGES**. When not in default, the Borrower may prepay, without penalty, all or a portion of the Principal Amount and Interest earlier than it is due (i.e., make payment prior to the time that it is due). Partial prepayment will not postpone the due date of any subsequent payment or change the payment amount, unless the Lender otherwise agrees in writing. Rather, prepayments will first be applied to the interest calculated at the Interest Rate, and second to the Principal Amount.

**8. ADDITIONAL CHARGES AND ENCUMBRANCES**. The Borrower must pay all taxes, assessments, charges, fines, and all other impositions attributable to the Property and all trusts, liens, and other encumbrances on the Property. To the extent that these items are Escrow Items, the Borrower will pay them in the manner provided in Section 4.

**9. RELEASE AND RECONVEYANCE**. Upon payment of all sums secured by this Trust, including the Principal Amount and interest, the Lender will request the Trustee to reconvey the Property and must surrender this Trust and the Note evidencing debt secured by this Trust to Trustee. Trustee must reconvey the Property without warranty to the person or persons legally

entitled to it. Such person or persons will pay any recordation costs. The Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**10. NO SALE WITHOUT CONSENT.** The Trustee will not sell, transfer, assign, or otherwise dispose of all or part of the Property or any interest in the Property, without the Borrower's and Lender's prior written consent.

**11. PROPERTY INSURANCE.** The Borrower must keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which the Lender requires insurance. The insurance carrier providing the insurance will be chosen by the Borrower. However, the Lender will have the right to disapprove the Borrower's choice, which right may not be unreasonable.

If the Borrower fails to maintain any of the coverage's described above, then Lender may obtain insurance coverage, at Lender's discretion and Borrower's expense. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of the insurance that the Borrower could have obtained. However, any amounts paid by Lender will become additional debt of the Borrower and secured by this Trust. The amounts paid by the Lender will bear interest at the Interest Rate from the date of payment and will be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies must include a standard mortgage and/or trust clause and will name Lender as mortgagee and/or as an additional loss payee, stating that any loss is payable to the Lender. Borrower further agrees to generally assign rights to insurance proceeds to the Lender up to the amount of the outstanding loan balance. If, at the request of the Lender, Borrower will provide Lender (a) a copy of the insurance policy; (b) all receipts of paid premiums and renewal notices.

In the event of loss, the Borrower must give prompt notice to the insurance carrier and to the Lender. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds must be applied to restoration or repair of the Property, if the restoration or repair is economically feasible. If the restoration or repair is not economically feasible, the insurance proceeds will be applied to the remainder of this Trust, whether or not the balance of the Trust is then due, with the excess, if any, paid to the Borrower.

**12. OCCUPANCY, MAINTENANCE, AND REPAIR.** The Borrower will occupy, establish, and use the Property as Borrower's principal residence after the execution of this Trust. The Borrower will not allow the Property to become vacant without the written consent of the Lender. The Borrower will not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not the Borrower is residing at the Property, the Borrower will maintain the Property in order to prevent the Property from deteriorating or decreasing value due to its condition. Unless repair or restoration is not economically feasible, Borrower will promptly make all necessary repairs, replacements, and improvements to avoid any

further deterioration or damage. The Lender may, whenever necessary, make reasonable entries upon and inspections of the Property. If the Borrower neglects to maintain the Property in good condition or allows the Property to deteriorate resulting in decreased property value, the Lender will have the right to make such repairs and improvements as it considers necessary to maintain the Property.

**13. HAZARDOUS SUBSTANCES**. The Borrower will not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on the Property. Hazardous substances include pollutants, wastes, and those substances defined as toxic or hazardous substances by environmental law, as well as the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. Furthermore, the Borrower will not, nor allow anyone else to do, anything affecting the Property involving any hazardous substances that would materially affect the value of the Property. The Borrower will promptly take all necessary remedial actions under federal, state, and local laws regarding hazardous substances.

## DEFAULT AND REMEDIES

**14. DEFAULT**. The Borrower will be considered in default under the terms of this Trust if any of the following conditions are met:

    a. The Borrower fails to pay the sum of the Principal Amount, interest, or any other amounts due under this Trust.

    b. The Borrower fails to perform or comply with any of the terms and conditions or any obligations or responsibilities due under this Trust.

    c. The Borrower has given or made, at any time during the loan process, any materially false, misleading, or inaccurate information or statements to the Lender or any other party under this Trust in connection with the loan.

    d. If any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Trust.

    e. If a lien is registered against the Property, or if default occurs under any other lien or encumbrance existing against the Property;

    f. The Borrower abandons or fails to occupy the Property.

    g. The Property or any material part of the Property is expropriated.

**15. ACCELERATION**. If at any time the Borrower should be in default under this Trust, the Lender must give notice to the Borrower. The notice must specify: (a) the default; (b) the action required to cure the default (if allowable); (c) a date, not less than 30 days from the date of the

notice, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Trust and sale of the Property. If the default is not curable and/or if the default is not cured on or before the date specified in the notice, the Lender at its option may require immediate payment in full of all sums, including the Principal Amount, interest, and all other amounts secured by this Trust. If the default is cured, the Trust will be reinstated. If the default is not cured, the Lender may invoke the power of sale and begin foreclosure proceedings.

The Lender will at all times retain the right to require immediate payment in full in the event of default. Any forbearance on the part of the Lender upon default, which includes but is not limited to acceptance of late payment, acceptance of payment from third parties, or acceptance of payments less than the amount due, will not constitute a waiver to enforce acceleration on default.

**16. PROTECTION OF LENDER'S INTEREST.** If at any time the Borrower fails to perform the covenants and agreements under this Trust, or if there is a legal proceeding that significantly affects the Lender's interest in the Property, or if the Borrower has abandoned the Property, then the Lender may do and pay for whatever is reasonable or appropriate to protect the Lender's interest in the Property and/or rights under this Trust, which includes, but is not limited to:

    a. Paying any sums secured by a lien which has priority over this Trust;

    b. Appearing in court;

    c. Paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Trust; and

    d. Paying for reasonable costs to repair and maintain the Property.

The Lender will at all times retain the right to take action under this Section. However, the Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that the Lender will not incur any liability for not taking any or all actions to perform such tasks. Furthermore, any amounts paid by the Lender will become additional debt of the Borrower secured by this Trust.

**17. POWER OF SALE.** If at any time the Borrower is in default under this Trust, the Lender will have the right and authority to foreclose and force the sale of the Property without any judicial proceeding. Any delay in the exercising of this right will not constitute a waiver to exercise this right at a later date should the Borrower remain in default or subsequently default again in the future.

**18. REMEDIES.** The Lender will have the right to invoke all remedies permitted under Applicable Law, whether or not such remedies are expressly granted in this Trust, including but not limited to any foreclosure proceedings.

If the Lender invokes the power of sale, the Trustee will execute a written notice of the occurrence of an event of default and of the Lender's decision to sell the Property. The Lender or Trustee will

mail copies of the notice to the Borrower and Guarantor and will also give public notice of sale in the manner provided by Applicable Law. After the time required by Applicable Law, the Trustee will sell the Property at a public auction to the highest bidder at the time and place and under the terms designated by the Trustee in the notice of sale. The Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Furthermore, the Lender or its designee may purchase the Property at any sale.

## MISCELLANEOUS TERMS

**19. GOVERNING LAW.** This Trust will be construed in accordance with the laws of the state of California ("Applicable Law"). Applicable Law will include all controlling applicable federal, state and local statutes. All rights and obligations under this Trust are subject to any requirements and limitations of Applicable Law.

**20. SEVERABILITY.** If any portion of this Trust will be held to be invalid or unenforceable for any reason, the remaining provisions will continue to be valid and enforceable. If a court finds that any provision of this Trust is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision will be deemed to be written, construed, and enforced as so limited.

**21. JOINT SIGNATURES.** If the Borrower is more than one person or legal entity, each Borrower who signs this Trust will be jointly and severally bound to comply with all the obligations and liabilities of the other Borrower(s).

**22. STATUTORY PROVISIONS.** The provisions contained in this Trust are additional and supplemental, to the extent permitted by law, to the provisions set out in the Applicable Law as they relate to trusts.

