CLINTON BROWN, Self-Represented
16821 Edgar Street
Pacific Palisades, CA 90272
clinton@atlasinc.solar
310-487-6453

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINTON BROWN,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>EMIL ASSENTATO, TAX DEED<br>ENTERPRISES LLC, STEVE WEERA<br>TONASUT TRUST<br>　　　　　Defendant. | **No.** 2:22-cv-02972-MEMF-KS<br><br>**Opposition to Motion to Dismiss**<br><br>**Judge:** Honorable Maame Ewusi-Mensah Frimpong<br><br>**Chief Magistrate Judge:** Karen L. Stevenson<br><br>**Hearing Date:** June 6, 2024<br><br>**Hearing Time:** 10:00 A.M.<br><br>**Place:** Courtroom 8B |

## <u>OPPOSITION TO MOTION TO DISMISS</u>

**NOTICE TO THE COURT**, as a threshold manner, the defendant's motion to dismiss is all smoke and no fire. Plaintiff has standing. *See* ECF No. 38 at 14. The Court has subject matter jurisdiction. *Id*. There is Federal question jurisdiction. *Id*. Last, [the Plaintiff] has adequately pleaded a sale of a security. *Id*. at 16. Accordingly, the Plaintiff has proven subject matter & Federal question jurisdiction, standing & the existence of an unlawful investment contract. Thus, the 10(b)(5) claim is based on the misappropriation theory. *Id*. at ¶10, 12, & 90.

## <u>Background</u>

Plaintiff Clinton Brown resides in California. ¶19. The Defendant Emil Assentato resides in New York ¶20. Defendant Tax Deed Enterprises, LLC (TDE) is a Florida-based limited liability company controlled by Assentato. ¶21 & 30. Defendant Steve Weera Tonasut Family Trust (Tonasut Trust) is a trust located in California. ¶22. In October 2020, Brown, Assentato, and TDE signed an operating agreement to create a partnership. ¶28. In December 2020, Brown purchased

a 50% ownership interest in a property in Calabasas, California, known as the Agoura Property. ¶42. The property had an outstanding property tax debt of $171,000. ¶32. Brown made a $10,000 cash deposit and executed deeds of trust[1] for $179,000 with the Tonasut Trust and $110,000 with Assentato. ¶31-33. In January 2021, Assentato loaned Brown $250,000 to finance the development of a solar farm on the Agoura Property.[2] ¶44-45. Brown was individually responsible for repaying the loan and making interest payments on the deeds of trust. ¶34. In September 2021, Brown stopped making interest payments to the Tonasut Trust due to a capital shortage. ¶46-47. Additionally, in late 2021, an application for a solar farm at the Agoura Property was rejected by the Los Angeles County Department of Regional Planning. ¶38. To address the financial issues, Brown agreed to transfer 15% of his ownership in the Agoura Property to the Tonasut Trust in exchange for $100,000 in cash and an agreement to delay interest payments on the $179,000 deed of trust. ¶40. This agreement was formalized on February 1, 2022. ¶48. On December 17, 2022, Brown filed a separate lawsuit in the same court against an official in the Los Angeles County Department of Regional Planning, alleging a violation of the Takings Clause of the United States Constitution. *See Clinton Brown v. Clark R. Taylor,* Case No. 2:22-cv-09203-MEMF-KS (C.D. Cal. 2022). ¶38.

In April 2023, Brown filed this action against Assentato, TDE, and the Tonasut Trust, alleging violations of the 1933 Securities Act and the 1934 Securities Exchange Act. Subsequently, the Tonasut Trust filed a Motion to Dismiss in May 2023, and Assentato and TDE filed a Motion to Dismiss in July 2023. Brown filed an opposition to both motions, and the defendant's filed

---

[1] A "deed of trust" refers to a loan agreement between a property purchaser and a lender where title to the property is held by either the lender or a third-party trustee (as opposed to the purchaser) until the loan is repaid. *See* Deed, Black's Law Dictionary (11th ed. 2019). In the controversy at bar, the term *'deeds of mistrust'* is more appropriately applicable.
[2] The exhibit ["loan agreement"] the defendants filed (ECF No. 41-2 at 4-7) has already been denied judicial notice. *See* ECF No. 38 at 10. It's unclear why this document was filed again, but regardless of whether it is judicially noticed or not it can used in a motion to dismiss. *See* ECF No. 38 at 4-5. Thus, this is clear 'evidence of indebtedness' that satisfies the Acts definition of security. *See* Amended Complaint, ECF No. 40 at 1, ("What's in a Name?"). As it turns out, Congress did not care what the name was as long as 'context did not require otherwise' that the interstate/intrastate commerce was a security. *In other words*, tomato, tomahto. †This is not to say that Congress' legislative wording is somehow more or less broad than its intended remedial purpose. In fact, the said purpose of the act was "to provide *full and fair disclosure of the character of securities* sold in interstate…and through the mails, and to *prevent frauds* in the sale thereof, and for other purposes. (emphasis added). *See* 1933 Securities Act at 1 (archived at https://perma.cc/A55E-AAAJ). Fraud, after the fact, is not preventing fraud.

