O, JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINTON BROWN,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br><br>EMIL ASSENTATO, TAX DEED ENTERPRISES LLC, STEVE WEERA TONASUT TRUST,<br><br>　　　　　Defendant. | Case No.: 2:23-cv-02972-MEMF-KS<br><br>**ORDER GRANTING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE, DENYING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE, AND GRANTING MOTION TO DISMISS [ECF NOS. 39, 41]** |

　　　Before the Court are a Request for Judicial Notice filed by Plaintiff Clinton Brown (ECF No. 39); a Request for Judicial Notice filed by Defendants Emil Assentato, Steve Weera Tonasut Trust, Tax Deed Enterprises LLC (ECF No. 41-2); and a Motion to Dismiss filed by Defendants Emil Assentato, Steve Weera Tonasut Trust, Tax Deed Enterprises LLC (ECF No. 41). For the reasons stated herein, the Court GRANTS Plaintiff Clinton Brown's Request for Judicial Notice (ECF No. 39), DENIES Defendants' Request for Judicial Notice (ECF No. 41-1), and GRANTS the Motion to Dismiss (ECF No. 41).

///

1

# BACKGROUND

The Court addressed the allegations at issue and the procedural history of this action in its previous Order granting previous Motions to Dismiss. *See* ECF No. 38 ("Previous Order"). The Court will only address aspects that are relevant to this Order here.

## I. Factual Allegations[1]

Plaintiff Clinton Brown ("Brown") is an individual residing in California. *See* FAC ¶ 19. Defendant Emil Assentato ("Assentato") is an individual residing in New York. *See id.* ¶ 20. Defendant Tax Deed Enterprises, LLC ("TDE") is a limited liability company with an address in Florida. *See id.* ¶ 21. Defendant Steve Weera Tonasut Trust ("Tonasut Trust," or collectively with Assentato and TDE, "Defendants") is a trust with an address in California. *See id.* ¶ 22. Defendants are all accredited investors, and Brown is not an accredited investor. *See id.* ¶¶ 26, 27.

On approximately June 25, 2020, Brown contracted to purchase a property, consisting of two parcels of land totaling 32.4 acres, in Calabasas, California (the "Property") for $299,000. *See id.* ¶¶ 23, 24. The Property was owned by TDE prior to the purchase.[2] *See id.* ¶ 24.

On October 22, 2020, Brown, Assentato, and TDE executed an operating agreement establishing a partnership, the purpose of which was to provide capital to rezone the Property, facilitate the development of a solar far, and eventually sell the Property. *See id.* ¶¶ 28, 29. The

---

[1] Unless otherwise indicated, the following factual background is derived from Plaintiff Clinton Brown's First Amended Complaint. ECF No. 40 ("FAC"). For the purposes of the Motion to Dismiss, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations and is therefore not—at this stage—finding that they are true.

[2] The previous version of the Complaint contained more detail on this purchase, including an allegation that at the time Brown purchased the land, it had an outstanding property tax debt of $171,000. *See* Previous Order at 2, *see also* ECF No. 1 at 2. This is one of several instances in which the FAC has omitted some detail included in the initial complaint. In determining whether Brown has stated a claim upon which relief can be granted, the Court may only consider the operative version of the complaint, and so will only consider the allegations in the FAC and not allegations included in the initial complaint that have been removed. *See PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858–59 (9th Cir. 2007) (where an amended complaint has been filed, a court should review the amended complaint and determine whether the amended complaint states a claim without regard for the initial complaint, even if the amended complaint contradicts the original complaint). But, the Court will consider the other allegations in determining whether Brown might be capable of amending further to state a claim.

operating agreement stated that Brown would be solely responsible for development of the solar farm, and that Assentation would provide financial backing and consulting services. *See id.* ¶ 29.

Brown's purchase of the Property closed on December 18, 2020.[3] *See id.* ¶ 30. Brown paid $10,000 in cash at the time of the purchase. *See id.* ¶ 31. Brown acquired a 50% interest in the Property. *See id.* ¶ 41. Also on December 18, 2020, the Tonasut Trust recorded a first deed of trust on the Property for $179,000 and Assentato recorded a second deed of trust on the Property for $110,000.[4] *See id.* ¶¶ 32, 33. Brown was responsible for paying the debt on these deeds of trust. *See id.* ¶ 34. Non-party[5] Steve Weera Tonasut ("Tonasut")—whom the Court understands to be a beneficiary of the Tonasut Trust—expressed interest in purchasing the property if Brown had not purchased it and intended to later take Brown's title if possible. *See id.* ¶ 35. Defendants engaged in a scheme to take control of the property from Brown. *See id.* ¶ 36.