**23. SUBSTITUTE TRUSTEE.** The Lender may, at its option, from time to time appoint a successor Trustee by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the property is located. The instrument will contain the name of the original Lender, Trustee, and Borrower, the book and page where this Trust is recorded and the name and address if the successor Trustee. Without conveyance of the Property, the successor trustee will succeed to all the title, powers and duties of the Trustee.

**24. STATEMENT OF OBLIGATION FEE.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by § 2943 of the Civil Code of California.

**25. NOTICE.** All notice given by either party in connection with this Trust must be in writing. Notice will be considered sufficient when mailed by first class or certified mail to the address of the recipient. The recipient's address will be the property address as stated under this Trust unless another address has been designated. If there is a change of address by any party, that party must

promptly notify all parties under this Trust of the change of address. Any notice will be considered effective on the same day that it was sent, unless the day falls on a national holiday, Saturday, or Sunday, in which case, the next business day will be considered as the day of receipt.

**IN WITNESS WHEREOF** this Trust has been executed by the Borrower in the manner prescribed by law as of October 22, 2020 as stated above.

Borrower:

**THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY**

By _____
          CLINTON BROWN, MANAGING MEMBER

Date: 11/10/2020

[Notary Acknowledgment to Follow]

# ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____LOS ANGELES_____ )

On __NOV 1 0 2020__ before me, _____LANA BROWN, A NOTARY PUBLIC_____
(insert name and title of the officer)

personally appeared ____Clinton Brown____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

LANA BROWN
Notary Public - California
Los Angeles County
Commission # 2296575
My Comm. Expires Aug 8. 2023

EXHIBIT "A"

PARCEL 1:

LOT 3 IN TRACT NO. 33128, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, RECORDED IN BOOK 1099, PAGES 94 TO 97, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT FROM A PORTION OF SAID LAND, ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS AND OTHER HYDROCARBONS, BY WHATSOEVER NAME KNOWN, THAT MAY BE WITHIN OR UNDER THE PARCELS OF LAND HEREINAFTER DESCRIBED, WITHOUT, HOWEVER, THE RIGHT EVER TO DRILL, DIG OR MINE THROUGH THE SURFACE OF SAID LAND THEREFOR OR OTHERWISE IN SUCH MANNER AS TO ENDANGER THE SAFETY OF ANY HIGHWAY THAT MAY BE CONSTRUCTED ON THE LANDS HEREBY CONVEYED AS PROVIDED IN THE DEED RECORDED APRIL 2, 1951 AS INSTRUMENT NO. 3289, OF OFFICIAL RECORDS.

ALSO EXCEPT FROM A PORTION OF SAID LAND, ONE-HALF OF ALL CRUDE OIL, PETROLEUM, GAS, BREA, ASPHALTUM AND ALL KINDRED SUBSTANCES AND OTHER MINERALS UNDER AND IN SAID LAND, WITHOUT RIGHT OF ENTRY, AS PROVIDED IN THE DEED RECORDED DECEMBER 6, 1954 AS INSTRUMENT NO, 540, OF OFFICIAL RECORDS.

ALSO EXCEPT FROM A PORTION OF SAID LAND, ONE-HALF OF ALL MINERALS, OIL, PETROLEUM, ASPHALTUM, GAS, COAL AND OTHER HYDROCARBON SUBSTANCES AND WATER CONTAINED IN, ON, WITHIN AND UNDER SAID LAND, PROVIDED, HOWEVER, THAT THIS GRANT SHALL NEITHER GRANT NOR SHALL IT BE CONSTRUED AS GRANTING TO GRANTEES, THEIR SUCCESSORS IN INTEREST OR ASSIGNS THE RIGHT TO GO UPON OR UNDER SAID LANDS FOR THE PURPOSE OF EXTRACTING ANY OF SAID SUBSTANCES, AS PROVIDED IN THE DEED RECORDED OCTOBER 23, 1958 AS INSTRUMENT NO. 1532, OF OFFICIAL RECORDS.

ALSO EXCEPT ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS AND OTHER  HYDROCARBONS BY WHATSOEVER NAME KNOWN THAT MAY BE WITHIN OR UNDER THE HEREIN CONVEYED PARCEL OF LAND, AND THE RIGHTS THERETO, TOGETHER WITH CERTAIN OTHER CONDITIONS, AS EXCEPTED IN SAID PARCELS 45809-5 AND 46809-6 OF SAID FINAL ORDER OF CONDEMNATION, IN DEED (STATE PARCEL 18.1A) RECORDED APRIL 2, 1951 IN BOOK 35947 PAGE 142, OFFICIAL RECORDS, IN SAID PARCELS 1 AND 2 OF DEEDS (STATE PARCEL B7694).

PARCEL 2:

THAT PORTION OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER AND OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 25, TOWNSHIP 1 NORTH, RANGE 18 WEST, AND THAT PORTION OF GOVERNMENT LOT 3 OF SAID SECTION 25, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEASTERLY TERMINUS OF THAT CERTAIN COURSE DESCRIBED IN PARCEL 2 OF SAID DEED RECORDED IN BOOK 35947 PAGE 142, OF OFFICIAL RECORDS, AS HAVING A BEARING OF SOUTH 58° 434' 09" WEST, A DISTANCE OF 147.26 FEET; THENCE ALONG THE SOUTHERLY LINE OF THE LAND DESCRIBED IN LAST SAID DEED SOUTH 84° 44' 04" EAST, (ON A DIFFERENT BASIS OF BEARING), 182.76 FEET TO A TANGENT CURVE IN SAID SOUTHERLY LINE, CONCAVE NORTHERLY AND HAVING A RADIUS OF 2,050 FEET; THENCE ALONG SAID CURVE EASTERLY, THROUGH AN ANGLE OF 02° 20' 44" AN ARC DISTANCE 83.92 FEET;

ORDER NO. 3910120-06600

## LEGAL DESCRIPTION CONTINUED

THENCE SOUTH 41° 07' 44" WEST, 275.25 FEET; THENCE SOUTH 52° 31' 06" WEST, 207.20 FEET; THENCE SOUTH 84° 11' 33" WEST, 124.90 FEET; THENCE NORTH 62° 04' 30" WEST, 287.87 FEET; THENCE NORTH 77° 18' 25" WEST, 360.87 FEET; THENCE SOUTH 71° 31' 30" WEST, 155.86 FEET; THENCE SOUTH 75° 17' 41" WEST, 146.58 FEET; THENCE SOUTH 80° 06' 39" WEST, 237.08 FEET TO A POINT IN SAID SOUTHERLY LINE OF LAND DESCRIBED IN SAID DEED; THENCE IN A GENERAL EASTERLY DIRECTION ALONG SAID SOUTHERLY LINE, THROUGH THE VARIOUS COURSES AND DISTANCES THEREIN, TO THE POINT OF BEGINNING.

EXCEPTING THAT PORTION OF LAND RECORDED IN DEED 1996-1294372.

EXCEPT ONE-HALF OF ALL CRUDE OIL, PETROLEUM, GAS, BREA, ASPHALTUM AND ALL KINDRED SUBSTANCES AND OTHER MINERALS, UNDER AND IN SAID LAND, WITHOUT RIGHT OF ENTRY, AS RESERVED IN THE DEED FROM NORBERT R. NETTLESHIP AND M. ATHEA WHITE NETTLESHIP, HUSBAND AND WIFE, RECORDED DECEMBER 6, 1954 IN BOOK 46287 PAGE 361, OF OFFICIAL RECORDS.