replies. The Court held a hearing on the motions on September 21, 2023. The Plaintiff's complaint was dismissed with leave to amend the complaint within 28 days of its December 6, 2023, order. The Amended Complaint was filed on January 3, 2024. *See* ECF No. 40. The defendants filed a motion to dismiss on January 17, 2024, without a meet and confer, as required by L.R. 7-3.[3] *See* ECF No. 41 at 2. Counsel communicated on or around January 22, 2024, about the L.R. 7-3 issue. Counsel have been unable to fix the issue and welcomes the Court's determination in that matter, prior to the hearing scheduled on June 6, 2024, at 10 A.M., to secure the just, speedy, and inexpensive determination of this controversy. *See* Rule 1.

<u>**Legal Standard**</u>

The Security Act of 1933 [and 1934 Exchange Act] cannot be circumvented by simply refraining from issuing a written instrument evidencing the security transaction. The statute applies *regardless* of whether such securities are represented by *any* document. (emphasis added). *See* House Report No. 1838, 73rd Congress, 2d Session, U.S. House of Representatives, Page 39; Loss, Securities Regulations, 301. The giving of the personal loan notes, evidence of indebtedness, certificates of interest or participation in profit-sharing agreements and investment contracts whether as a gift out of gratitude for, or in consideration or exchange of, the personal loans of money or services of labor rendered, constitute sales of securities because either way it amounts to a disposition or giving of a security for value. *See SEC v. Addison*, 194 F. Supp. 709, 722 (N.D. Tex. 1961) (citing *Llanos v. United States, 206 F.2d 852, 854 (9th Cir. 1953)*).

**a.  Section 5**

[Plaintiff] adequately pleaded the sale of a security. *See* ECF No. 38 at 16. Once the Plaintiff, as in the amended complaint, satisfies its *prima facie* burden under Section 5 of the Securities Act, the burden shifts to the defendants to affirmatively plead an entitlement to the exemption. *SEC v. Canavagh*, 445 F.3d 105, 111 n.13 [4] (2d Cir. 2006). The defendants have failed

---

[3] *See also* Civil Standing Order at VII, § A & VIII. § A. (archived at <u>https://perma.cc/3337-AV9P</u>)

[4] To state a cause of action under Section 5, one must show "(1) lack of a registration statement as to the subject securities; (2) the offer or sale of the securities; and (3) the use of interstate transportation or communication and the mails in connection with the offer or sale. *Eur. & Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 124 n.4 (2d Cir. 1998) (internal quotation marks omitted). Once a *prima facie* case has been made, the

to, *at a minimum*, proffer *any* exemption that excludes the transactions from registration in accordance with Federal security laws. *None, nada, nil*.

Again, no proof was offered to sustain a claim of exemption under Sections 3 and 4 of the Act. Exemptions are strictly construed, and the burden is on the defendant to prove it is entitled to an exemption. Absent such registration, it is unlawful for the defendant to use the mails to sell or offer to sell these notes and stock interests [investment contract(s)]. *See Sec. & Exch. Com. v. Vanco, Inc*., 166 F. Supp. 422, 423 (D.N.J. 1958).

**b. 10(b)(5)**

Pursuant to the 1934 Act, a person commits fraud "in connection with" a securities transaction, and violates § 10(b) and Rule 10b-5, when he misappropriates confidential information for securities trading purposes, in breach of a duty owed to the source of the information. *United States v. O'Hagan*, 521 U.S. 642, 652-653 (1997). The misappropriation theory reaches trading by corporate outsiders, not insiders. *S.E.C. v. Talbot*, 530 F.3d 1085, 1091 (9th Cir. 2008). It "premises liability on a fiduciary-turned trader's deception of those who entrusted him with access to confidential information." *Id.* (quoting *O'Hagan* at 652). A fiduciary's undisclosed, self-serving use of a principal's information to purchase or sell securities, in breach of a duty of loyalty and confidentiality, defrauds the principal of the exclusive use of that information. *Id*. A trader is therefore liable if he "knowingly misappropriated confidential, material, and nonpublic information for securities trading purposes, in breach of a duty arising from a relationship of trust and confidence owed to the source of the information." *Id.* at 1092. The Plaintiff must show that the defendants "knowingly misappropriated confidential, material, and nonpublic information for securities trading purposes, in breach of a duty arising from a relationship of trust and confidence owed to the source of the information. *Id.* Information is material if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having altered the 'total mix' of information made available.