Brown sought to develop a solar farm at the Property pursuant to his obligations under the operating agreement. *See id.* ¶ 37. In 2021, Assentato loaned Brown $250,000 to finance the studies related to Brown's intended application for a solar farm on the Property. *See id.* ¶ 44. Brown is individually responsible for paying back this loan and interest. *See id.* ¶ 45. Pursuant to the Tonasut Trust's deed of trust on the Property (discussed above), Brown made monthly payments of $1,977.48 to the Tonasut Trust throughout 2021. *See id.* ¶ 46. Brown ceased making these payments, due to a need for further financing, in January 2022. *See id.* ¶ 47. Brown requested that Assentato provide further financial backing, but Assentato refused. *See id.* ¶ 48.

---

[3] The FAC gives two different dates for the purchase—a purchase agreement signed on June 25, 2020 (*see* FAC ¶ 24) and a purchase on December 18, 2020 (*see* FAC ¶ 30). The Court assumes this is not in error and understands that Brown initially contracted to purchase the Property in June 2020 and closed the purchase in December 2020.

[4] The Court understands a "deed of trust" to refer to a loan agreement between a property purchaser and a lender where title to the property is held by either the lender or a third-party trustee (as opposed to the purchaser) until the loan is repaid. See Deed, Black's Law Dictionary (11th ed. 2019).

[5] Brown asserts at times in his FAC that Tonasut is a Defendant in this action. *See, e.g.* FAC ¶ 41 (describing Steve Weera Tonasut, the individual, as "Defendant Weera"). He is not—rather, the Tonasut Trust is a Defendant. *See* FAC. However, drawing all inferences in favor of Brown, the Court reads the FAC as alleging that Tonasut controls and is a beneficiary of the Tonasut Trust such that Tonasut's actions may be imputed to the Tonasut Trust.

On January 28, 2022, Brown transferred 15% ownership (of his previous 50% ownership) in the Property to the Tonasut Trust in exchange for additional financing, with Assentato's and TDE's approval. *See id.* ¶ 40. On November 11, 2022, Tonasut contacted Brown via email and encouraged Brown to forfeit his shares and convince Assentato and TDE to consent to a sale of the property to avoid foreclosure. *See id.* ¶ 41. Brown later learned that Defendants had been communicating with each other, without Brown's knowledge, as this occurred. *See id.* ¶ 53. Brown is not currently aware of the full extent or content of these communications. *See id.* ¶¶ 54–56.

After the County of Los Angeles rejected a permit for a solar farm that Brown had applied for, Brown brought legal action against the County in a separate action which is currently pending before this Court. *See id.* ¶ 38; *see also Clinton Brown v. Clark R. Taylor*, Case No. 2:22-cv-09203-MEMF-KS (C.D. Cal.) (filed December 17, 2022). Brown undertook this legal action in his individual capacity. *See* FAC ¶ 38. Tonasut assured Brown that Tonasut would provide additional funding if necessary as Brown continued in his efforts to develop a solar farm at the Property. *See id.* ¶ 39.

On December 15, 2023, Defendants filed a Notice of Default as to the Property. *See id.* ¶ 65. The document stated that Defendants had "contacted the borrower in person or by telephone . . . [to] assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." *See id.* ¶ 66. This was false—Defendants did not speak to Brown regarding options to avoid foreclosure before filing this document. *See id.* ¶ 67. Brown's Property is now at risk of foreclosure by Defendants based on the various deeds of trust. *See id.* ¶ 68.

**II.     Procedural History**

Brown's FAC brings two causes of action: (1) unregistered offers and sales of securities in violation of federal law; and (2) use of insider information in connection with the offer or sale of an unregistered security in violation of Rule 10b-5. *See* FAC.