ALSO EXCEPTING THREFROM ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS, AND OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN THAT MAY BE WITHIN OR UNDER THE PARCEL OF LAND HEREINABOVE DESCRIBED TOGETHER WITH THE PERPETUAL RIGHT OF DRILLING, MINING, EXPLORING AND OPERATING THEREFOR AND REMOVING THE SAME FROM SAID LAND OR ANY OTHER LAND, INCLUDING THE RIGHT TO WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THOSE HEREINABOVE DESCRIBED, OIL OR GAS WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF THE LAND HEREIN ABOVE DESCRIBED, AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS UNDER SAID BENEATH OR BEYOND THE EXTERIOR LIMITS THEREOF, AND TO REDRILL, RETUNNEL, EQUIP, MAINTAIN, REPAIR, DEEPEN AND OPERATE ANNY SUCH WELLS OR MINES, WITHOUT, HOWEVER, THE RIGHT TO DRILL, MINE, EXPLORE AND OPERATE THROUGH THE SURFACE OR THE UPPER 100 FEET OF THE SUBSURFACE OF THE LAND HEREINABOVE DESCRIBED OR OTHERWISE IN SUCH MANNER AS TO ENDANGER THE SAFETY OF ANY HIGHWAY THAT MAY BE CONSTRUCTED ON SAID LANDS, AS EXCEPTED BY DEED FROM BOB HOPE, WHO ACQUIRED TITLE AS LESTER T. HOPE AND DOLORES HOPE, HUSBAND AND WIFE, RECORDED JULY 11, 1964.

***END OF LEGAL DESCRIPTION***



**This page is part of your document - DO NOT DISCARD**

## 20201688735




**Pages:**
**0021**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/18/20 AT 08:00AM**

| | |
|---|---|
| FEES: | 84.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 84.00 |



**L E A D S H E E T**



202012180190061

**00019565344**



011590631

**SEQ:**
**02**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

*E460070*

E08_201218_8888849

RECORDED AT REQUEST OF

EQUITY TITLE CO

WHEN RECORDED MAIL TO
SUPERIOR LOAN SERVICING
7525 TOPANGA CANYON BLVD
CANOGA PARK, CA. 91303

(FOR RECORDER'S USE ONLY)

## DEED OF TRUST AND ASSIGNMENT OF RENTS

(Please fill in document Title(s) on this line)

SB 2 Exemptions (choose the statement that applies):

● Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with a transfer subject to the imposition of documentary transfer tax"

○ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with a transfer of real property that is a residential dwelling to an owner-occupier"

○ Exempt from fee per GC 27388.1 (a) (1); "fee cap of $225 reached"

○ Exempt from fee per GC 27388.1 (a) (1); "not related to real property"

391 0100-0200

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

Superior Loan Servicing
7525 Topanga Canyon Blvd
Canoga Park, CA 91303
Loan Number: RMF4027704

Property Address:
APN: 2064-005-011 AND APN: 2064-005-015
AGOURA HILLS, CA 91301

APN: 2064-005-011; 2064-005-015                                   SPACE ABOVE THIS LINE FOR RECORDERS USE

# DEED OF TRUST
# AND ASSIGNMENT OF RENTS

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19, 20 and 22. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A)** "**Security Instrument**" means this document, which is dated OCTOBER 29, 2020, together with all Riders to this document.

**(B)** "**Borrower**" is THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY. Borrower is the trustor under this Security Instrument. Borrower's mailing address is: 10226 REGENT STREET, LOS ANGELES, CA 90034.

**(C)** "**Lender**" is EXHIBIT D. Lender is the beneficiary under this Security Instrument.

**(D)** "**Trustee**" is SUPERIOR LOAN SERVICING, to whom Borrower irrevocably grants, transfers and assigns property, in Trust, with Power of Sale.

**(E)** "**Note**" means the promissory note signed by Borrower and dated OCTOBER 29, 2020. The Note states that Borrower owes Lender ONE HUNDRED SEVENTY NINE THOUSAND DOLLARS exactly (U.S. $179,000.00) plus interest.

**(F)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

**(G)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** "**Riders**" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower : Assignment of Rents and Profits; Security Agreement and Protection of Lenders' Security Rider.

**(I)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** "**Community Association Dues, Fees and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)  **"Escrow Items"** mean those items that are described in Section 3.

(M)  **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5 for (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)  **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)  **"Periodic Payment"** means the regularly scheduled amount due for (1) principal and interest under the Note, plus (2) any amounts under Section 3 of this Security Instrument.

(P)  **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)  **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (a) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (b) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of **LOS ANGELES**, which currently has the address of **APN: 2064-005-011 AND APN: 2064-005-015, AGOURA HILLS, CA 91301** and fully described as:

**SEE LEGAL DESCRIPTION ATTACHED  EXHIBIT "A"**

**APN # 2064-005-011; 2064-005-015**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and nonuniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity or (d) Electronic Funds Transfer. Additionally, Lender can require payment due to senior encumbrances, including insurance, in the forms listed above.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment(s) or partial payment(s) if the payment(s) or partial payments are insufficient to bring the Loan current. Lender may accept any payment(s) or partial

payment(s) insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment(s) or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment(s) to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to any amounts under the Note owed by Borrower. Lender shall decide how to apply funds. Should a Notice of Default be of record, funds may be applied and the Notice of Default shall remain valid. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: First - interest due under the Note; Second - principal due under the Note; Third - amounts due under Section 3. However, should advances be made under this Deed of Trust, Lender has sole discretion as to the distribution as to how payments shall be applied when received. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Should Lender require, borrower or his successor shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 9. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 8 and pay such amount and Borrower shall then be obligated under Section 8 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust including borrower's covenants to make payments when due. Additionally, borrower shall pay all taxes, assessments, charges, including garbage billings, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given (excluding Deed of Trust liens, which need no notice), Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.   Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (1) a onetime charge for flood zone determination, certification and tracking services or (2) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

Borrower is to provide and deliver evidence of insurance to lender, which is to the satisfaction of Lender.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made

promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (1) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (2) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration. Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause. Additionally, should Borrower be conducting illegal activity on or about the property, this shall constitute a breach under this security agreement.

**7. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, fraudulent, misleading, misrepresentation, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**8. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (1) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (2) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (3) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to, (1) paying any sums secured by a lien which has priority over this Security Instrument, (2) appearing in court, and (3) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. The parties hereto agree that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**9. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a nonrefundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 9 affects Borrower's obligation to pay interest at the rate provided in the Note.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender. If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment

of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11.   Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12.   Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13.   Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, foreclosure fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14.   Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's Mailing Address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Mailing Address unless Borrower has designated a substitute notice address by notice to Lender.

**Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.**

Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument. Borrower requests that a copy of any Notice of Default and any Notice of Sale hereunder be mailed to Borrower at the Mailing Address stated herein, unless Borrower has designated another address by Notice to Lender.

15.    **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (1) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (2) words in the singular shall mean and include the plural and vice versa, and (3) the word "may" gives sole discretion without any obligation to take any action.

16.    **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

17.    **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

In the event of sale or transfer, conveyance or alienation of said real property, or any part thereof, or any interest therein, whether voluntary or involuntary (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), Beneficiary shall have the right of acceleration, at it's option, to declare the Note secured by the Deed of Trust, irrespective of the maturity date expressed therein, and without demand or notice, immediately due and payable. No waiver of this right shall be effective unless it is in writing. Consent by the Beneficiary to one such transaction shall not constitute waiver of the right to require such consent to succeeding transactions.

18.    **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (i) five business days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (ii) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (iii) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, foreclosure fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

19.    **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer(s) and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20.    Hazardous Substances.** As used in this Section 20: (1) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (2) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (3) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (4) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup .

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (1) that is in violation of any Environmental Law, (2) which creates an Environmental Condition or (3) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (1) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (2) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (3) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21.    Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee, Agent of Beneficiary or Agent of Trustee, of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold the Property, which notice Trustee, Agent of Beneficiary or Agent of Trustee shall cause to be filed for record. Trustee, Agent of Beneficiary or Agent of Trustee shall be entitled to rely upon the correctness of such notice.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee or Trustee's Agent, without demand on Borrower, shall sell the Property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as Trustee or Beneficiary may determine at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee, or Trustee's Agent may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Borrower, Trustee or Beneficiary as herein defined, may purchase at such sale. Trustor hereby waives any and all rights expressed or implied under California Civil Code Section 2924g(b). All junior lienholders shall be bound by this as well.