---

defendant bears the burden of proving the applicability of an exemption. *See SEC v. Ralston Purina Co*., 346 U.S. 119, 126, 73 S. Ct. 981, 97 L. Ed. 1494 (1953).

*Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988). Because the standard is considered from the perspective of a "reasonable investor," it is objective. *United States v. Reyes*, 660 F.3d 454, 468 (9th Cir. 2011). In *Carpenter*, a reporter from the Wall Street Journal misappropriated prepublication information regarding the contents of a financial news column for his own personal profit. *Carpenter v. United States,* 484 U.S. 19, 25 (1987*)*. There, the Supreme Court affirmed the Second Circuit's holding that even though the victim of the fraud, the [Wall Street] Journal, was not a buyer or seller of the stocks traded in or otherwise a market participant, the fraud was nevertheless considered "*in connection with*" a purchase or sale of securities within the meaning of the statute and the rule. *Id*. (emphasis added).

The duty to abstain from trading "arises from a specific relationship between two parties." *O'Hagan* at 661. But that relationship is not limited to a relationship between a corporation's insiders and shareholders. *Id*. The Supreme Court has observed that liability under the misappropriation theory arises when there is an expectation that the trading party will keep the source's information confidential. *Id*. at 663. Under the misappropriation theory, "a fiduciary's undisclosed, self-serving use of a principal's information to purchase or sell securities, in breach of a duty of loyalty and confidentiality, defrauds the principal of the exclusive use of that information." *Id*. at 652. A company's "confidential information" has "long been recognized as property," to which the corporation has "the exclusive right and benefit." *Carpenter* at 26. Under § 10(b), there is no general duty between all participants in market transactions to forgo actions based on material, nonpublic information, but there are specific duties that arise when the wrongdoer traded based on information that he converted to his own use "in violation of some fiduciary, contractual, or similar obligation to the owner or rightful possessor of that information." *See Dirks v. S.E.C.*, 463 U.S. 646, 655 (1983) (quoting C*hiarella v. United States,* 445 U.S. 222, 233 (1980).

## Discussion

The coverage of the antifraud provisions of the securities laws is not limited to instruments…but extends to uncommon and irregular instruments. The test is what character the

instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out to the prospect. *Marine Bank v. Weaver*, 455 U.S. 551, 556 (1982). Certificates of deposit are regulated by the FDIC and are not securities 'unless context requires otherwise' which context did not in *Marine Bank*. Defendants' argument fails**.** *See* ECF No. 41-1 at 9.

[Federal Rules] do[] not require that allegations supporting a claim be stated with particularity when those allegations describe non-fraudulent conduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) *Cf.* ECF No. 41-1 at 5. The Court has already determined that an investment contract did exist between Plaintiff, Assentato and TDE. Presumably, because the investment contract is not registered, it is illegal. The Plaintiff does not claim any exemption and the Defendants must. Instead, the Defendants gloss over the illegality of the investment contract and try to thread the needle that *all* securities cases are about fraud. That argument fails. *See* ECF No. 41-1 at 5-6. Again, there is an investment contract and it's unlawful not to have it registered with the SEC, thus a claim. ECF No. 38 at 16, ii; *See also Slack v. Pirani,* 598 U.S. 759, 143 S. Ct. 1433, 1440 (2023).

The claims should be sufficient, *at a minimum*, to provide notice to the defendants to claim an exemption. *supra.* In the context of civil suits, the ultimate determination whether an instrument is a security is one of law. *SEC v. Thompson*, 732 F.3d 1151, 1160 (10th Cir. 2013). Thus, there are sets of facts that could prove that this unlawful investment contract was, in fact, fraudulent. *Neubronner v. Milken*, 6 F.3d 666, 669 (9th Cir. 1993). The defendants argue otherwise, and yet again, provide no evidence or reasoning why the investment contract, determined as a matter of law in this Court, is not exempt from that determination.