On December 6, 2023, the Court issued its Previous Order granting Defendants' previous Motions to Dismiss. *See* Previous Order. The Court held (among other holdings not relevant to this Order) that: (1) Brown had adequately pleaded the sale of a security, based on Assentato, TDE, and the Tonasut Trust pooling money in a common enterprise expecting to profit based on the efforts of

Brown; and (2) Brown had failed to plead his securities-related claims with the required specificity, including because the claims were not pleaded with the level of detail required for fraud claims by Federal Rule of Civil Procedure 9(b) and did not met the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). *See* Previous Order at 16–20.

Brown filed a Request for Judicial Notice on December 21, 2023. *See* ECF No. 39 ("Brown's Request for Judicial Notice" or "Brown RJN"). Brown filed his FAC on January 3, 2024. *See* FAC.

Defendants filed the instant Motion to Dismiss, along with a Memorandum of Points and Authorities, on January 17, 2024. *See* ECF No. 41 ("Motion" or "Mot."); ECF No. 41-1 ("MPA"). Defendants also filed a Request for Judicial Notice. *See* ECF No. 41-2 ("Defendants' Request for Judicial Notice" or "DRJN"). Brown filed an Opposition to the Motion on January 28, 2024. *See* ECF No. 43 ("Opposition" or "Opp'n"). Defendants filed a Reply in support of the Motion on February 5, 2024. *See* ECF No. 44 ("Reply").

The Court held a hearing on the Motion on June 6, 2024.

**BROWN'S REQUEST FOR JUDICIAL NOTICE (ECF NO. 39)**

I. **Applicable Law**

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b) ("Rule 201"). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Once a fact is judicially noticed, the court "must instruct the jury to accept the noticed fact as conclusive." Fed. R. Evid. 201(f).

On a motion to dismiss, courts are generally prohibited from "consider[ing] any material beyond the pleadings." *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee*, 250 F.3d at 688). Courts generally only consider the complaint and other materials "submitted with and attached to the Complaint." *Id.* at 999. Documents not attached to the complaint—including documents that might otherwise be subject to judicial notice—may only be

1  considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's
2  claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450
3  F.3d 445, 448 (9th Cir.2006)). A court considering a motion to dismiss should not take judicial
4  notice of material that cannot be considered for the motion. *See Lee*, 250 F.3d at 689–90.

5        A Court may take judicial notice of a document and consider it in analyzing a motion to
6  dismiss. *See Corinthian Colleges*, 655 F.3d at 998. In order to do so, the document must satisfy both
7  the *Corinthian Colleges* test and the requirements of Rule 201. *See id.* (first considering whether
8  document was referenced in and central to complaint, and second considering Rule 201). However, a
9  Court may also consider certain documents in deciding a motion to dismiss without taking judicial
10 notice of the documents. *See Marder*, 450 F.3d at 448 (finding documents may be considered in
11 deciding motion to dismiss, based on a test identical to the one in *Corinthian Colleges*, without
12 taking judicial notice of the documents). In some circumstances, it may be appropriate to deny a
13 request for judicial notice, avoiding the obligation to instruct the jury on the trust of a document, but
14 nevertheless consider the document as evidence in deciding a motion to dismiss. *See id.*

15    **II.**    **Discussion**

16       Brown requests judicial notice of the notice of default that was recorded on December 18,
17 2023, which is discussed in the Factual Allegations section above. *See* Brown RJN. This same
18 document was also attached to Brown's FAC. *See* ECF No. 40-1.

19       First, this document is proper for judicial notice. It has recorded with the County of Los
20 Angeles, and therefore it appears to be a public record which "can be accurately and readily
21 determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid.
22 201(b). Defendants have not opposed Brown's request for judicial notice, and the Court has no
23 reason to question whether this document is genuine. The Court will take judicial notice of this
24 document, but not of any disputed facts within it.

25       Second, this document is appropriate to consider in evaluating the Motion to Dismiss. Brown
26 attached a copy of the same document to his FAC. *See* FAC. It is also referenced in the FAC. *See*
27 FAC ¶ 65. Because the document is referenced in the complaint, appears central to the complaint,
28

and no party has questioned its authenticity, the Court may consider the document in evaluating the Motion to Dismiss. *See Corinthian Colleges*, 655 F.3d at 998.

Thus, Brown's Request for Judicial Notice (ECF No. 39) is GRANTED.