If the Mortgaged Property consists of several lots, parcels or items of property, Beneficiary may: (a) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (b) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Beneficiary deems in its best interest. Any person, including Trustor, Trustee or Beneficiary, may purchase at any sale hereunder, and Beneficiary shall have the right to purchase at any sale hereunder by crediting upon the bid price the amount of all or any part of the indebtedness hereby secured. Should Beneficiary desire that more than one sale or other disposition of the Mortgaged Property be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed of Trust on any part of the Mortgaged Property not sold until all indebtedness secured hereby has been fully paid. In the event Beneficiary elects to dispose of the Mortgaged Property through more than one sale, Trustor agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein the same may be made, including reasonable compensation to Trustee and Beneficiary, their agents and counsel, and to pay all expenses, liabilities and advances made or incurred by Trustee in connection with such sale or sales, together with interest on all such advances made by Trustee at the lower of the rate set forth in the Note, or the maximum rate permitted by law to be charged by Trustee.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with

the sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby, and the remainder, if any, to the person or persons legally entitled thereto.

**22.    The Agreement is Binding.** This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devises, administrators, executors, successors and assigns. The term "Beneficiary" shall mean the owner and holder, including pledgees, of the Note secured hereby, whether or not named as Beneficiary herein. In this Deed of Trust, whenever the contract so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. As used herein, "fixtures" includes but is not limited to carpeting, built-in appliances, drapery and drapery rods, landscaping, water tanks, plumbing, machinery, air conditioners, ducts, and the like.

**23.    Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, and if the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24.    Grievances.** Neither Borrower nor Lender may commence, join, or be joined to any judicial action, except an appointment of a receiver and/or a judicial foreclosure (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 55.

**25.    Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law.

**26.    Multiple Lender Loans:** Pursuant to Civil Code Section 2941.9, if this Deed of Trust has more than one Beneficiary (Lender) with an undivided interest, it is subject to a signed agreement between all of the Lenders to be governed by the Lenders holding more than 50% of the record beneficial interest of this Deed of Trust. This may occur during escrow or after the close of escrow. Additionally, pursuant to Business & Professions Code Section 10238(i), the holders of more than 50% of the recorded beneficial interests of the notes or interests may govern the actions to be taken on behalf of all holders in accordance with Civil Code Section 2941.9 in the event of default or foreclosure for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf and the sale, encumbrance, or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

**27.    Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**28.    Senior Lien Information.** Lender may require information on any and all senior lien information from Borrower. Said request must be made in writing to Borrower. Borrower must submit the information to Lender within 20 days of the date of request. Said information can include, but is not limited to: name of senior lien holder, balance due, payment amount, next due date, address of lien holder, phone number of lien holder, loan number and amounts advanced.

**29.    Document Drawing Service.** If a document drawing service has been hired to draw loan documents, Borrower hereby agrees to indemnify and hold Document Drawing Service, its officers, agents and representatives harmless from and against any costs, expense (including, without limitation attorney fees, consulting fees and court costs).

**30.    Indemnification.** Borrower hereby agrees to indemnify (as the same are incurred or accrued) and hold Lender and its officers, agents, representatives harmless from and against any cost, expense (including, without limitation attorney fees, consulting fees and court costs), demand, claim or lawsuit arising out of or related to the Property or the Loan, including, but not limited to any claims made by contractors, suppliers, mechanics lien claimants, homeowner associations, governmental authorities, stop notice claimants, title companies or persons purporting to be injured on or by the Property or by the acts or conduct of Borrower, its contractors, subcontractors, suppliers and or other persons dealing with Borrower. If Borrower fails to provide such indemnity as the same accrues and as expenses

are incurred, the amount not paid shall be added to the principal amount of the Note and bear interest thereon at the same rate then in effect (including any default rate in effect) and shall be secured by the same collateral as securing the Note and Loan Agreement.

31.   **Acceptance by Lender of Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full), or any sums secured by this Deed of Trust after a notice of default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payments so made to the loans secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such payment promptly or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

32.   **Unsecured Portion of Indebtedness.** If any part of the secured indebtedness cannot be lawfully secured by this Deed of Trust, or if any part of the Property cannot be lawfully subject to the lien and security interest hereof to the full extent of such indebtedness, then all payments made shall be applied on said indebtedness first in discharge of that portion thereof which is unsecured by this Deed of Trust.

33.   **Waiver of Marshalling; Other Waivers.** To the extent permitted by law, Borrower waives (i) the benefit of all present or future laws providing for any appraisement before sale of any portion of the Mortgaged Property, (ii) all rights of redemption, valuation, appraisement, stay of execution, notice of election to mature or declare due the whole of the Indebtedness and marshalling in the event of foreclosure of the lien created by this Instrument, (iii) all rights and remedies which Borrower may have or be able to assert by reason of the laws of the State of California pertaining to the rights and remedies of sureties, (iv) the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce the Note or any other obligation secured by this Instrument, and (v) any rights, legal or equitable, to require marshalling of assets or to require upon foreclosure sales in a particular order, including any rights under California Civil Code Sections 2899 and 3433. If the Mortgaged Property consists of several lots, parcels or items of property, Beneficiary may: (a) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (b) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Beneficiary deems in its best interest. Any person, including Trustor, Trustee or Beneficiary, may purchase at any sale hereunder, and Beneficiary shall have the right to purchase at any sale hereunder by crediting upon the bid price the amount of all or any part of the indebtedness hereby secured. Should Beneficiary desire that more than one sale or other disposition of the Mortgaged Property be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed of Trust on any part of the Mortgaged Property not sold until all indebtedness secured hereby has been fully paid. In the event Beneficiary elects to dispose of the Mortgaged Property through more than one sale, Trustor agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein the same may be made, including reasonable compensation to Trustee and Beneficiary, their agents and counsel, and to pay all expenses, liabilities and advances made or incurred by Trustee in connection with such sale or sales, together with interest on all such advances made by Trustee at the lower of the rate set forth in the Note, or the maximum rate permitted by law to be charged by Trustee.

34.   **125% TITLE INSURANCE POLICY.** Borrower agrees to allow Lender to obtain a title policy in an amount exceeding the face amount of the loan by 25% and instruct insuring title company of same. Lender and Borrower acknowledge this increase of coverage is not for the allowance of negative amortization of the principal balance. This additional coverage is to pay for losses the Lender may incur in a case which could increase the amount above the original principal balance coverage. Said losses could include delinquent interest, late charges, attorney fees, advances for insurance, taxes, etc. Borrower acknowledges this increase of coverage does result in a higher fee which Borrower shall bear for the Lender title insurance policy.

35.   **Property Assessed Clean Energy ("PACE") (or similar type program).** All Property Assessed Clean Energy ("PACE") (or similar type program) are prohibited. In the event that a PACE assessment/loan becomes a lien on the Property and becomes a part of the payment of property taxes or becomes senior to this Security Instrument in any way, Borrower shall be in breach of the note and this Security Instrument and Lender has the right to take all acts set forth in Security Instrument and to accelerate this Loan. The loan shall be in default and Lender may proceed under Section 21 of this Security Instrument.

36.   **SEVERABILITY; ENTIRE AGREEMENT; AMENDMENTS.** The parties intend that the provisions of this Instrument and all other Loan Documents, including the Promissory Note evidencing the indebtedness secured hereby, shall be legally severable. If any term or provision of this Instrument or any other Loan Document, including the Promissory Note evidencing the indebtedness secured hereby, be determined to any extent by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Instrument or of such other Loan Document, including the aforesaid Promissory Note, shall not be affected thereby and each term and provision shall be valid and be enforceable to the fullest extent permitted by law. This Instrument and the aforesaid Promissory Note contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

11|16|2020

_____    _____
THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, BY CLINTON BROWN, MANAGING
MEMBER – Borrower                                                    /Date


_____    _____
– Co-Borrower                                                        /Date


---

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of ___LOS ANGELES___ )

On __NOV 1 0 2020__ before me, _____LANA BROWN, A NOTARY PUBLIC_____

(insert name and title of the officer)

personally appeared ___Clinton Brown___,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


Signature _____ (Seal)

LANA BROWN
Notary Public - California
Los Angeles County
Commission # 2296575
My Comm. Expires Aug 8, 2023

# PROTECTION OF LENDER'S SECURITY RIDER

NOTICE:                THIS RIDER ADDS A PROVISION TO THE SECURITY INSTRUMENT ALLOWING THE LENDER TO REQUIRE PAYMENT OF THE LENDER'S ATTORNEY'S FEES IN BANKRUPTCY CASES.