What the defendants most notably fail to do in their motion to dismiss is respond to the claim of misappropriation. Amend. Compl. ¶ 10, 11, 12 & 90. The misappropriation theory holds that a person commits fraud "*in connection with*" a securities transaction if a fiduciary uses undisclosed information to their own advantage in a security transaction; it is defrauding the principal by taking exclusive use of that information. *United States v. O'Hagan*, 521 U.S. 642 652-

653, 117 S. Ct. 2199 (1997). The misappropriation theory premises liability on a fiduciary-turned-trader's deception of those who entrusted him with access to confidential information. *Id.* at 652. *See also, United States v. Salman*, 792 F.3d 1087, 1091-1092 (9th Cir. 2015) ("Not only are insiders forbidden by their fiduciary relationship from personally using undisclosed corporate information to their advantage, but they may not give such information to an outsider for the same improper purpose of exploiting the information for their personal gain") & ("The definition of what constitutes the "personal benefit" that constitutes the breach of fiduciary duty includes, for example, a pecuniary gain or a reputational benefit *that will translate into future earnings*"). (emphasis added).  There is direct evidence that this is the type of 10(b) fraud the defendants are engaged in, that includes, the time, date, speaker, medium of communication, why the communication between the parties was taking place in context of the investment contract, etc. It can be presumed that these communications took place wherever the phone GPS says during that time and date. *See* Amend. Compl. ¶23-91. All the allegations are in context of what we already know that the Court has said. *See* ECF No. 38. Therefore, the plain language of the statute and Congress' intent should prevail in this case and discovery should be allowed for the parties to put a finer point on things, so that it can be proved without a doubt, that this investment contract was, indeed, based upon fraud. Congress did not intend for a plaintiff to act as the jury, judge, and executioner for their claim to be legitimate in Federal Court. *See* The Dictionary Act of 1871, Feb. 25, 1871, ch. 71, 16 Stat. 431, (codified at 1 U.S.C. § 1) (accessible at https://www.congress.gov/41/plaws/statute/c41s3ch72.pdf).

Hence, the Acts are not regulating and usurping state police power in the securities market but provide a remedial framework for those acts which are immoral and gives private individuals 'police power' to sue in Federal court for a remedy that Congress has provided to investors. The historical context of this legislation cannot be overstated and its subsequent amendments. Again, the PSLRA and the Uniform Securities Act did not gut the Acts, but simply put more guard rails on class action lawsuits that should not be considered by courts. This case is not in that genre and thus Congress provides for private action. It's not like that Congress makes it easier for class

actions or private actions, but looking to legislative history this Court should bifurcate between these two types of suits.[5]

  *In summa*, an investment contract takes the form, *inter alia*, purchase agreements, deeds of trusts, promissory notes, operating agreements, formal and informal agreements, which collectively establish the solar project as an investment contract, thus a security. Such a transaction, where Plaintiff has provided full value for only partial ownership without the anticipated benefits, is unconscionable and may be indicative of misrepresentation and fraud, particularly, where the purchase price did not reflect the proportional ownership interest and, especially, where the Defendants are set to misappropriate information gleaned from the Plaintiff to sell the property for a profit. *supra, O'Hagan*. "Blue-Sky" laws have failed the Plaintiff. Even if California's long-arm statute would reach New York and Florida that's only one element of the controversy. Federal security laws apply in this case. *See* ECF No. 38 at 16. Thus, Congress' purpose has not been thwarted by state laws or regulatory interpretation. (i.e. *Chevron*)

<u>Conclusion</u>

**THEREFORE**, the defendant's motion to dismiss must be **DISMISSED WITH PREJUDICE**

\*

\*

\*

\*

\*

\*

\*

\*

\*

---

[5] "…and not changing the current treatment of individual lawsuits." *See* Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-353, § 2(5), 112 Stat. 3236. Act (archived at https://perma.cc/CQ9L-ZH4S) *Cf*. Securities Act of 1933 § 27(a)(1), as amended by Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737, which did not amend Section 16 of the 1933 Securities. Both litigation reform acts were enacted by Congress to narrow class actions lawsuits, not individual lawsuits, as in this case. *Id*.

"Counsel communicated on or around January 22, 2024, about the L.R. 7-3 issue to no avail." *Supra*, at 3.[6]

Dated: January 28, 2024                    */s/ Clinton Brown*, Self-Represented

                                           16821 Edgar Street,
                                           Pacific Palisades, CA 90272
                                           clinton@atlasinc.solar
                                           310-487-6453


CC: All Counsel of Record (via ECF) on January 28, 2024

---

[6] The purpose of L.R. 7-3 is clear that Counsel must meet and confer prior to any motion not exempted by L.R., Federal Rule, statute, or the Constitution. In this case, the 10(b)(5) misappropriation theory is the basis of the Plaintiff's 1934 Act alleged violation, and that theory is not even addressed by the defendants in their motion to dismiss. A meet and confer could have plausibly resolved this issue to avoid the parties from 'talking past one another' and not directly to the issue at bar.