**DEFENDANTS' REQUEST FOR JUDICIAL NOTICE (ECF NO. 41-2)**

The same standard described above as to Brown's Request for Judicial Notice applies to Defendants' Request for Judicial Notice.

Defendants request judicial notice of one document: a loan agreement between The Atlas, LLC and Assentato dated February 2, 2024. *See* DRJN. This appears to be the loan agreement for $250,000 referenced in the FAC and described above. *See* FAC ¶ 44. Assentato and TDE previously requested judicial notice of the same document in support of their previous Motion to Dismiss. *See* ECF No. 26-2 (Document No. 4). The Court denied the request for judicial notice, noting that this document was not a public record, and therefore the document's existence and contents were neither generally known within the Court's jurisdiction nor capable of being accurately and readily determined from sources whose accuracy cannot reasonably be questioned, and so the document was not appropriate for judicial notice. *See* Fed. R. Evid. 201(b). However, the Court held that the document could be considered in evaluating the previous Motions to Dismiss, because it was referenced in the complaint and central to the complaint. *See Marder*, 450 F.3d at 448 (considering documents central to complaint in deciding motion to dismiss, without taking judicial notice).

The Court holds the same here, for the same reasons. Defendants' Request for Judicial Notice is DENIED, but the Court will consider the document in evaluating the Motion to Dismiss.

**DEFENDANTS' MOTION TO DISMISS (ECF NO. 41)**

I. **Applicable Law**

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Moreover, Federal Rule of Civil Procedure 9(b) states that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Specifically, the "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("[Rule 9(b) requires] the times, dates, places, benefits received, and other details of the alleged fraudulent activity."). Additionally, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106.

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

**II.    Discussion**

The Court finds that Brown has failed to plead that a security was bought, sold, or offered to be sold. This is a change from the Court's previous finding on this issue, which the Court will explain in detail below. This failure is fatal to Brown's claims, and so the Motion to Dismiss will be GRANTED.

**A. All of Brown's claims require that a security was bought, sold, or offered to be sold.**

The Court finds that all of Brown's claims require that a security was bought, sold, or offered to be sold.

First, the Court finds that Brown's cause of action for unregistered offers and sales of securities requires that a security was sold or offered to be sold. Brown's cause of action is, per his FAC, based on a purported violation of "Section 5(a)," which the Court understands as a reference to Section 5 of the Securities Act of 1933. *See* 15 U.S.C. § 77e. "Sections 5(a) and (c) of the Securities Act, 15 U.S.C. § 77e(a), (c), make it unlawful to offer or sell a security in interstate commerce if a registration statement has not been filed as to that security, unless the transaction qualifies for an exemption from registration." *S.E.C. v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1255 (9th Cir. 2013). Three elements are required to show establish a prima facie case for violation of Section 5: "(1) no registration statement was in effect as to the securities; (2) the defendant directly or indirectly sold or offered to sell securities; and (3) the sale or offer was made through interstate commerce." *Id.* As the second element makes clear, this claim requires that the defendant sold, or offered to sell, securities. *See id.* If no security was sold or offered to be sold, there is no claim under this cause of action.

Second, the Court finds that Brown's cause of action for use of insider information in connection with the offer or sale of an unregistered security in violation of Rule 10b-5 requires that a security was sold. "Section 10(b) and Rule 10b–5 prohibit deceptive practices 'in connection with the purchase or sale of any security.'" *Cohen v. Stratosphere Corp.*, 115 F.3d 695, 700 (9th Cir. 1997). The Supreme Court has "interpreted this restriction to limit relief under Rule 10b–5 to plaintiffs who had either purchased or sold securities." *Id.* (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733–34 (1975)). Thus, this claim also requires that Brown allege that some security was sold, and there can be no claim absent such an allegation.

**B. Brown has not adequately pleaded that a security was bought, sold, or offered to be sold.**

For the reasons discussed below, the Court finds that Brown has not adequately pleaded that any security was bought, sold, or offered to be sold.