THIS PROTECTION OF LENDER'S SECURITY RIDER is made OCTOBER 29, 2020, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's note to EXHIBIT D(the "Lender") of the same date (the "Note") and covering the property described in the Security Instrument and located at: **APN: 2064-005-011 AND APN: 2064-005-015, AGOURA HILLS, CA 91301**- Property address.

AMENDED COVENANT. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PROTECTION OF LENDER'S SECURITY
In addition to the uniform covenant contained in section 8 of the Security Instrument, the following information is added:

8. Protection of Lender's Security. If Lender's interest in the Property is materially affected by any proceeding under the Bankruptcy Laws of the United States, Lender, at Lender's option, may take such action, including seeking relief under the Bankruptcy Laws, and disburse such sums, including reasonable attorney's fees, as is necessary to protect Lender's interest.

If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or Applicable Law.

Any amounts disbursed by Lender pursuant to this Section 8, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this Section 8 shall require Lender to incur any expense or take any action hereunder.

By SIGNING BELOW, Borrower accepts and agrees to the terms and covenant contained in this PROTECTION OF LENDER'S SECURITY RIDER.

_____    11/10/2020_____
THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, BY CLINTON BROWN, MANAGING
MEMBER – Borrower                                                      /Date


_____    _____
– Co-Borrower                                                          /Date

# RIDER TO DEED OF TRUST
# ASSIGNMENT OF RENTS AND PROFITS
# AND SECURITY AGREEMENT

**THIS RIDER** is made this OCTOBER 29, 2020 and is incorporated into and shall be deemed to amend and supplement the Deed of Trust of even date given by the undersigned (the "Borrower") to secure Borrower's promissory note to SUPERIOR LOAN SERVICING, as Trustee for the benefit of EXHIBIT D~ (collectively, "Lender") and covering the Property described in the Deed of Trust and located at **APN: 2064-005-011 AND APN: 2064-005-015, AGOURA HILLS, CA 91301**.

**1. Assignment of Rents, Revenues and Profits**

(a) All of Borrower's interest in any leases, membership contracts, concessions agreements, rental agreements or any other agreements pertaining to the Property now existing or hereafter entered into, all of the rents, royalties, issues, profits, revenue, income and other benefits of the Property arising from the use or enjoyment of all or any portion thereof or from any lease or agreement pertaining to occupancy of any portion of the Property now existing or hereafter entered into whether now due, past due, or to become due, and including all unpaid rents, security deposits, prepaid membership fees and dues and other charges (the "Rents and Profits"), are hereby absolutely, presently and unconditionally assigned, transferred and conveyed to Lender to be applied by Lender in payment of the principal and interest and all other sums payable on the Note, and of all other sums payable under the Deed of Trust. Prior to the occurrence of any Event of Default; Borrower shall have a license to collect and receive all Rents and Profits, which license shall be terminable at the sole option of Lender, without regard to the adequacy of its security hereunder and without notice to or demand upon Borrower, upon the occurrence of any Event of Default. It is understood and agreed that neither the foregoing Assignment of Rents and Profits to Lender nor the exercise by Lender of any of its rights or remedies under the Deed of Trust shall be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof, unless and until Lender, in person or by agent, assumes actual possession thereof. Nor shall appointment of a receiver for the Property by any court at the request of Lender or by agreement with Borrower, or the entering into possession of the Property or any part thereof by such receiver, be deemed to make Lender a mortgagee-in-possession or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof. Upon the occurrence of any Event of Default, this shall constitute a direction to and full authority to each lessee under any lease and each guarantor of any lease to pay all Rents and Profits to Lender without proof of the default relied upon. Borrower hereby irrevocably authorizes each lessee and guarantor to rely upon and comply with any notice or demand by Lender for the payment to Lender of any Rents and Profits due or to become due.

(b) Borrower shall apply the Rents and Profits to the payment of all necessary and reasonable operating costs and expenses of the Property, debt service on the indebtedness secured hereby, and a reasonable reserve for future expenses, repairs and replacements for the Property, before using the Rents and Profits for Borrower's personal use or any other purpose not for the direct benefit of the Property.

**2. Security Agreement** This Deed of Trust is intended to be a security agreement pursuant to the California Uniform Commercial Code for:

(a) any and all items of personal property specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the California Uniform Commercial Code and which are not in this Deed of Trust effectively made part of the real property, including, without limitation, Borrower's interest in all building materials, fixtures, equipment and machinery incorporated or to be incorporated into improvements constructed and to be constructed on the Property together with all interest of the Borrower in all personal property, appliances, equipment and cost of goods now or hereafter owned or possessed by Borrower located upon, in, or about or used in connection with the Property, including, without limitation, any and all personal property necessary for the operation and maintenance of any business located on the property, together with all increases, substitutes, replacements, proceeds and products thereof and additions and accessions thereto, all rents, issues and profits due or to become due Borrower from or pertaining to said real property, Borrower's interest in any monies deposited by or on behalf of Borrower with any city, county, public body, utility or agency for the installation or as security for the installation of any utility pertaining to the Property, all rights to the use of any trade name, trademark or service mark now or hereafter associated with the business or businesses conducted on said premises (subject, however, to any franchise or license agreements relating thereto) together with all rights of borrower under any policy or policies of insurance covering the foregoing property and all proceeds, loss payments and premium refunds which may be payable with respect to such insurance policies or any other insurance policies insuring said real or personal property and the proceeds of any involuntary disposition, including without limitation any tort judgment proceeds; and

(b) any and all items of property specified above as part of the Property which, under Applicable Law, constitute fixtures and may be subject to a security interest under Section 9334 and/or 9604 California Uniform Commercial Code.

Borrower hereby grants Lender a security interest in said property, all of which is referred to in this Deed of Trust as "Personal Property," and in all additions thereto, substitutions therefor and proceeds thereof, for the purpose of securing all indebtedness and other obligations of Borrower now or hereafter secured by this Deed of Trust, which shall be a paramount and superior lien on all such Personal Property at all times. Borrower agrees to execute and deliver financing and continuation statements covering the Personal Property from time to time and in such form as Lender may require to perfect and continue the perfection of Lender's lien or security interest with respect to the Personal Property. Borrower shall pay all costs of filing such statements and renewals and releases thereof and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Upon the occurrence of any default of Borrower hereunder, Lender shall have the rights and remedies of a secured party under The California Uniform Commercial Code, including, Section 9604 thereof, as well as all other rights and remedies available at law or in equity.

Notwithstanding anything to the contrary contained in this Paragraph 2, Borrower may from time to time replace items of personal property and fixtures constituting a part of the Property, provided that:

(1) the replacements for such items of personal property or fixtures are of equivalent value and quality;

(2) Borrower has good and clear title to such replacement property free and clear of any and all liens, encumbrances, security interests, ownership interests, claims of title (contingents or otherwise), or charges of any kind, or the rights of any conditional sellers, vendors or any third parties in or to such replacement property have been expressly subordinated at no cost to Lender to the lien of the Deed of Trust in a manner satisfactory to Lender; and

(3) at the option of Lender, Borrower provides at no cost to Lender a satisfactory opinion of counsel to the effect that the Deed of Trust constitutes a valid and subsisting first lien on and security interest in such replacement property and is not subject to being subordinated or the priority thereof affected under any applicable law, including, but not limited to, the provisions of California Commercial Code Sections 9334 and/or 9604.

**IN WITNESS WHEREOF**, Borrowers have executed this Rider as of the date first above written.

_____   11/10/2020

THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, BY CLINTON BROWN, MANAGING MEMBER – Borrower                                        /Date


_____   _____

– Co-Borrower                                                              /Date

# RIDER TO DEED OF TRUST

      The following provisions are a part of and incorporated into that certain Deed of Trust and Assignment of Rents dated as of OCTOBER 29, 2020, by and between <u>THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY</u> ("Trustor"), <u>SUPERIOR LOAN SERVICING</u> ("Trustee") and <u>EXHIBIT D</u> ("Beneficiary").