A security can be found based on there being either a "note" or an "investment contract." *See Reves v. Ernst & Young*, 494 U.S. 56, 64 (1990) (discussing notes); *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 297 (1946) (discussing investment contracts). In the previous Motions to Dismiss,

1  Defendants argued that the arrangements in question did not constitute notes and therefore were not
2  securities, but did not address in any detail whether the arrangements might qualify as investment
3  contracts. *See* ECF Nos. 18-1, 26-1, 31, 32. The Court held that drawing all inferences in favor of
4  Brown, the alleged arrangements could be construed as investment contracts and therefore could be
5  construed as securities. *See* Previous Order at 16–19. The Court made clear that its holding was "not
6  a definitive judicial finding that any transaction constituted a security," and rather "only a finding
7  that, at this stage, drawing all inferences in favor of Brown, Brown [had] pleaded sufficient facts that
8  if proven true could support a finding that a security was sold." *Id.* at 19.

9  In the instant Motion, Defendants argue that the arrangement in question should not be
10 construed as a security despite appearing to be an investment contract. Defendants acknowledge that
11 an investment contract is generally a security and impliedly concede (at least for the sake of
12 argument) that the arrangements pleaded constitute an investment contract under the broad definition
13 provided in *Howey*, 328 U.S. at 297, but Defendants now argue for the first time that based on
14 *Marine Bank v. Weaver*, 455 U.S. 551, 559–60 (1982), that this arrangement was not a security. The
15 Court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory
16 order" for sufficient cause. *See City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885
17 (9th Cir. 2001). Having considered Defendants' new argument in light of the newly presented
18 authority in *Marine Bank*, the Court finds that reconsideration of its previous determination is
19 warranted.

20 A "security," as used in the Securities Act, includes "commonly known documents traded for
21 speculation or investment" and "securities of a more variable character," including "investment
22 contract[s]." *Howey*, 328 U.S. 293, 297 (1946). An "investment contract" is "a contract, transaction
23 or scheme whereby a person invests his money in a common enterprise and is led to expect profits
24 solely from the efforts of the promoter or a third party." *Id.* at 298. On this basis, the Court
25 previously found that because Brown alleged that Brown, Assentato, TDE, and the Tonasut Trust all
26 pooled money in a common enterprise and expected to profit based solely on the efforts of Brown,
27 Brown had alleged the existence of a security.
28

However, as Defendants now point out, not all arrangements that meet *Howey*'s broad definition of an investment contract are securities. *See Marine Bank*, 455 U.S. at 559–60. "Congress intended the securities laws to cover those instruments ordinarily and commonly considered to be securities in the commercial world," and the securities law do not apply to instruments which are "not the type of instrument that comes to mind when the term 'security' is used and do not fall within "the ordinary concept of a security." *Id.* at 559. Instruments found to be securities generally "involve[] offers to a number of potential investors," and are not "private transaction[s]." *Id.* In *Marine Bank*, individuals (the Weavers) entered into an agreement with a slaughterhouse (Columbus) and the slaughterhouse's owners (the Piccirillos) whereby the Weavers guaranteed a loan made to Columbus, and in exchange, "the Weavers were to receive 50% of Columbus' net profits and $100 per month as long as they guaranteed the loan." *See id.* at 553. "It was also agreed that the Weavers could use Columbus' barn and pasture at the discretion of the Piccirillos, and that they had the right to veto future borrowing by Columbus." *Id.* The Court held that this "unique agreement," "negotiated one-on-one by the parties," was not a security. *See id.* at 560. In holding as such, the Court emphasized that this was a private transaction, no prospectus was distributed "to the Weavers or to other potential investors," and "the unique agreement they negotiated was not designed to be traded publicly." *See id.* The Court noted that although there the agreement contained a provision for sharing in profits, "that provision alone is not sufficient to make that agreement a security." *See id.* In sum, where private parties negotiate a transaction that includes some sharing of profits, but the transaction is not offered generally to the public and is not designed to be traded publicly, the sharing of profits alone is not sufficient to make the agreement a security. *See id.*

Here, the facts alleged resemble those in *Marine Bank*. Brown, Assentato, and TDE entered into an agreement whereby they would pool money and share profits based on Brown's efforts. *See* FAC ¶¶ 28, 29. The Tonasut Trust later acquired an interest in the subject Property, and also expected to share profits based on Brown's efforts. *See id.* ¶ 40. But this investment opportunity was never offered to the general public, and even drawing all inferences in favor of Brown, there was no expectation that the agreements entered into were designed to be traded publicly. This was a unique private transaction (or series of unique private transactions) between private parties. Therefore

1 although it is an investment contract under Howey, it is not the sort of instrument "that comes to
2 mind when the term 'security' is used and does not fall within 'the ordinary concept of a security.'"
3 *Marine Bank v. Weaver*, 455 U.S. at 559. All of this leads to the conclusion, based on the Supreme
4 Court's guidance in *Marine Bank*, that these transactions do not constitute securities.