## Assignment of Rents and Profits

    **(a) Present Assignment.** All of Trustor's interest in any leases or other occupancy agreements pertaining to the Property now existing or hereafter entered into, and all of the rents, royalties, issues, profits, revenue, income and other benefits of the Property arising from the use or enjoyment of all or any portion thereof or from any lease or agreement pertaining to occupancy of any portion of the Property now existing or hereafter entered into whether now due, past due, or to become due, and including all prepaid rents and security deposits (the "Rents and Profits"), are hereby absolutely, presently and unconditionally assigned, transferred and conveyed to Beneficiary to be applied by Beneficiary in payment of the principal and interest and all other sums payable on the Note and under this Deed of Trust subject to the rights of residential tenants under California Civil Code Section 1950.5(d). Beneficiary waives the right to exercise the rights and powers assigned to Beneficiary herein and agrees not to revoke such waiver until and unless an event of acceleration (as set forth in Section 4 of the Deed of Trust) occurs. It is understood and agreed that neither the foregoing assignment of Rents and Profits to Beneficiary nor the exercise by Beneficiary of any of its rights or remedies hereunder shall be deemed to make Beneficiary a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof, unless and until Beneficiary, in person or by agent, assumes actual possession thereof. Nor shall appointment of a receiver for the Property by any court at the request of Beneficiary or by agreement with Trustor, or the entering into possession of the Property or any part thereof by such receiver, be deemed to make Beneficiary a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property. Upon the occurrence of any event of default, this shall constitute a direction to and full authority to each lessee under any lease to pay all Rents and Profits to Beneficiary without proof of the default. Trustor hereby irrevocably authorizes each lessee to rely on and comply with any notice or demand by Beneficiary for the payment to Beneficiary of any Rents and Profits due or to become due.

    **(b) Application of Rents.** Trustor shall apply the Rents and Profits to the payment of all necessary and reasonable operating costs and expenses of the Property, and debt service on the indebtedness secured hereby, before using the Rents and Profits for Trustor's personal use or any other purpose not for the direct benefit of the Property.

    **(c) Notice to Tenants.** Trustor shall at all times perform the obligations of lessor under all such leases. Trustor shall at any time or from time to time, upon request of Beneficiary, transfer and assign to Beneficiary in such form as may be satisfactory to Beneficiary, Trustor's interest in any lease, subject to and upon the condition, however, that prior to the occurrence of any event of default hereunder Trustor shall have a license to collect and receive all Rents and Profits under such lease upon accrual, but not prior thereto, as set forth in Paragraph (a) above. Whenever requested by Beneficiary, Trustor shall furnish to Beneficiary a certificate of Trustor setting forth the names of all lessees under any leases, the terms of their respective leases, the space occupied, the rents payable thereunder, and the dates through which any and all rents have been paid.

    **(d) Attornment.** Each lease for any part of the Property shall make provision for the attornment of the lessee thereunder to any person succeeding to the interest of Trustor as the result of any foreclosure or transfer in lieu of foreclosure hereunder.

    **(e) Direct Creditor.** Beneficiary shall be deemed to be the creditor of each lessee in respect of any assignments for the benefit of creditors and any bankruptcy, arrangement, reorganization, insolvency, dissolution, receivership or other debtor-relief proceedings affecting such lessee (without obligation on the part of Beneficiary, however, to file timely claims in such proceedings or otherwise pursue creditor's rights therein). Beneficiary shall have the right to assign Trustor's right, title and interest in any leases to any subsequent holder of this Deed of Trust or any participating interest therein or to any person acquiring title to all or any part of the Property through foreclosure or otherwise. Any subsequent assignee shall have all the rights and powers herein provided to Beneficiary. Beneficiary shall have the authority, as Trustor's attorney-in-fact, such authority being coupled with an interest and irrevocable, to sign the name of Trustor and to bind Trustor on all papers and documents relating to the operation, leasing and maintenance of the Property.

    **(f) Miscellaneous.** _____

_____        11/10/2020

THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, BY CLINTON BROWN, MANAGING MEMBER – Borrower                                                   /Date

_____                                                         
– Co-Borrower                                                                  /Date

EXHIBIT "A"

PARCEL 1:

LOT 3 IN TRACT NO. 33128, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, RECORDED IN BOOK 1099, PAGES 94 TO 97, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT FROM A PORTION OF SAID LAND, ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS AND OTHER HYDROCARBONS, BY WHATSOEVER NAME KNOWN, THAT MAY BE WITHIN OR UNDER THE PARCELS OF LAND HEREINAFTER DESCRIBED, WITHOUT, HOWEVER, THE RIGHT EVER TO DRILL, DIG OR MINE THROUGH THE SURFACE OF SAID LAND THEREFOR OR OTHERWISE IN SUCH MANNER AS TO ENDANGER THE SAFETY OF ANY HIGHWAY THAT MAY BE CONSTRUCTED ON THE LANDS HEREBY CONVEYED AS PROVIDED IN THE DEED RECORDED APRIL 2, 1951 AS INSTRUMENT NO. 3289, OF OFFICIAL RECORDS.

ALSO EXCEPT FROM A PORTION OF SAID LAND, ONE-HALF OF ALL CRUDE OIL, PETROLEUM, GAS, BREA, ASPHALTUM AND ALL KINDRED SUBSTANCES AND OTHER MINERALS UNDER AND IN SAID LAND, WITHOUT RIGHT OF ENTRY, AS PROVIDED IN THE DEED RECORDED DECEMBER 6, 1954 AS INSTRUMENT NO, 540, OF OFFICIAL RECORDS.

ALSO EXCEPT FROM A PORTION OF SAID LAND, ONE-HALF OF ALL MINERALS, OIL, PETROLEUM, ASPHALTUM, GAS, COAL AND OTHER HYDROCARBON SUBSTANCES AND WATER CONTAINED IN, ON, WITHIN AND UNDER SAID LAND, PROVIDED, HOWEVER, THAT THIS GRANT SHALL NEITHER GRANT NOR SHALL IT BE CONSTRUED AS GRANTING TO GRANTEES, THEIR SUCCESSORS IN INTEREST OR ASSIGNS THE RIGHT TO GO UPON OR UNDER SAID LANDS FOR THE PURPOSE OF EXTRACTING ANY OF SAID SUBSTANCES, AS PROVIDED IN THE DEED RECORDED OCTOBER 23, 1958 AS INSTRUMENT NO. 1532, OF OFFICIAL RECORDS.

ALSO EXCEPT ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS AND OTHER  HYDROCARBONS BY WHATSOEVER NAME KNOWN THAT MAY BE WITHIN OR UNDER THE HEREIN CONVEYED PARCEL OF LAND, AND THE RIGHTS THERETO, TOGETHER WITH CERTAIN OTHER CONDITIONS, AS EXCEPTED IN SAID PARCELS 45809-5 AND 46809-6 OF SAID FINAL ORDER OF CONDEMNATION, IN DEED (STATE PARCEL 18.1A) RECORDED APRIL 2, 1951 IN BOOK 35947 PAGE 142, OFFICIAL RECORDS, IN SAID PARCELS 1 AND 2 OF DEEDS (STATE PARCEL B7694).

PARCEL 2:

THAT PORTION OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER AND OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 25, TOWNSHIP 1 NORTH, RANGE 18 WEST, AND THAT PORTION OF GOVERNMENT LOT 3 OF SAID SECTION 25, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEASTERLY TERMINUS OF THAT CERTAIN COURSE DESCRIBED IN PARCEL 2 OF SAID DEED RECORDED IN BOOK 35947 PAGE 142, OF OFFICIAL RECORDS, AS HAVING A BEARING OF SOUTH 58° 434' 09" WEST, A DISTANCE OF 147.26 FEET; THENCE ALONG THE SOUTHERLY LINE OF THE LAND DESCRIBED IN LAST SAID DEED SOUTH 84° 44' 04" EAST, (ON A DIFFERENT BASIS OF BEARING), 182.76 FEET TO A TANGENT CURVE IN SAID SOUTHERLY LINE, CONCAVE NORTHERLY AND HAVING A RADIUS OF 2,050 FEET; THENCE ALONG SAID CURVE EASTERLY, THROUGH AN ANGLE OF 02° 20' 44" AN ARC DISTANCE 83.92 FEET;

ORDER NO. 3910120-06600

LEGAL DESCRIPTION CONTINUED

THENCE SOUTH 41° 07' 44" WEST, 275.25 FEET; THENCE SOUTH 52° 31' 06" WEST, 207.20 FEET; THENCE SOUTH 84° 11' 33" WEST, 124.90 FEET; THENCE NORTH 62° 04' 30" WEST, 287.87 FEET; THENCE NORTH 77° 18' 25" WEST, 360.87 FEET; THENCE SOUTH 71° 31' 30" WEST, 155.86 FEET; THENCE SOUTH 75° 17' 41" WEST, 146.58 FEET; THENCE SOUTH 80° 06' 39" WEST, 237.08 FEET TO A POINT IN SAID SOUTHERLY LINE OF LAND DESCRIBED IN SAID DEED; THENCE IN A GENERAL EASTERLY DIRECTION ALONG SAID SOUTHERLY LINE, THROUGH THE VARIOUS COURSES AND DISTANCES THEREIN, TO THE POINT OF BEGINNING.

EXCEPTING THAT PORTION OF LAND RECORDED IN DEED 1996-1294372.

EXCEPT ONE-HALF OF ALL CRUDE OIL, PETROLEUM, GAS, BREA, ASPHALTUM AND ALL KINDRED SUBSTANCES AND OTHER MINERALS, UNDER AND IN SAID LAND, WITHOUT RIGHT OF ENTRY, AS RESERVED IN THE DEED FROM NORBERT R. NETTLESHIP AND M. ATHEA WHITE NETTLESHIP, HUSBAND AND WIFE, RECORDED DECEMBER 6, 1954 IN BOOK 46287 PAGE 361, OF OFFICIAL RECORDS.

ALSO EXCEPTING THREFROM ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS, AND OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN THAT MAY BE WITHIN OR UNDER THE PARCEL OF LAND HEREINABOVE DESCRIBED TOGETHER WITH THE PERPETUAL RIGHT OF DRILLING, MINING, EXPLORING AND OPERATING THEREFOR AND REMOVING THE SAME FROM SAID LAND OR ANY OTHER LAND, INCLUDING THE RIGHT TO WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THOSE HEREINABOVE DESCRIBED, OIL OR GAS WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF THE LAND HEREIN ABOVE DESCRIBED, AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS UNDER SAID BENEATH OR BEYOND THE EXTERIOR LIMITS THEREOF, AND TO REDRILL, RETUNNEL, EQUIP, MAINTAIN, REPAIR, DEEPEN AND OPERATE ANNY SUCH WELLS OR MINES, WITHOUT, HOWEVER, THE RIGHT TO DRILL, MINE, EXPLORE AND OPERATE THROUGH THE SURFACE OR THE UPPER 100 FEET OF THE SUBSURFACE OF THE LAND HEREINABOVE DESCRIBED OR OTHERWISE IN SUCH MANNER AS TO ENDANGER THE SAFETY OF ANY HIGHWAY THAT MAY BE CONSTRUCTED ON SAID LANDS, AS EXCEPTED BY DEED FROM BOB HOPE, WHO ACQUIRED TITLE AS LESTER T. HOPE AND DOLORES HOPE, HUSBAND AND WIFE, RECORDED JULY 11, 1964.

***END OF LEGAL DESCRIPTION***

# Exhibit D

**LENDER VESTING**

STEVE WEERA TONASUT, TRUSTEE OF THE TONASUT FAMILY TRUST DATED JUNE 14, 2004



**This page is part of your document - DO NOT DISCARD**





# 20201688734

**Pages:
0004**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**12/18/20 AT 08:00AM**

| | |
|---|---|
| FEES: | 28.00 |
| TAXES: | 328.90 |
| OTHER: | 0.00 |
| PAID: | 356.90 |



**L E A D S H E E T**



202012180190061

00019565343



011590631

**SEQ:
01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

*E460070*

E08_201218_8008849

RECORDING REQUESTED BY:
Equity Title Company
Order No. 3910120-06600
Escrow No. 21868-10
Parcel No. 2064-005-011, 2064-005-015

AND WHEN RECORDED MAIL TO:

THE ATLAS LLC, A CALIFORNIA
LIMITED LIABILITY COMPANY
10226 REGENT STREET
LOS ANGELES, CA 90034

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS **$328.90**
- [x] computed on full value of property conveyed, or
- [ ] computed on full value less liens or encumbrances remaining at the time of sale.
- [x] unincorporated area:        [ ]  **Agoura Hills**, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **Tax Deed Enterprises LLC - Limited Liability Corp.**

hereby GRANT(S) to    **THE ATLAS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY**

the following described real property in the County of **Los Angeles**, State of California:
                **See exhibit "A" attached hereto and made a part** hereof for legal description
More commonly known as: **Vacant Land - APN #2064-005-011 and #2064-005-015, Agoura Hills, CA 91301**

Date    November 12, 2020

Tax Deed Enterprises, LLC. a limited liability Corp.

By: Emil Assentato, Manager

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF New York
COUNTY OF Nassau          } S.S.

On 17th Nov 2020, before me, Lucy Gioino, Notary Public personally appeared **Emil Assentato**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of New York that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

LUCY GIOINO
Notary Public, State of New York
No. 01GI6167210
Qualified in Nassau County
Commission Expires May 29, 2022

Mail Tax Statements to: SAME AS ABOVE or Address Noted Below

EXHIBIT "A"

**PARCEL 1:**

LOT 3 IN TRACT NO. 33128, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, RECORDED IN BOOK 1099, PAGES 94 TO 97, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT FROM A PORTION OF SAID LAND, ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS AND OTHER HYDROCARBONS, BY WHATSOEVER NAME KNOWN, THAT MAY BE WITHIN OR UNDER THE PARCELS OF LAND HEREINAFTER DESCRIBED, WITHOUT, HOWEVER, THE RIGHT EVER TO DRILL, DIG OR MINE THROUGH THE SURFACE OF SAID LAND THEREFOR OR OTHERWISE IN SUCH MANNER AS TO ENDANGER THE SAFETY OF ANY HIGHWAY THAT MAY BE CONSTRUCTED ON THE LANDS HEREBY CONVEYED AS PROVIDED IN THE DEED RECORDED APRIL 2, 1951 AS INSTRUMENT NO. 3289, OF OFFICIAL RECORDS.

ALSO EXCEPT FROM A PORTION OF SAID LAND, ONE-HALF OF ALL CRUDE OIL, PETROLEUM, GAS, BREA, ASPHALTUM AND ALL KINDRED SUBSTANCES AND OTHER MINERALS UNDER AND IN SAID LAND, WITHOUT RIGHT OF ENTRY, AS PROVIDED IN THE DEED RECORDED DECEMBER 6, 1954 AS INSTRUMENT NO, 540, OF OFFICIAL RECORDS.

ALSO EXCEPT FROM A PORTION OF SAID LAND, ONE-HALF OF ALL MINERALS, OIL, PETROLEUM, ASPHALTUM, GAS, COAL AND OTHER HYDROCARBON SUBSTANCES AND WATER CONTAINED IN, ON, WITHIN AND UNDER SAID LAND, PROVIDED, HOWEVER, THAT THIS GRANT SHALL NEITHER GRANT NOR SHALL IT BE CONSTRUED AS GRANTING TO GRANTEES, THEIR SUCCESSORS IN INTEREST OR ASSIGNS THE RIGHT TO GO UPON OR UNDER SAID LANDS FOR THE PURPOSE OF EXTRACTING ANY OF SAID SUBSTANCES, AS PROVIDED IN THE DEED RECORDED OCTOBER 23, 1958 AS INSTRUMENT NO. 1532, OF OFFICIAL RECORDS.

ALSO EXCEPT ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS AND OTHER  HYDROCARBONS BY WHATSOEVER NAME KNOWN THAT MAY BE WITHIN OR UNDER THE HEREIN CONVEYED PARCEL OF LAND, AND THE RIGHTS THERETO, TOGETHER WITH CERTAIN OTHER CONDITIONS, AS EXCEPTED IN SAID PARCELS 45809-5 AND 46809-6 OF SAID FINAL ORDER OF CONDEMNATION, IN DEED (STATE PARCEL 18.1A) RECORDED APRIL 2, 1951 IN BOOK 35947 PAGE 142, OFFICIAL RECORDS, IN SAID PARCELS 1 AND 2 OF DEEDS (STATE PARCEL B7694).

**PARCEL 2:**

THAT PORTION OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER AND OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 25, TOWNSHIP 1 NORTH, RANGE 18 WEST, AND THAT PORTION OF GOVERNMENT LOT 3 OF SAID SECTION 25, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEASTERLY TERMINUS OF THAT CERTAIN COURSE DESCRIBED IN PARCEL 2 OF SAID DEED RECORDED IN BOOK 35947 PAGE 142, OF OFFICIAL RECORDS, AS HAVING A BEARING OF SOUTH 58° 434' 09" WEST, A DISTANCE OF 147.26 FEET; THENCE ALONG THE SOUTHERLY LINE OF THE LAND DESCRIBED IN LAST SAID DEED SOUTH 84° 44' 04" EAST, (ON A DIFFERENT BASIS OF BEARING), 182.76 FEET TO A TANGENT CURVE IN SAID SOUTHERLY LINE, CONCAVE NORTHERLY AND HAVING A RADIUS OF 2,050 FEET; THENCE ALONG SAID CURVE EASTERLY, THROUGH AN ANGLE OF 02° 20' 44" AN ARC DISTANCE 83.92 FEET;

ORDER NO. 3910120-06600

LEGAL DESCRIPTION CONTINUED

THENCE SOUTH 41° 07' 44" WEST, 275.25 FEET; THENCE SOUTH 52° 31' 06" WEST, 207.20 FEET;
THENCE SOUTH 84° 11' 33" WEST, 124.90 FEET; THENCE NORTH 62° 04' 30" WEST, 287.87 FEET;
THENCE NORTH 77° 18' 25" WEST, 360.87 FEET; THENCE SOUTH 71° 31' 30" WEST, 155.86 FEET;
THENCE SOUTH 75° 17' 41" WEST, 146.58 FEET; THENCE SOUTH 80° 06' 39" WEST, 237.08 FEET TO
A POINT IN SAID SOUTHERLY LINE OF LAND DESCRIBED IN SAID DEED; THENCE IN A GENERAL
EASTERLY DIRECTION ALONG SAID SOUTHERLY LINE, THROUGH THE VARIOUS COURSES AND
DISTANCES THEREIN, TO THE POINT OF BEGINNING.

EXCEPTING THAT PORTION OF LAND RECORDED IN DEED 1996-1294372.

EXCEPT ONE-HALF OF ALL CRUDE OIL, PETROLEUM, GAS, BREA, ASPHALTUM AND ALL KINDRED
SUBSTANCES AND OTHER MINERALS, UNDER AND IN SAID LAND, WITHOUT RIGHT OF ENTRY, AS
RESERVED IN THE DEED FROM NORBERT R. NETTLESHIP AND M. ATHEA WHITE NETTLESHIP,
HUSBAND AND WIFE, RECORDED DECEMBER 6, 1954 IN BOOK 46287 PAGE 361, OF OFFICIAL
RECORDS.

ALSO EXCEPTING THREFROM ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS,
NATURAL GAS RIGHTS, AND OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN THAT
MAY BE WITHIN OR UNDER THE PARCEL OF LAND HEREINABOVE DESCRIBED TOGETHER WITH
THE PERPETUAL RIGHT OF DRILLING, MINING, EXPLORING AND OPERATING THEREFOR AND
REMOVING THE SAME FROM SAID LAND OR ANY OTHER LAND, INCLUDING THE RIGHT TO
WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THOSE
HEREINABOVE DESCRIBED, OIL OR GAS WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR
ACROSS THE SUBSURFACE OF THE LAND HEREIN ABOVE DESCRIBED, AND TO BOTTOM SUCH
WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS UNDER SAID
BENEATH OR BEYOND THE EXTERIOR LIMITS THEREOF, AND TO REDRILL, RETUNNEL, EQUIP,
MAINTAIN, REPAIR, DEEPEN AND OPERATE ANNY SUCH WELLS OR MINES, WITHOUT, HOWEVER,
THE RIGHT TO DRILL, MINE, EXPLORE AND OPERATE THROUGH THE SURFACE OR THE UPPER
100 FEET OF THE SUBSURFACE OF THE LAND HEREINABOVE DESCRIBED OR OTHERWISE IN
SUCH MANNER AS TO ENDANGER THE SAFETY OF ANY HIGHWAY THAT MAY BE CONSTRUCTED
ON SAID LANDS, AS EXCEPTED BY DEED FROM BOB HOPE, WHO ACQUIRED TITLE AS LESTER T.
HOPE AND DOLORES HOPE, HUSBAND AND WIFE, RECORDED JULY 11, 1964.

***END OF LEGAL DESCRIPTION***

▲   **This page is part of your document - DO NOT DISCARD**   ▲

`05 2412901`

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

8:04 AM   OCT 06 2005

**TITLE(S) :**   **DEED**

▲                                        ▲



L E A D   S H E E T

**FEE**                                                   D.T.T.

| FEE $7   N |
| --- |

**CODE**
**20**

**CODE**
**19**

**CODE**
**9_____**

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**   **Number of AIN's Shown**

2   0   6   4   -   0   0   5   -   0   1   1                    0   0   1

▲   **THIS FORM IS NOT TO BE DUPLICATED**   ▲

RECORDING REQUESTED BY

COUNTY OF LOS ANGELES
DEPARTMENT OF TREASURER
AND TAX COLLECTOR

AND WHICH RECORDED MAIL TO.

**TAX DEED ENTERPRISES LLC**
**612 S. FLOWER ST., STE. 1031**
**LOS ANGELES, CA 90017**

05 2412901

| | |
|---|---|
| Document Transfer Tax - computed on full value of property conveyed | $ 412.50 |
| City Transfer Tax | $ 0.00 |
| Survey Fee | $ 0.00 |

Signature of Declarant

## TAX DEED TO THE PURCHASER OF TAX-DEFAULTED PROPERTY
### On which the legally levied taxes were a lien for FISCAL YEAR     1987  -  1988
### and for nonpayment were duly declared to be in default.  DEFAULT NUMBER     2064-005-011

This deed, between the Treasurer and Tax Collector of Los Angeles County ("SELLER") and
**TAX DEED ENTERPRISES LLC -**          LIMITED LIABILITY CORP.

("PURCHASER"), coveys to the PURCHASER free of all encumbrances of any kind existing before the sale,
except those referred to in §3712 of the Revenue & Taxation Code, the real property described herein which the SELLER
sold to the PURCHASER on       **August 9, 2005**   pursuant to a statutory power of sale in accordance with the
provisions of Division 1, Part 6, Chapter 7, Revenue and Taxation Code, for the sum of     $ 375,000.00
No taxing agency objected to the sale.

*In accordance with the law, the SELLER hereby grants to the PURCHASER that real property situated in said county,*
State of California, last assessed to,   **CC AND F LOST HILLS PROPERTIES C/O CABOT CABOT AND FORBES**

described as follows:      **ASSESSOR'S PARCEL NUMBER       2064-005-011**

TR=33128   LOT 0003

STATE OF CALIFORNIA
County of Los Angeles      } ss.

**MARK J. SALADINO**
TREASURER AND TAX COLLECTOR
of the County of Los Angeles,
State of California
By _____
Deputy Tax Collector

EXECUTED ON **September 8, 2005**

On **September 8, 2005**, before me personally appeared          JOHN MCKINNEY          personally known
to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity on behalf of which the person(s) acted, executed the instrument.

IN WITNESS WHEREOF, I have here set my hand.

Location:   Unicorporated Area

Sale No.   2005B     Item No.   03611

**CONNY B. McCORMACK**
REGISTRAR-RECORDER/COUNTY CLERK
of the County of Los Angeles,
State of California
By _____
Deputy County Clerk