5    Brown attempted in the hearing to distinguish the facts here from those in *Marine Bank*.
6 Brown argued that a key fact in *Marine Bank* was that the Federal Deposit Insurance Corporation
7 ("FDIC") insured deposits made at federally regulated banks, which reduced the risk of insolvency
8 and contributed to a finding that certain instruments were not securities. *See id.* at 558. Brown
9 argued that the absence of FDIC insurance here distinguishes this case from *Marine Bank*, and
10 therefore that the transactions at issue here should be construed as securities despite the holding of
11 *Marine Bank*. This appears to be a reference to a different portion of *Marine Bank* than the portion
12 this Court relied upon above. *Marine Bank* considered two different arrangements that the Weavers
13 entered into—first, the Weavers purchased a certificate of deposit from a bank, and second, the
14 Weavers pledged that certificate of deposit to the bank in order to guarantee the loan to the
15 Columbus and received a portion of Columbus's profits and other consideration in exchange. *See id.*
16 at 552–53. The *Marine Bank* Court addressed each in turn. The *Marine Bank* Court first held that the
17 purchase of the certificate of deposit did not constitute a security, and in making this holding, the
18 *Marine Bank* Court noted that the certificate of deposit was insured by the FDIC. *See id.* at 556–59.
19 Brown's argument was based on this portion of the holding. The *Marine Bank* Court went on to hold
20 that the arrangement between the Weavers and Columbus did not constitute a security for the
21 reasons discussed already at length in this Order. *See id.* at 559–60. The Court's findings here are
22 based upon this second portion of the *Marine Bank* opinion. FDIC insurance was not relevant to this
23 portion of the *Marine Bank* opinion, and so Brown's argument fails—the lack of FDIC insurance
24 here is neither relevant nor dispositive.

25    Brown also argued that whether a transaction is a security must be analyzed in the context of
26 the transaction, and that the novelty of the transactions at issue should not necessarily lead to a
27 finding that the transactions do not constitute the sale of a security. While these broad principles may
28 be true, they do not affect the Court's finding—*Marine Bank* makes clear that the transactions at

issue do not constitute the sale of securities for the reasons discussed above, and Brown failed to show otherwise.

Accordingly, the Court finds that Brown has not adequately pleaded that any security was bought, sold, or offered to be sold. This is fatal to both of Brown's causes of action. Thus, the Motion to Dismiss is GRANTED. The Court need not reach the other issues raised in the Motion to Dismiss, but the parties should note that should an amended complaint be filed, there are additional requirements beyond the purchase, offer, or sale of a security that will need to be met.

In a tentative ruling shared with the parties in advance of the hearing, the Court indicated that it was inclined to grant Brown leave to amend his complaint, as it might be possible for Brown to adduce further facts to permit the Court to find that the sale of security element has been properly pleaded. *See Manzarek*, 519 F.3d at 1031. At the hearing, Brown indicated that he has no desire to further amend his complaint and does not believe that he could allege further facts to state a claim if the Court interprets the law as indicated in the tentative ruling. Brown therefore requested that if the claims are dismissed (which Brown argued they should not be), dismissal should be with prejudice. Accordingly, the Court will not grant Brown leave to amend, and will dismiss Brown's claims with prejudice.

/ / /

# CONCLUSION

For the reasons stated herein, the Court ORDERS as follows:

1. Brown's Request for Judicial Notice (ECF No. 39) is GRANTED.
2. Defendants' Request for Judicial Notice (ECF No. 41-2) is DENIED.
3. Defendants' Motion to Dismiss (ECF No. 42) is GRANTED.
4. Brown's claims are DISMISSED WITH PREJUDICE. The Clerk of Court is directed to close the file.

IT IS SO ORDERED.

Dated: September 27, 2024

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge